No. 17-1763 C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE TOLLIVER GROUP, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## DEFENDANT'S MOTION TO DISMISS

<div style="margin-left:40%">

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

TARA K. HOGAN
Assistant Director

ASHLEY AKERS
Trial Attorney
Commercial Litigation Branch
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel:  (202) 353-0521
Fax:  (202) 307-0972

</div>

March 9, 2018                    Attorneys for Defendant

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE ISSUES .....................................................................................1

STATEMENT OF THE CASE.........................................................................................2

    I.     Contract Between The Army And TTGI ................................................2

    II.    Qui Tam Action Between The Relator And TTGI ................................3

    III.   Claim Submitted For Legal Fees ..........................................................4

ARGUMENT ...................................................................................................................5

    I.     Legal Standard For RCFC 12(b)(6) Motion To Dismiss .....................5

    II.    TTGI Fails To State A Claim For Constructive Change ......................6

    III.   TTGI Fails To State A Claim For Breach Of Contract.........................9

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITEIS

## Cases

*Ace Constructors, Inc. v. United States,*
 70 Fed. Cl. 253 (2006) ................................................................... 6

*Agility Defense & Govt. Servs., Inc. v. United States,*
 115 Fed. Cl. 247 (2014) ................................................................. 6

*Am. Line Builders, Inc. v. United States,*
 26 Cl. Ct. 1155 (1992) ................................................................... 7

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ....................................................................... 5

*Ball/Heery v. United States,*
 739 F.3d 1324 (Fed. Cir. 2014) ..................................................... 9

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ....................................................................... 5

*Earman v. United States,*
 114 Fed. Cl. 81 (2013) ................................................................... 9

*Fluor Hanford, Inc. v. United States,*
 66 Fed. Cl. 230 (2005) ............................................................ 11, 12

*Info. Sys. & Networks, Corp. v. United States,*
 64 Fed. Cl. 599 (2005) ............................................................ 10,11

*Info. Sys. & Networks, Corp. v. United States,*
 81 Fed. Cl. 740 (2008) .............................................................. 6, 9

*Int'l Data Products Corp. v. United States,*
 492 F.3d 1317 (Fed. Cir. 2007) ................................................. 6, 7

*Kawa v. United States,*
 77 Fed. Cl. 294 (2007) ................................................................... 5

*LB&B Assocs. Inc. v. United States,*
 91 Fed. Cl. 142 (2010) ................................................................... 6

*Linda Newman Const. Co. v. United States,*
 48 Fed. Cl. 231 (2000) ................................................................. 10

*Ret. Communities LLC v. United States*,
    92 Fed. Cl. 587 (2010) ............................................................................ 7

*S. Comfort Builders, Inc. v. United States*,
    67 Fed. Cl. 124 (2005) ......................................................................... 6, 8

*Sauer, Inc. v. Danzig*,
    224 F.3d 1340 (Fed. Cir. 2000) ............................................................... 7

*Solaria Corp. v. United States*,
    123 Fed. Cl. 105 (2015) ......................................................................... 10

*United States ex rel. v. DRS Tech. Services, Inc.*,
    No. 1:14-cv-00402, 2015 WL 6691973 (E.D. Va. Nov. 2, 2015) .......... 4, 8

*Vasko v. United States*,
    112 Fed. Cl. 204 (2013) ......................................................................... 10

## Rules

RCFC 9(b) ...................................................................................................... 3

RCFC 9(k) ...................................................................................................... 9

RCFC 12(b)(6) ......................................................................................... 1, 3, 5

## Regulations

48 C.F.R. § 16-202-1 ................................................................................... 10

48 C.F.R. § 31.205-47 .................................................................................. 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____
                                                )
THE TOLLIVER GROUP, INC.,                       )
                                                )
                  Plaintiff,                    )
                                                )
        v.                                      )        No. 17-1763 C
                                                )        (Judge Lettow)
THE UNITED STATES,                              )
                                                )
                  Defendant.                    )
_____       )

## DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims

(RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint

of plaintiff, The Tolliver Group, Inc. (TTGI), for failure to state a claim upon which relief can be

granted.[1]

## STATEMENT OF THE ISSUES

1.  Whether TTGI can recover under a constructive change theory when a modification to

the contract did not require TTGI to perform additional work.

2.  Whether TTGI is entitled to reimbursement of its legal fees as an allowable cost under a

firm fixed price contract.

_____

[1] For purposes of this RCFC 12(b)(6) motion, we accept plaintiff's factual allegations as true. Should the Court deny the motion, we respectfully reserve the right to challenge the factual allegations in the complaint. We have also included an appendix of the contract at issue in the complaint and court documents filed in a related qui tam case.

<u>STATEMENT OF THE CASE</u>

I.      <u>Contract Between The Army And TTGI</u>

In 2009, the United States Army Contracting Command – Warren awarded contract number W56HZV-09-A-A902 to DRS Technical Services, Inc.  Compl. ¶ 6.  Task Order 10 under the contract was awarded, and in September 2012, it was transferred by novation agreement to TTGI.  *Id.* ¶ 2.

Task Order 10 was originally awarded on a fixed price level of effort basis.  App. A1-2. The purpose of Task Order 10 was for the contractor to "create and deliver" three manuals for the 910 MCV-Mine Clearing System.  *Id.* at A2, A9.  The manuals were needed to "enable military field users to support their equipment with current parts information for provisioning, and updated procedures for maintenance and overhaul."  *Id.* at A9.  Task Order 10 specified that the manuals should be developed as "described in the Performance Work Statement (PWS)."  *Id.* at A2.

The PWS required the Contracting Officer Representative to provide certain information, known as Government Furnished Information, to the contractor.  *Id.* at A12.  The Government Furnished Information was expected to include, among other things, a technical data package from the original equipment manufacturer and commercial off the shelf manuals.  *Id.*  The Task Order required TTGI develop the manuals "[u]sing the commercial off the shelf manuals produced by the manufacturer as source data," *see id.* at A9, but did not require TTGI to use or rely on the technical data package to produce the manuals.

In April 2013, Task Order 10 was modified.  *See id.* at A26-70 (Modification 08).  This modification converted Task Order 10 from a fixed price level of effort basis contract to a firm

fixed price contract.  *Id.* at A1, A33.  As such, the contract amount was increased from $1,883,628.29 to $6,446,536.31.  *Id.* at A27.

Modification 08 also revised the PWS by removing the requirement that the Contracting Officer Representative provide the technical data package as part of the Government Furnished Information.  *Id.* at A42.  The PWS still required TTGI to develop the manuals "[u]sing commercial off the shelf manuals produced by the manufacturer as source data."  *See id.* at A39.

II.     Qui Tam Action Between The Relator And TTGI

In April 2014, a relator sued TTGI in a qui tam action, alleging violations of the False Claims Act.  Compl. ¶ 15.  The relator alleged that TTGI violated the False Claims Act (1) by proceeding with the creation of technical manuals for the Mine Clearing System under Task Order 10 of its contract with the Army without a government-furnished technical data package and (2) for alleged deviations between the final version of the operator's manual and certain military standards and Army regulations referenced in the contract.  App. A73-77.  The Government declined to intervene in the qui tam action.  Compl. ¶ 18.

TTGI moved to dismiss the case under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted and RCFC 9(b) for failure to plead with the requisite specificity.  *See* App. A79.  In its motion to dismiss, TTGI argued, among other things, that "the technical data package is nothing more than a document containing the technical description of items" and therefore, it was never "required to prepare technical manuals."  *Id.* at A81.  The District Court for the Eastern District of Virginia granted TTGI's motion to dismiss for failure to "set forth claims for fraud with sufficient particularity," and permitted the relator to amend the complaint.  *See id.* at A82.

After the relator filed an amended complaint, TTGI again moved to dismiss the complaint under RCFC 12(b)(6) and RCFC 9(b). *See id.* at A83-96. In its motion to dismiss, TTGI argued, among other things, that the technical data package was not "required to perform the Contract work." *See id.* at A85 (explaining that the relator "ignores the fact that the [technical data package] was removed from the list of 'Government Furnished Information' by Modification 8.").

The court denied TTGI's motion to dismiss and motion for reconsideration. The parties filed cross motions for summary judgment. In TTGI's motion for summary judgment, it argued "[a]t no point did Task Order 10 require the contactor to rely on the [technical data package] in order to produce the Technical Manuals," and "[t]he [technical data package] was not needed to create the Technical Manuals." *Id.* at A107 (arguing TTGI "did not need [] the [technical data package]").

The court then granted TTGI's motion for summary judgment and dismissed the case. *See United States ex rel. v. DRS Tech. Services, Inc.*, No. 1:14-cv-00402, 2015 WL 6691973 (E.D. Va. Nov. 2, 2015). Notably, the court adopted TTGI's position and concluded that "Task Order 10 never required the contractor to rely on the technical data package in order to produce the Technical Manuals." *Id.* at *3.

III.   <u>Claim Submitted For Legal Fees</u>

In June 2017, TTGI submitted a claim to the agency for $195,889.78 in legal fees incurred in defending the qui tam action. Compl. ¶ 24. The agency's contracting officer denied TTGI's claim in full on the grounds that the costs are not allowable under Task Order 10. ECF No. 1, at 10 (Sept. 8, 2017). Specifically, the contracting officer found that Task Order 10 did

not include any terms that provided for payment to TTGI in excess of the agreed-upon firm fixed price and the costs were not allocable to the Task Order.  ECF No. 1, at 10-13.

TTGI filed suit in this Court on November 9, 2017, seeking attorneys' fees incurred in defending the qui tam action under theories of constructive change and breach of contract.  ECF No. 1, at 6-7.

<div align="center">ARGUMENT</div>

I.   Legal Standard For RCFC 12(b)(6) Motion To Dismiss

Pursuant to RCFC 12(b)(6), a complaint that "fail[s] to state a claim upon which relief can be granted" shall be dismissed.  To survive dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly,* 550 U.S. at 555).

When deciding a motion to dismiss, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment." *Kawa v. United States*, 77 Fed. Cl. 294, 307 (2007) (citation omitted) (explaining that the court could consider "pertinent data from the prior litigation between" the parties in the current case).

<div align="center">5</div>

II.    TTGI Fails To State A Claim For Constructive Change

TTGI's constructive change claim fails as a matter of law because TTGI itself has argued, and a Federal court agreed, that the modification to the contract removing the requirement that the Government provide the technical data package to TTGI, did not require TTGI to perform additional work beyond the contract requirements.

"A constructive change generally arises where the Government, without more, expressly or impliedly orders the contractor to perform work that is not specified in the contract documents." *Ace Constructors, Inc. v. United States*, 70 Fed. Cl. 253, 287 (2006).  "When the Government compels work 'above and beyond that in the contract,' it must compensate the contractor for the costs of the additional work through an equitable adjustment." *Agility Defense & Govt. Servs., Inc. v. United States*, 115 Fed. Cl. 247, 251 (2014) (quoting *Int'l Data Products Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007)).  "However, not every change that the government requires triggers a constructive change entitling the contractor to an equitable adjustment." *LB&B Assocs. Inc. v. United States*, 91 Fed. Cl. 142, 155 (2010).

To recover under a constructive change theory, TTGI necessarily must show that the contactor was "truly . . . *required* by the government to perform work beyond the contract requirements" and the "informal order or the other conduct that cause[d] the contractor to exceed the scope of the contract . . . originate[d] from someone who is authorized to bind the Government." *Info. Sys. & Networks, Corp. v. United States*, 81 Fed. Cl. 740, 746-47 (2008) (emphasis in original) (describing the requirements for constructive change).  If a contractor demonstrates that it was required to perform additional work and that it was ordered to do so by a Government official, it is entitled to recover damages that directly resulted from the constructive change. *See S. Comfort Builders, Inc. v. United States*, 67 Fed. Cl. 124, 136, 145 (2005)

(explaining the Government is liable for "any increased costs flowing directly and necessarily from th[e] change") (citing *Sauer, Inc. v. Danzig*, 224 F.3d 1340, 1348 (Fed. Cir. 2000)); *Am. Line Builders, Inc. v. United States*, 26 Cl. Ct. 1155, 1193 (1992) (holding plaintiff is entitled to "recover damages for the additional work which directly resulted from the" constructive change).

The complaint fails as a matter of law to state a claim for constructive change because (1) TTGI did not perform additional work beyond that in the contract; (2) there is not a sufficient nexus between the alleged constructive change and the damages that TTGI now attempts to recover; and (3) even if TTGI did perform additional work, it was not required by the Government.

First, the change alleged in the complaint—that TTGI performed Task Order 10 without the technical data package—did not result in TTGI performing additional work or providing additional services.  Compl. ¶ 30.  In fact, this change did not in any way affect TTGI's scope of performance or responsibilities.  Under Task Order 10, TTGI was required to "us[e] commercial off the shelf manuals produced by the manufacturer as source data [to] furnish professional services to create and deliver . . . Technical Manuals."  App. A9.  Task Order 10 required the Government to furnish the technical data package to TTGI, but there was no requirement that TTGI use, implement, or otherwise consider the information in the technical data package.  *See id.* at A12.  Thus, the modification that removed the Government's obligation to furnish the technical data package did not create additional work for TTGI.  *See* App. A39.  When a contractor is "not required to perform work beyond the contract requirements," the claim for constructive change necessarily fails.  *See Ret. Communities LLC v. United States*, 92 Fed. Cl. 587, 592 (2010); *Int'l Data Prods. Corp.*, 492 F.3d at 1325 (explaining that work that cannot be characterized as "additional" to the contract does not constitute a constructive change).

TTGI has previously conceded that this modification did not require it to perform additional work.  In defending the qui tam action, TTGI expressly argued that the absence of the technical data package had no effect on its performance of the contract.  TTGI argued that "[a]t no point did Task Order 10 require the contactor to rely on the [technical data package] in order to produce the Technical Manuals," and "[t]he [technical data package] was not needed to create the Technical Manuals."  App. A107.  The court adopted TTGI's position in the qui tam action, and found that "Task Order 10 never required the contractor to rely on the technical data package in order to produce the Technical Manuals."  *See United States ex rel. v. DRS Tech. Services, Inc.*, No. 1:14-cv-00402, 2015 WL 6691973, at *3 (E.D. Va. Nov. 2, 2015).

Therefore, although the contract was modified to remove the Government's obligation to provide the technical data package to TTGI, this modification did not require TTGI to perform additional work, and thus cannot be the basis for a constructive change claim.

Second, even if TTGI did perform additional work, the Government is not liable for TTGI's legal fees because there is not a sufficient nexus between the alleged constructive change and the fees that TTGI seeks to recover.  A contractor can recover only the "increased costs flowing directly and necessarily from" the constructive change.  *S. Comfort*, 67 Fed. Cl. at 145. The link between contract performance without the technical data package and the incurred legal fees as a result of defending a qui tam action is tenuous at best.  Notably, the relator's allegations in the qui tam case related not only to the technical data package, but also to alleged deviations between the final version of the operator's manual and certain military standards and Army regulations referenced in the contract.  *See* App. A73-77.  These allegations have no connection to Modification 08 and do not create a sufficient nexus between the alleged constructive change and the legal fees.

Finally, to the extent TTGI's allegations in the complaint can be read to suggest that the "additional work" TTGI performed was defending itself in a qui tam action, that allegation is similarly without merit because this additional work did not "originate from someone who is authorized to bind the Government." *Info. Sys.*, 81 Fed. Cl. at 747.  The only party who arguably required TTGI's defense of the suit was the relator who filed suit against TTGI.  TTGI has not alleged that the relator is authorized to bind the Government, therefore the relator's actions cannot serve as the basis for a constructive change claim against the Government.

III.   <u>TTGI Fails To State A Claim For Breach Of Contract</u>

The Government did not breach the contract by declining to pay TTGI attorneys' fees incurred in defending the qui tam action because the contract between the Army and TTGI is a firm fixed price contract that, by definition, is not subject to any adjustment.

To state a claim for breach of contract, TTGI must allege "(1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." *Ball/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014).  "[T]here is a minimum burden for a plaintiff, in asserting a breach of contract claim, to explicitly identify the provisions and terms of the contract that have been breached." *Earman v. United States*, 114 Fed. Cl. 81, 100 (2013); RCFC 9(k) ("In pleading a claim founded on a contract or treat, a party must identify the substantive provisions of the contract or treaty on which the party relies.").  The rationale is simple: "in order for the court to render a decision on a breach of contract claim, it must know the relevant terms of the contract." *Earman*, 114 Fed. Cl. at 100.  Additionally, the plaintiff must allege facts that, if true,

demonstrate a breach of the identified duty.  *See Solaria Corp. v. United States*, 123 Fed. Cl. 105, 116 (2015).  TTGI's complaint fails to meet these minimal pleading requirements.

First, the complaint fails to identify a contractual duty arising out of the contract to pay 80% of TTGI's legal fees incurred in defending the qui tam action.  *See* Compl. ¶ 35.  Nowhere in its complaint does TTGI identify any provision of the contract that imposes this obligation or duty on the part of the Army.  For that reason alone, the breach of contract claim should be dismissed.  *Vasko v. United States*, 112 Fed. Cl. 204, 217 (2013) (explaining that a party must plead the "essential elements" of a contract to recover for an alleged breach of contract).

Next, the nature of firm fixed price contracts forecloses TTGI recovery.  The Army could not have breached the firm fixed price contract by denying "allowable costs" to TTGI because contractors are precluded from recovering adjustments or reimbursements under a firm fixed price contract.  *See* 48 C.F.R. § 16-202-1 ("A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract.").  As explained by this Court, "there is no such thing as 'reimbursement' of *any* costs in a fixed-price undertaking. (Otherwise, why would they call it a 'fixed-price' contract?)."  *Info. Sys. & Networks, Corp. v. United States*, 64 Fed. Cl. 599, 605 (2005) (emphasis in original).  Rather, "[f]irm-fixed-price contracts set a price to the government that is not subject to adjustment based on costs incurred by the contractor; that is, the government and the contractor are aware of the total contract price at the time of acceptance."  *Id.* at 606.

By entering into a firm fixed price contract, TTGI assumed the risk "that it would be forced to bear costs that it would not be able to recover," *Linda Newman Const. Co. v. United States*, 48 Fed. Cl. 231, 233 (2000), including costs incurred in defending a qui tam action.

Therefore, TTGI is precluded as a matter of law from recovering legal fees under its firm fixed price contract.

TTGI cites 48 C.F.R. § 31.205-47 to allege that the Government is contractually obligated to pay TTGI's legal fees.  Compl. ¶ 35.  This regulation provides guidance on how to determine whether a legal fee is an allowable cost, but it does not speak to whether a particular contract permits for recovery of allowable costs.  Here, the firm fixed price contract contains no provision permitting TTGI to recover allowable costs, so it is irrelevant whether the legal fees were "properly construed as allowable" under this regulation.  *See Info. Sys. & Networks Corp.*, 64 Fed. Cl. at 606 (explaining that it is not relevant whether a cost is allowable because there is no such thing as an adjustment of a firm fixed priced contract).  And although "[s]ome types of fixed-price contracts may be structured to specifically take into account the contractor's cost experience, . . . those contracts must have specific contract provisions."  *Id.* at 605 n.6.  TTGI fails to identify any provision in the firm fixed price contract that allows TTGI to recover allowable costs.  *See id.* at 605 (denying a contractor costs sought under a firm fixed price contract because "[t]here is simply no general allowance in a fixed-price contract for an adjustment of the negotiated price based on the actual costs of performance, and plaintiff has cited no specific contract provision that would lead to such a result in this case.").

TTGI's reliance on *Fluor Hanford, Inc. v. United States*, 66 Fed. Cl. 230 (2005), is also misplaced.  TTGI cites to *Fluor* for the proposition that TTGI is entitled to 80% legal fees incurred to defend a qui tam action.  Compl. ¶ 35.  Yet *Fluor* did not address whether legal fees are allowable under a firm fixed price contract; it analyzed the amount of the Government's liability under a cost reimbursement contract that specifically included a term requiring the

Government to pay the contractors' legal fees. *See Fluor*, 66 Fed. Cl. at 231. Thus, *Fluor* offers no support for TTGI's argument that it is entitled to reimbursement of its legal fees.

Because TTGI fails to identify a contractual duty to reimburse it for the legal fees incurred in defending a qui tam action and fails to allege facts that identify a breach of the alleged duty, defendant respectfully requests that the Court dismiss TTGI's breach of contract claim for failure to state a claim.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss the complaint for failure to state a claim upon which relief can be granted.

Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

OF COUNSEL:

MAJOR JOHN E. SWORDS
Litigation Attorney
General Litigation Branch
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060
Telephone: (703) 693-1089
Facsimile: (703) 806-0840
John.e.swords.mil@mail.mil

s/ Ashley Akers
ASHLEY AKERS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-0521
Facsimile: (202) 307-0972
Ashley.Akers@usdoj.gov

March 9, 2018

Attorneys for Defendant

# APPENDIX

# INDEX TO THE APPENDIX

**Document**                                                                                                   **Page**

Task Order 10 ................................................................................................................ A1

Modification 08................................................................................................................ A26

Complaint, *United States ex rel. v. DRS Tech. Servs., Inc.*, (E.D. Va. Case No.
1:14-cv-00402), April 15, 2014. ................................................................................... A71

The Tollvier Group, Inc's Motion To Dismiss, *United States ex rel. v. DRS Tech. Servs., Inc.*,
(E.D. Va. Case No. 1:14-cv-00402), March 20, 2015 ............................................................. A79

Brief In Support Of The Tolliver Group, Inc's Motion To Dismiss (excerpt)....................A81

Order granting The Tolliver Group, Inc's Motion To Dismiss, *United States ex rel. v. DRS Tech.
Servs., Inc.*, (E.D. Va. Case No. 1:14-cv-00402), May 1, 2015................................................ A82

Brief In Support Of The Tolliver Group, Inc's Motion to Dismiss First Amended False Claims
Act Complaint, *United States ex rel. v. DRS Tech. Servs., Inc.*, (E.D. Va. Case No. 1:14-cv-
00402), June 1, 2015………………………………………………………………..…..A83

Defendants' Cross-Motion for Summary Judgment, *United States ex rel. v.
DRS Tech. Servs., Inc.*, (E.D. Va. Case No. 1:14-cv-00402), September 18, 2015……………A97

| ORDER FOR SUPPLIES OR SERVICES | | | | PAGE 1 OF 25 |
|---|---|---|---|---|

**ORDER FOR SUPPLIES OR SERVICES**

PAGE 1 OF 25

| 1. CONTRACT PURCH ORDER/AGREEMENT NO. | 2. DELIVERY ORDER/CALL NO. | 3. DATE OF ORDER/CALL (YYYYMMMDD) | 4. REQUISITION/PURCH REQUEST NO. | 5. PRIORITY |
|---|---|---|---|---|
| W56HZV-09-A-A902 | 0010 | 2011AUG26 | SEE SCHEDULE | DOA4 |

**6. ISSUED BY**    CODE   W56HZV

U.S. ARMY CONTRACTING COMMAND
CCTA-ASM-B
PARRIS WEIDENBACH (586)282-8839
WARREN, MICHIGAN 48397-5000
HTTP://CONTRACTING.TACOM.ARMY.MIL

    EMAIL: PARRIS.S.WEIDENBACH@US.ARMY.MIL

**7. ADMINISTERED BY (If other than 6)**    CODE   S2404A

DCMA MANASSAS
10500 BATTLEVIEW PKWY
SUITE 200
MANASSAS VA 20109-2342

SCD: C     PAS: NONE     ADP PT: HQ0338

**8. DELIVERY FOB**

☐ DESTINATION

☒ OTHER
(See Schedule if other)

**9. CONTRACTOR**    CODE   2R341    FACILITY

NAME AND ADDRESS

DRS C3 & AVIATION COMPANY
12930 WORLDGATE DR STE 200
HERNDON, VA 20170-6011

TYPE BUSINESS: Large Business Performing in U.S.

**10. DELIVER TO FOB POINT BY (Date) (YYYYMMDD)**

SEE SCHEDULE

**12. DISCOUNT TERMS**

**13. MAIL INVOICES TO THE ADDRESS IN BLOCK**
See Block 15

**11. X IF BUSINESS IS**

☐ SMALL

☐ SMALL DISADVANTAGED

☐ WOMAN-OWNED

**14. SHIP TO**    CODE

SEE SCHEDULE

**15. PAYMENT WILL BE MADE BY**    CODE   HQ0338

DFAS-COLUMBUS CENTER
SOUTH ENTITLEMENT OPERATIONS
P.O. BOX 182264
COLUMBUS OH 43218-2264
1-800-756-4571    FAX 614-693-2224

**MARK ALL PACKAGES AND PAPERS WITH IDENTIFICATION NUMBERS IN BLOCKS 1 AND 2**

**16. TYPE OF ORDER**

DELIVERY/CALL ☒   THIS DELIVERY ORDER IS ISSUED ON ANOTHER GOVERNMENT AGENCY OR IN ACCORDANCE WITH AND SUBJECT TO TERMS AND CONDITIONS OF ABOVE NUMBERED CONTRACT.

PURCHASE   Reference your ☐ Oral ☐ Written ☐ Quotation ____, Dated _____. furnish the following on terms specified herein.

ACCEPTANCE. THE CONTRACTOR HEREBY ACCEPTS THE OFFER REPRESENTED BY THE NUMBERED PURCHASE ORDER AS IT MAY PREVIOUSLY HAVE BEEN OR IS NOW MODIFIED, SUBJECT TO ALL OF THE TERMS AND CONDITIONS SET FORTH, AND AGREES TO PERFORM THE SAME.

_____ NAME OF CONTRACTOR     _____ SIGNATURE     _____ TYPED NAME AND TITLE     _____ DATE SIGNED (YYYYMMMDD)

☐ If this box is marked, supplier must sign Acceptance and return the following number of copies:

**17. ACCOUNTING AND APPROPRIATION DATA/LOCAL USE**

SEE CONTRACT ADMINISTRATION DATA

| 18. ITEM NO. | 19. SCHEDULE OF SUPPLIES/SERVICE | 20. QUANTITY ORDERED/ ACCEPTED* | 21. UNIT | 22. UNIT PRICE | 23. AMOUNT |
|---|---|---|---|---|---|
| | SEE SCHEDULE CONTRACT TYPE: Firm-Fixed-Price Fixed Price Level of Effort KIND OF CONTRACT: Service Contracts | | | | |

* If quantity accepted by the Government is same as quantity ordered, indicate by X. If different, enter actual quantity accepted below quantity ordered and encircle.

**24. UNITED STATES OF AMERICA**
JOHN M. HOPFNER   /SIGNED/   2011AUG26
JOHN.HOPFNER@US.ARMY.MIL (586)282-5734
BY:          CONTRACTING/ORDERING OFFICER

| 25. TOTAL | $1,420,282.87 |
|---|---|
| 26. DIFFERENCES | |

**27a. QUANTITY IN COLUMN 20 HAS BEEN**

☐ INSPECTED    ☐ RECEIVED    ☐ ACCEPTED, AND CONFORMS TO CONTRACT EXCEPT AS NOTED _____

b. SIGNATURE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

c. DATE (YYYYMMMDD)

d. PRINTED NAME AND TITLE OF AUTHORIZED GOVERNMENT REPRESENTATIVE

e. MAILING ADDRESS OF AUTHORIZED GOVERNMENT REPRESENTATIVE

f. TELEPHONE NUMBER

g. E-MAIL ADDRESS

| 28. SHIP. NO. | 29. D.O. VOUCHER NO. | 30. INITIALS |
|---|---|---|
| ☐ PARTIAL ☐ FINAL | | |
| 31. PAYMENT | 32. PAID BY | 33. AMOUNT VERIFIED CORRECT FOR |
| ☐ COMPLETE ☐ PARTIAL ☐ FINAL | | 34. CHECK NUMBER |
| | | 35. BILL OF LADING NO. |

**36. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT.**

a. DATE (YYYYMMMDD)     b. SIGNATURE AND TITLE OF CERTIFYING OFFICER

| 37. RECEIVED AT | 38. RECEIVED BY (Print) | 39. DATE RECEIVED (YYYYMMMDD) | 40. TOTAL CONTAINERS | 41. S/R ACCOUNT NUMBER | 42. S/R VOUCHER NO. |
|---|---|---|---|---|---|

**DD FORM 1155, DEC 2001**      PREVIOUS EDITION IS OBSOLETE.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 2 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010    **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

```
SUPPLEMENTAL INFORMATION
PROGRAM:                PEO CS&CSS OMNIBUS III
                        Technical Manual Conversion for the 910 MCV-Mine Clearing System  HYDREMA

CONTRACT:               W56HZV-09-A-A902; Task Order 0010

PURPOSE:                The purpose of this Task Order is for the contractor to provide services
                        to convert and provide technical manuals as described in the Performance
                        Work Statement (PWS) found in Section C of this Task Order.

OBLIGATED AMOUNT:       $1,408,412.16 (Base Period Labor)
                        $   11,870.71 (Base Period Travel)
                        $        0.00 (Manpower Reporting)

                        $1,420,282.87 (Base Period Total)
```

1. The purpose of task order 0010 is to provide 29,240 hours of effort, with an option for an additional 8568 hours of effort, on a fixed price level of effort basis in order to perform the contract support services described in Section C of this task order.

2. The following Contract Line Item Numbers (CLINs) are hereby established:

BASE PERIOD

CLIN 0001AA- is created to fund "Labor" in the amount of $1,408,412.16. The total amount for the base year CLIN 0001AA "Labor" is $1,408,412.16.

CLIN 0001AB- is created to fund "Travel" in the amount of $11,870.71. The total amount for the base year CLIN 0001AB "Travel" is $11,870.71.

CLIN 0001AD- "Manpower Reporting Requirements" is established as a "Not Separately Priced (NSP)" CLIN.

OPTION PERIOD

CLIN 0002AA- entitled "LABOR – OPTION PERIOD 1, YEAR 2" is established for Option Provision H.1.  **This option CLIN (0002AA) is not currently exercised or funded.**

CLIN 0002AB- entitled "TRAVEL COSTS – OPTION PERIOD 1, YEAR 2" is established for Option Provision H.1.  **This option CLIN (0002AB) is not currently exercised or funded.**

CLIN 0002AD- entitled "Manpower Reporting Requirements' is established as a "Not Separately Priced (NSP)" CLIN applicable to the "OPTION PERIOD" provision as defined in Section F and Section H of the Task Order.  **This option CLIN (0002AD) is not currently exercised or funded.**

3. The Period of Performance for this Task Order is 26 Aug 2011 to 25 Aug 2013 as set forth in Section F.

4. Deliverables under this Task Order are set forth in the CDRLs referenced in the attached PWS and are incorporated into this Task Order.

5. The total dollar value of this task order is $1,420,282.87 including labor, travel, and ODCs & Materials; but, excluding the option period.

*** END OF NARRATIVE A0001 ***

| | Regulatory Cite | Title | Date |
|---|---|---|---|
| 1 | 52.232-4007 (TACOM) | WIDE AREA WORKFLOW (WAWF), CODES, AND DESIGNATED ACCEPTORS | APR/2008 |

TACOM-Warren uses WAWF-RA (Receipt and Acceptance) to electronically process vendor requests for payment.  (See DFARS clause 252.232-7003, entitled Electronic Submission of Payment Requests and Receiving Reports).  Under WAWF-RA, vendors electronically submit (and track) invoices, and receipt/acceptance documents/reports.  Submission of hard copy DD250/invoices is no longer acceptable for payment purposes.

The contractor shall register to use WAWF-RA at https://wawf.eb.mil   There is no charge to use WAWF.  Direct any questions relating to

**A2**

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | | **Page** 3 **of** 25 |
|---|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010 | **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

system setup and vendor training to the Help Desk at Ogden, UT at 1-866-618-5988.  Web-based training for WAWF is also available at http://www.wawftraining.com/

To obtain payment, WAWF requires the contractor to input/indicate the various DoDAAC (Department of Defense Activity Address Code) codes that apply to the acquisition.  These codes can be found on the cover page of contracts/orders as described below.

Also, contractors must ensure to include the purchase request number in the line item description.  This number can be found under the line item description on the order/contract.

(Type of Invoice:  If this contract calls for contractor submission of a Material Inspection and Receiving report by virtue of the inclusion of the clause at DFARS 252.246-7000, Material Inspection and Receiving Report, use a combo Invoice and Receiving Report.  If this DFARS clause is NOT in the contract, use a two-in-one invoice as described in WAWF.)

USE THE FOLLOWING CODES TO ROUTE YOUR INVOICES THROUGH WAWF:

- Your firms CAGE code (found in Block 15A of SF 33; Block 17a of SF 1449; Block 14 of SF 1442; Block 7 of SF 26)
- Issue and Admin DoDAAC Code (found in Block 7 of SF 33; Block 9 of SF 1449; Block 7 of SF 1442; Block 5 of SF 26)
- Ship-To DoDAAC Code (if deliverables are involved) (found in Section B of the contract where SF 33, SF 1442, or SF 26 is the cover page; Block 15 of SF 1449)
- Accept-By DoDAAC Code:  W90Z7Q
- Payment DoDAAC Code. (found in Block 25 of SF 33; Block 18a of SF 1449; Block 27 of SF 1442; Block 12 of SF 26)

The WAWF system will prompt for additional e-mail submission after clicking Signature.  The following additional e-mail submissions are required:

       Primary Acceptor Name:  Lisa Rowley
       Primary Acceptor e-mail:  lisa.l.rowley.civ@mail.mil

       Alternate Acceptor Name:
       Alternate Acceptor e-mail:

       Third-level Acceptor Name
       Third-level Acceptor e-mail:

The paying office DoDAAC and mailing address is located on the first page of the award.  To track the status of your invoice, click on the link, Pay status (myInvoice-External link) at the bottom of the left-hand menu.

If your paying office is Columbus, direct any payment-related questions to the Defense Finance Accounting Services (DFAS) Columbus at 1-888-756-4571.  Please have your order number and invoice ready when calling about payment status.  If your paying office is other than Columbus, contact your contract administrator for the customer service phone/fax numbers.

               [End of Clause]

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page   4 **of** 25 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010 **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | |
| 0001 | SECURITY CLASS: Unclassified | | | | |
| 0001AA | LABOR - BASE PERIOD | | | | $    1,408,412.16 |

```
           NOUN: AMCS-Hydrema Service
           PRON: 4I9281271A   PRON AMD: 01   ACRN: AA
           AMS CD: 53202881127

              Services for Base Period

              The estimated level of effort for each labor and
              cost category to be provided based on the ceiling
              amount
              is as follows:

              Labor Hour Breakout:

              Manager IV (Program)        2,140 hours
              Admin Specialist II         1,040 hours
              Technical Writer/Editor III  3,120 hours
              Technical Writer/Editor II  16,640 hours
              Technical Writer/Editor I    2,080 hours
              Analyst, Logistics III       1,040 hours
              Analyst, Logistics II        1,040 hours
              Graphics Specialist          2,080 hours
              Program Analyst, Intermediate ___60 hours
              Total Hours                 29,240 hours

              Total Labor Cost            $1,408,412.16

              It is recognized and agreed that the level of
              effort for each labor and cost category may vary
              and that personnel and other costs will be utilized
              only to the extent necessary to perform the
              required work.

              TERM OF THE ORDER: The period of performance (POP)
              for this CLIN will be 26 Aug 2011  25 Aug 2012.

              TASK ORDER FUNDING
              Funds have been allotted for this order in the
              amount listed above. The Government shall not be
              obligated to pay the Contractor in excess of
              established amounts for work performed under
              this order, and the Contractor shall not be
              obligated to continue performance under this
              order or to incur costs in excess of obligated
              amounts, unless and until the Contracting Officer
              notifies the Contractor by written modification
              to this task order that the funds available
              for order performance have been increased and
              specifies a revised order amount.


                      (End of narrative B001)
```

**A4**

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 5 **of** 25 |
|---|---|---|
| | **PIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | Inspection and Acceptance<br>INSPECTION: Origin    ACCEPTANCE: Origin<br><br>Deliveries or Performance<br>DLVR SCH<br>REL CD         QUANTITY        PERF COMPL<br> 001              0          25-AUG-2012<br><br>           $    1,408,412.16 | | | | |
| 0001AB | TRAVEL - BASE PERIOD<br><br>NOUN: AMCS-Hydrema Service<br>PRON: 4I9281271A    PRON AMD: 01    ACRN: AA<br>AMS CD: 53202881127<br><br>  CLIN 0001AB is a "not to exceed" TRAVEL CLIN.<br><br>  Travel is invoiced as cost only, no fee.<br><br>  TRAVEL CLIN 0001AB is fully funded in the amount<br>  of $11,870.71.<br><br>  The Period of Performance (POP) for this CLIN will<br>  be 26 Aug 2011  25 Aug 2012.<br><br>        (End of narrative B001)<br><br><br>Inspection and Acceptance<br>INSPECTION: Origin    ACCEPTANCE: Origin<br><br>Deliveries or Performance<br>DLVR SCH<br>REL CD         QUANTITY        PERF COMPL<br> 001              0          25-AUG-2012<br><br>        $      11,870.71 | | | | $        11,870.71 |
| 0001AD | MANPOWER REPORTING - BASE PERIOD<br><br>NOUN: MANPOWER REPORTING<br><br>Manpower Reporting Requirements to Account for<br>Contract Services<br><br>In accordance with the PWS, the required<br>information shall be reported to the secure<br>website under two (2) circumstances: | | | $      ** NSP ** | $      ** NSP ** |

**A5**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page  6 **of** 25 |
|---|---|---|
| | **PIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** | |

**Name of Offeror or Contractor:**  DRS C3 & AVIATION COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | a) annually, during the month of Oct, or | | | | |
| | b) within 30 days following contract expiration or termination for contracts crossing fiscal years. | | | | |
| | The Performance Certifier is responsible for ensuring that the contractor has reported the required information. Information must be verified before the Performance Certifier will certify invoices for payment under this CLIN. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance | | | | |
| | INSPECTION: Destination     ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance | | | | |
| | DLVR SCH                              PERF COMPL | | | | |
| | REL CD          QUANTITY              DATE | | | | |
| |  001                 0             25-AUG-2012 | | | | |
| 0002 | SECURITY CLASS: Unclassified | | | | |
| 0002AA | UNEXERCISED LABOR – OPTION PERIOD 1 | | | | $          439,610.22 |
| | NOUN: HYDREMA | | | | |
| | Services for Option Period | | | | |
| | THIS OPTION CLIN (0002AA) IS NOT CURRENTLY EXERCISED OR FUNDED. THE DOLLAR FIGURE SHOWN IN THE "AMOUNT" COLUMN FOR THIS CLIN REPRESENTS THE POTENTIAL MAXIMUM VALUE OF THE CLIN IF THE OPTION IS LATER EXERCISED IN FULL BY THE CONTRACTING OFFICER. | | | | |
| | The estimated level of effort for each labor and cost category to be provided based on the ceiling amount is as follows: | | | | |
| | Labor Hour Breakout: | | | | |
| | Manager IV (Program)           644 hours | | | | |
| | Admin Specialist II            208 hours | | | | |
| | Technical Writer/Editor III    624 hours | | | | |
| | Technical Writer/Editor II   4,992 hours | | | | |
| | Technical Writer/Editor I      624 hours | | | | |
| | Analyst, Logistics III         416 hours | | | | |
| | Analyst, Logistics II          416 hours | | | | |
| | Graphics Specialist            624 hours | | | | |
| | Program Analyst, Intermediate   20 hours | | | | |
| | Total Hours                  8,568 hours | | | | |
| | Total Labor Cost           $439,610.22 | | | | |

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 7 of 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | It is recognized and agreed that the level of effort for each labor and cost category may vary and that personnel and other costs will be utilized only to the extent necessary to perform the required work. | | | | |
| | TERM OF THE ORDER: The period of performance (POP) for this CLIN will be 26 Aug 2012  25 Aug 2013. | | | | |
| | TASK ORDER FUNDING<br>Funds have been allotted for this order in the amount listed above. The Government shall not be obligated to pay the Contractor in excess of established amounts for work performed under this order, and the Contractor shall not be obligated to continue performance under this order or to incur costs in excess of obligated amounts, unless and until the Contracting Officer notifies the Contractor by written modification. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Origin    ACCEPTANCE: Origin | | | | |
| | Deliveries or Performance | | | | |
| 0002AB | UNEXERCISED TRAVEL - OPTION PERIOD 1 | | | | $          6,571.00 |
| | NOUN: HYDREMA | | | | |
| | THIS OPTION CLIN (0002AB) IS NOT CURRENTLY EXERCISED OR FUNDED. THE DOLLAR FIGURE SHOWN IN THE "AMOUNT" COLUMN FOR THIS CLIN REPRESENTS THE POTENTIAL MAXIMUM VALUE OF THE CLIN IF THE OPTION IS LATER EXERCISED IN FULL BY THE CONTRACTING OFFICER. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Origin    ACCEPTANCE: Origin | | | | |
| | Deliveries or Performance | | | | |
| 0002AD | UNEXERCISED MANPOWER REPORTING | | | | |
| | NOUN: HYDREMA | | | | |

**A7**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 8 of 25 |
|---|---|---|
| | PIIN/SIN W56HZV-09-A-A902/0010 **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | In accordance with the PWS, the required information shall be reported to the secure website under two (2) circumstances: | | | | |
| | a) annually, during the month of Oct, or | | | | |
| | b) within 30 days following contract expiration or termination for contracts crossing fiscal years. | | | | |
| | The Performance Certifier is responsible for ensuring that the contractor has reported the required information. Information must be verified before the Performance Certifier will certify invoices for payment under this CLIN. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination    ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance | | | | |

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page**  9  **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

| | Regulatory Cite | Title | Date |
|---|---|---|---|
| 1 | 52.237-4000 (TACOM) | CONTRACTOR MANPOWER REPORTING (CMR) | FEB/2007 |

The Office of the Assistant Secretary of the Army (Manpower & Reserve Affairs) operates and maintains a secure Army data collection site where the contractor will report ALL contractor manpower (including subcontractor manpower) required for performance of this contract. The contractor is required to completely fill in all the information in the format using the following web address: https://cmra.army.mil . The required information includes the following:

(1) Contracting Office, Contracting Officer, Contracting Officer's Technical Representative;

(2) Contract number, including task and delivery order number;

(3) Beginning and ending dates covered by reporting period;

(4) Contractor name, address, phone number, e-mail address, identity of contractor employee entering data;

(5) Estimated direct labor hours (including sub-contractors);

(6) Estimated direct labor dollars paid this reporting period (including sub-contractors);

(7) Total payments (including sub-contractors);

(8) Predominant Federal Service Code (FSC) reflecting services provided by contractor (and separate predominant FSC for each sub-contractor if different);

(9) Estimated data collection cost;

(10) Organizational title associated with the Unit Identification Code (UIC) for the Army Requiring Activity (the Army Requiring Activity is responsible for providing the contractor with its UIC for the purposes of reporting this information);

(11) Locations where contractor and sub-contractors perform the work (specified by zip code in the United States and nearest city, country, when in an overseas location, using standardized nomenclature provided on website);

(12) Presence of deployment or contingency contract language; and

(13) Number of contractor and sub-contractor employees deployed in theater this reporting period (by country).

As part of its submission, the contractor will also provide the estimated total cost (if any) incurred to comply with this reporting requirement. Reporting period will be the period of performance not to exceed 12 months ending September 30 of each government fiscal year and must be reported by 31 October of each calendar year.

[End of Clause]

Performance Work Statement

PART 1
Services to Create Technical Manuals for TACOM LCMC Managed Publications

1.0  Scope: Using commercial off the shelf manuals produced by the manufacturer as source data, the contractor shall furnish professional services to create and deliver the following Technical Manuals for the 910 MCV-Mine Clearing System, HYDREMA:

    a. TM 9-2355-381-10, Operator Manual
    b. TM 9-2355-381-23&P, Field Maintenance Manual Repair Parts and Special Tools List
    c. NMWR 9-2355-381, National Maintenance Work Requirements

1.0.1 The resulting Technical Manuals will enable military field users to support their equipment with current parts information for provisioning, and updated procedures for maintenance and overhaul.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 10 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

1.1  Background:  The services to be furnished for the required Technical Publications include provisioning, technical writing, illustration, content development and quality assurance. Technical Manuals (TM) shall be developed in accordance with (IAW) AR 750-1, which details the approved Two Level Maintenance (TLM) Logistics Management Information Baseline (LMI) which the contractor shall apply when developing Technical Manuals per this performance work statement (PWS).  Further, the Technical Manuals shall be written to conform to MIL-STD 40051-2A requirements.

1.2  Period of Performance: Base Year      26 Aug 2011  25 Aug 2012
                             Option Year 1  26 Aug 2012  25 Aug 2013

1.2.1 Options:  The Government reserves the right to extend the term of this task order at the prices set forth in accordance with the terms and conditions contained in clause 52.217-9 entitled Option to Extend the Term of the Contract, and clause 52.217-8 entitled, Option to Extend Services.

1.2.1  In the event the Contracting Officer exercises Option 1 prior to the end of the base period of performance, the term of this task order may be extended by up to an additional 12 months after expiration of the base period.  The Contracting Officer may exercise Option 1 in increments, and may exercise Option 1 wholly or in part.  If the Contracting Officer has exercised a portion of Option 1 less than 100% of the available option, the Contracting Officer can later exercise one or more additional portions of the unexercised Option 1, at any point prior to the expiration of the exercised portion of the Option 1 performance period.

1.2.2 Note that the labor rates specified in this task order as applicable to Options 1 shall not be in effect until after the expiration of the prior labor rates, as follows.

1.2.2.1 The basic labor rates specified in this task order apply to all performance hereunder that takes place from the date of award through the end of one year thereafter.

1.2.2.2 The labor rates specified in this contract for Option 1 apply only if Option 1 is exercised by the Government, and only for performance under this task order that occurs more than one year from the date of task order award.

1.3  General Information

Contractor Quality Control:

1.3.1  The Contractor shall implement and maintain an effective quality control program to ensure services are performed in accordance with this Performance Work Statement (PWS). The Contractor shall implement procedures to identify and prevent or ensure non-recurrence of defective services. The contractors quality control program is the means of assuring the work complies with the requirement of this PWS. The contractor shall provide a Quality Control Plan (QCP) (CDRL A008, see attachment 3) at the Start of Work meeting (see paragraph 3.1.4 below).  The QCP shall include a description of the inspection system to cover all services listed in the PWS.  The description shall include methods for identifying and preventing defects in quality of services performed.  The contractor shall develop quality control procedures that address the area identified in Technical Exhibit 1 Performance Requirement Summary.  The Government will review and either accept or deny the QCP within 10 business days.  After receiving Government acceptance of the quality control plan, any subsequent requested changes to the QCP shall be submitted to the Contracting Officer for approval no later than 10 working days prior to the proposed effective date of the change.

1.3.1.1  Quality Assurance (QA) of equipment publications.  The contractor shall be responsible for the quality of the equipment publications deliverables.  All delivered TM information shall be complete, technically accurate and useable by US Army Soldiers.  The contractor shall develop and use a QCP IAW the following:

1.3.1.1.1  (i) Periodic QA reviews by persons different than those preparing the TMs, (ii) maintenance of QA records, (iii) TM development process improvement, and (iv) data controls to insure that current, accurate engineering and parts information is available to TM preparers.

1.3.1.1.2 The publications QA operation shall include QA personnel that are not the writers or editors of the publications being prepared.  QA records shall be maintained, showing those publications corrections, deletions, and additions that were identified during publications validation process.

1.3.1.1.3 Government representatives have the right to review and comment on the contractors QA plan, records, and processes

1.3.2  Government Quality Assurance:  The government shall evaluate the contractors performance under this contract in accordance with the Quality Assurance Surveillance Plan (QASP) at Attachment 1. This plan is primarily focused on what the Government must do to ensure that the contractor has performed in accordance with the performance standards. It defines how the performance standards will be applied, the frequency of surveillance, and the acceptable defect rate (s).

1.3.3  Government Incentives and Remedies:

1.3.3.1  Incentives:  The Contracting Officers Representative (COR) performing surveillance will document high quality performance (e.g.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 11 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

timely delivery of high-quality data; accuracy and high-quality content of reports) and ensure this record of performance becomes a part of the contractors past performance record for this order.

1.3.3.2 Remedies:  Timely submission of all deliverables addressing all required content in a high-quality manner is paramount; therefore, contractor failure in this task will result in (1) withholding of payments until the Government can determine the ramifications of the below standard performance, see Attachment 2, (2) contractor correction at no additional fee to the Government and (3) documentation of negative past performance.  If the contractor believes that there are excusable circumstances, the contractor shall inform the Contracting Officer.  Excusable circumstances may result in adjustment of the consequences mentioned in this paragraph.  This paragraph does not invalidate any of the usual rights allowed by the Inspection of Services clause.

1.3.4  Organizational Conflict of Interest:
 The contractor shall comply with the clause entitled Avoidance of Organizational Conflict of Interest (OCI) located elsewhere in this TOR, which will be included in the resultant Task Order.

1.3.5  Contractor Personnel Requirements

1.3.5.1  Contractor personnel shall be U.S. Citizens.

1.3.5.2  Contractor personnel shall be capable of reading, writing, and speaking English.

1.3.6 Non Disclosure Agreement:

1.3.6.1 Before performing work on this Task Order, all Contractor personnel performing work per this PWS shall sign a Non-Disclosure Agreement, see Attachment 2, to be legally bound and prohibited from disclosing unauthorized information.  Originals shall be maintained on file at the Contractor facility, and copies shall be electronically submitted to the COR, prior to work commencing.

1.3.6.2 The Contractor agrees to use and examine all information provided by the Government exclusively in the performance of this task order and to take the necessary steps in accordance with Government regulations to prevent disclosure of such information to any party outside the Government or Government designated support contractors possessing appropriate proprietary agreements.

1.3.6.3 The Contractor agrees to indoctrinate its personnel who have access to sensitive information concerning the relationship under which the Contractor has possession of or access to the information. Contractor personnel shall not engage in any other action, venture or employment wherein sensitive information will be used for the profit of any party other than those furnishing the information.

1.3.6.4 The Contractor shall restrict access to sensitive/proprietary information to the minimum number of employees necessary for task order performance.

1.3.7  Place of Performance:  The primary Place of Performance shall be the contractors facility, although some travel to TACOM will be required for the Start-of-Work meeting and for Validation, and travel to Yuma, AZ, will be required in order to attend Verification and Log Demo.

1.3.8  Travel:

1.3.8.1  Contractor personnel will be required to travel in order to perform this task order.

1.3.8.2  Travel shall be forecasted in the Monthly Status Report when known and the Government COR must authorize all travel in advance.

1.3.8.3  Authorized travel shall be payable as a direct cost and vouchers for reimbursement of travel must be included with the monthly invoice and approved by the COR prior to payment.

1.3.8.4  The contractor shall provide a written certification, prior to travel, that sufficient funds are available on the travel CLIN to complete the travel.

1.3.8.5  Air travel will be accomplished on regularly scheduled commercial flights in the most economical manner consistent with the successful accomplishment of the mission.

1.3.8.6  Reimbursement for the cost of lodging and incidental expenses will be considered to be reasonable and allowable to the extent that costs submitted for reimbursement do not exceed the rates and amounts allowed by the Joint Travel Regulation as applies to civilian employees of the United States Government.

1.3.8.7 There will be no reimbursement for local travel in and around contractors place of performance (within 50 mile radius).

1.3.8.8 Contractor shall submit a trip report (CDRL A007) after every trip.  The trip report shall be due to the COR within 10 days of return.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 12 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010       **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

1.3.9  Security Requirement:

1.3.9.1 If at any time during the resultant task order any contractor personnel require access to any Government database they must undergo a favorable background investigation and maintain a favorable security status in accordance with Army Regulation AR 25-2 and AR 380-67.

1.3.9.2 All information or data developed under this contract belongs to and is the property of the U.S. Government and shall be marked and handled as For Official Use Only (FOUO).  FOUO is information that may be withheld from the public under exemptions 2 through 9 of the Freedom of Information Act.  Control, marking and protection of FOUO information will be in accordance with this document and Army Regulation 380-5, Chapter 5, paragraph 5-1 through 5-6.  The contractor may disseminate FOUO information to their employees who have a need to know the information in connection with the task order.  At the conclusion of the contract, all FOUO material not delivered to the Government will be destroyed by tearing or shredding to make it unreadable.  FOUO material stored on electronic media will be purged or destroyed through a physical process.  The contractor shall not transmit any FOUO information electronically over the Internet unless it is encrypted by FIPS 140-2 standard.  Alternative dissemination methods include: secure fax; US Mail; and hand carry FOUO material. FOUO information may be disseminated by vendors internal computer network provided it is protected with a security firewall and individual access is controlled by using IDs and passwords.

1.3.9.3  The Contractor shall not release any information or data to third parties without the prior express written approval of the Procuring Contracting Officer.

1.3.9.4  The Contractor is responsible for obtaining required identification cards, tags, and badges in accordance with AR 600-8-14 for individuals traveling to TACOM or to Yuma, Arizona for official duty related to the resultant task order.

1.3.9.5  The contractor and subcontractor(s), if any, shall complete a background security check (SF-85P) of all personnel being assigned to work on the task order before each employee reports for duty to perform work.

1.3.9.6 The Contractor shall have access to Government data for the accomplishment of work under this task order; contractors shall conform to all security requirements.

1.3.10  Contracting Officer Representative (COR):  The COR is an individual designated in accordance with DFARS 201.602-2 and is authorized in writing by the contracting officer to perform specific technical functions. The contracting officer has designated Lisa Rowley, (586) 282-1217, \*HYPERLINK "mailto:lisa.rowley@us.army.mil" lisa.rowley@us.army.mil, as the contracting officers representative (COR) for this task order.  The Contractor will receive a copy of the COR appointment letter after task order award that will specify the extent of the CORs authority to act on behalf of the contracting officer.  The COR is not authorized to make any commitments or changes that will affect price, quantity, delivery or any other term or condition of this task order.  In addition to the duties and responsibilities identified in the COR appointment letter, the COR shall perform the functions stated in the Quality Assurance Surveillance Plan (QASP) which is attached to this task order.

1.3.11 Army Contractor Manpower Reporting System:
The contractor shall comply with the clause entitled Contractor Manpower Reporting in the resultant task order.

PART 2
GOVERNMENT FURNISHED INFORMATION and EQUIPMENT

2.1  The following types of Government Furnished Information (GFI) shall be provided by the Contracting Officer Representative for the 910 MCV- Mine Clearance System:

2.1.1  Access to the Equipment Specialist
2.1.2  Technical Data Package (TDP) and engineering drawings
2.1.3  Electronic files (text, illustrations, Portable Document Format (PDF))
2.1.4  Maintenance Allocation Chart (MAC), Provisioning Parts List
2.1.5  Commercial-Off-The-Shelf (COTS) Manuals
2.1.6  Specifications and standards cited in the Performance of Work Statement (PWS)
2.1.7  Additional GFI as required

2.2  The contractor shall have access to the following type of Government Equipment:

2.2.1 Access to the 910 MCV-Mine Clearing System located at TACOM Warren.

PART 3

SPECIFIC TASKS

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 13 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

3.0        Integrated Logistics Support (ILS) Program.

3.1 Requirements Technical Publications.  The contractor shall develop equipment Technical Manuals (TMs) In Accordance With (IAW) AR 750-1 which details the approved Two Level Maintenance (TLM) Logistics Management Information Baseline (LMI).  The LMI Baseline includes:

        TLM Caveat Sheet (assumptions/comments to the LMI data)
        Logistics Support Analysis (LSA)-001 Report (IAW MIL-PRF-49506
        LSA-004 Report (IAW MIL-PRF-49506)
        LSA-030 Report (IAW MIL-PRF-49506)
        LSA-036 Report (IAW MIL-PRF-49506)
        Commercial Off-The-Shelf Manuals


3.1.1 BASIC SERVICES.

        Integrated Logistics Support (ILS) Program.

The TM preparation requirements and the delivery requirements are described below.  The specifications shown below shall be used.
Copies can be obtained from the government Contracting Officer or the LOGSA website.

        MIL-STD-40051-2A              DoD Standard Practice, Preparation of Digital
                                      Technical Information for Page-Based TMs

        MIL-HDBK-1222D                DoD Handbook, Guide to the General Style and
                                      Format of U.S. Army Work Package Technical Manual.
                                      The HDBK should be used in conjunction
                                      with MIL-STD-40051-2A

        MIL-PRF-32216                 Performance Specification, Evaluation of
                                      Commercial off-the-shelf (COTS) Manuals and
                                      Preparation of Supplemental Data

        AR 25-30, 27 Mar 06           The Army Publishing Program

The following manuals shall be developed and delivered:

        TM 9-2355-381-10              Operator Manual, 910 MCV-Mine Clearing System, HYDREMA

        TM 9-2355-381-23&P            Field Maintenance Manual, to include the Repair
                                      Parts and SpecialTools List (RPSTL), 910 MCV-Mine Clearing System, HYDREMA

        NMWR 9-2355-381               National Maintenance Work Requirements
                                      (NMWR), 910 MCV-Mine Clearing System, HYDREMA

3.1.1.1  The operator manual shall be prepared and delivered IAW MIL-STD-40051-2A, Contract Data Requirements List (CDRL) A001, and all attachments.

3.1.1.2  The maintenance manual, with RPSTL included, shall be prepared and delivered IAW MIL-STD-40051-2A, CDRL A002, and all attachments.

3.1.1.3  The NMWR shall be prepared and delivered IAW MIL-STD-40051-2A, CDRL A003, and all attachments.

3.1.2  TM Deliverables.  All publications deliverables shall be delivered to the COR as hardcopies and electronic. This includes all deliverable data described in paragraph 3.1.2.4.  Final Reproducible Copy (FRC) will be delivered to TACOM on a disk (considered the electronic copy) and one hard copy.

3.1.2.1  A Preliminary Technical Manual (PTM) of each manual listed in paragraph 3.1.1 above shall be delivered in accordance with CDRLs A001, A002 and A003. The PTM must be a complete publication in the same format as the final publication.  The PTM shall include all required content per the CDRL and its attachments.

3.1.2.2  A Final Reproducible Copy (FRC) of each manual listed in paragraph 3.1.1 above shall be delivered as required in the appropriate CDRL.  The FRC shall have all PTM review, Quality Assurance (QA) reviews, validation and verification corrections, changes, and additions incorporated.

3.1.2.3  The contractor shall deliver all source material, defined as operating plans, standard procedures, computer files, and residual

| CONTINUATION SHEET | **Reference No. of Document Being Continued** | **Page** 14 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

material to include computer disks, and other media containing digital files developed to fulfill the requirements of this TO.  Per paragraph 3.1.2.6 below, the contractor shall furnish all data to the Government with unlimited rights to use any and all publications data/products produced under this Performance Work Statement.

3.1.2.4  An XML-tagged instance is required, per MIL-STD 40051-2A, (CDRLs A001, A002 and A003) for the below specified equipment publications.

    TM 9-2355-381-10           Operator Manual, Mine Clearing Vehicle, HYDREMA

    TM 9-2355-381-23&P         Field Maintenance Repair Parts and Special Tools List(RPSTL), Mine Clearing Vehicle, HYDREMA

    NMWR 9-2355-381           National Maintenance Work Requirements, Mine Clearing Vehicle, HYDREMA

3.1.2.5  Data Rights.  Equipment publications content prepared under this TO shall be delivered with unlimited rights to the government for reproduction, use, and distribution.  If any content includes copyrighted material, the contractor shall furnish copyright release for that data.  Refer to Department of Defense Federal Acquisition Regulation Supplement, Warranty of Data; paragraph 252.246-7001 for warranty of data requirements and invocation stipulation.

3.1.3  QA of equipment publications.  The contractor shall be responsible for the quality of the equipment publications deliverables. All delivered TM information shall be complete, technically accurate and useable by US Army Soldiers.  The contractor shall develop and use a quality assurance plan IAW paragraphs 1.3.1, 1.3.1.1, 1.3.1.1.1, 1.3.1.1.2 and 1.3.1.1.3.

3.1.4  Start of Work Meeting.  A publications start-of-work meeting will be held by the government with the contractor at the contractors location within the first month after TO award.  The purpose of this meeting is to review publications TO requirements, establish lines of communications, answer all questions, and develop a publications schedule based on the requirements of the program and the TO.

3.1.5  Publications In-Process Review.  The contractor shall support a government In-Process Review of the Operator Manual at TACOM Warren 120 days after the Start of Work meeting by (i) providing draft procedures and draft artwork;(ii) summarizing work accomplished to date; (iii)answering questions about publications work processes; (iv) providing records of QA reviews; and (v) responding to government comments regarding publications processes or work samples.

3.1.6  Publications Validation.  The following paragraphs apply to procedures.  Procedures must be created in the TM as defined by the LMI Baseline (refer to paragraph 3.1 above). For production of TMs required in this PWS, all procedures are considered new procedures.

3.1.6.1  The Contractor shall validate the technical accuracy and adequacy of all Procedures.  The contractor shall maintain records of validation reviews that show when the material was performed/reviewed, what the findings were, and all corrective actions taken. Validation personnel must include personnel that did not author the procedures being validated.  The Contractor may schedule the validation activity when and where needed in order to meet publications milestones that will be developed during the Start of Work Meeting (see paragraph 3.1.4) and CDRL delivery requirements.  Government representatives have the right to examine these records upon request and to witness validation work.

3.1.6.2  Maintenance procedures shall be 100% performance validated.  These procedures requiring 100% performance validation shall be determined from the maintenance analysis effort for this equipment.  Troubleshooting procedures shall be validated by performance and review of engineering data.  PMCS content shall be validated by performance.  Other content, such as Controls and Indicators, front matter, rear matter, torque tables, lists, theory of operation, glossary, and index information shall be validated by review against engineering data, TM data, and/or Government procured production configuration hardware.

3.1.6.3  The Contractor is required to have and use a validation plan for validating TM content.  The validation plan shall specify what TM content is to be validated and when and where that content is to be validated.  The validation plan shall describe the validation method(s) used for each type of TM content.  The Government will review the validation plan and determine if it is acceptable.  If the Government determines your validation plan will not ensure technical accuracy and adequacy of all TM deliverables, you will be required to change the plan to ensure your validation efforts result in an acceptable level of quality assurance.  A validation report shall be delivered after validation completion (CDRL A006).  The validation report shall certify that validation has been completed and that the TM deliverable has had QA applied with use of the publications defects list.

3.1.7  TM Verification.  The government is responsible for verification of the manuals to assure accuracy and usability by US Army Soldiers with assistance from the contractor.  Government representatives will review the Preliminary Technical Manuals (PTM) (refer to paragraph 3.2.3 below) to determine that proper QA has been used during preparation, that the manuals appear to be complete, and that the PTMs are adequate for verification.  In accomplishing verification, the government may choose to verify manuals by desk-top review, review on equipment, or actual performance, or any combination of these methods.  The government intends to verify by performance to the extent required to assure that the contractor has properly prepared TM content that is usable.

3.1.7.1  The Contractor shall provide support to the government verification process.  This support shall consist of contractor personnel tracking changes to the master draft and assisting with record keeping.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 15 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

3.1.7.2  Contractor shall correct all errors found during government verification reviews in all publications deliverables.

3.1.8  Equipment Publications Development Status Reports.  The Contractor shall deliver monthly status reports as required by CDRL A004.


3.2 CDRLs / Deliverables:

3.2.1 Monthly Contractor Progress, Status and Management Reports:  The Contractor personnel shall electronically submit monthly status reports to the COR in Contractor format.

3.2.1.1  Each monthly report shall be a synopsis of contractor personnel activity for the previous month, including monthly accomplishments and discussion of anticipated activities for the following month.

3.2.1.2  Each report shall also include amount of funds and number of hours expended; funds and hours remaining; detailed description of the task order status; actions items and responsible parties; outstanding issues or problems; and work effort completed to date to include all required deliverables specified in the statement of work.

3.2.1.3  The Contractor personnel shall deliver the monthly status report by the 30th of each month (CDRL A004).

3.2.2  The contractor shall also submit meeting minutes for all scheduled meetings and teleconferences, whether at the contractors or governments request, within 5 business days after each meeting with the Government (CDRL A009).

3.2.3  The contractor shall provide Preliminary Technical Manuals and Final Reproducible Copies (FRC) which are due IAW CDRL A001, A002, and A003 and schedule determined at start of work meeting.

3.2.4  A Quality Control Plan will be submitted by the contractor at the start of work meeting (CDRL A008).

3.2.5  The contractor will develop a Validation Plan not later than 14 days prior to start of Validation (CDRL A005).

3.2.6  The Validation Report shall be due concurrent with the first submittal of the Draft Equipment Publication Technical Manual (CDRL A006).


*** END OF NARRATIVE C0001 ***

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 16 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

INSPECTION AND ACCEPTANCE

| | Regulatory Cite | Title | Date |
|---|---|---|---|
| 1 | 52.246-4 | INSPECTION OF SERVICES--FIXED-PRICE | AUG/1996 |

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 17 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

CONTRACT ADMINISTRATION DATA

| LINE ITEM | PRON/ AMS CD/ MIPR | OBLG STAT | JO NO | ACRN | | OBLIGATED AMOUNT |
|---|---|---|---|---|---|---|
| 0001AA | 4I9281271A | 2 | 9RM221 | AA | $ | 1,408,412.16 |
| | 53202881127 | | | | | |
| | A1915127HG4I | | | | | |
| 0001AB | 4I9281271A | 2 | 9RM221 | AA | $ | 11,870.71 |
| | 53202881127 | | | | | |
| | A1915127HG4I | | | | | |
| | | | | | TOTAL  $ | 1,420,282.87 |

| ACRN | ACCOUNTING CLASSIFICATION | | | | OBLIGATED AMOUNT |
|---|---|---|---|---|---|
| AA | 21   92035000091B1B03P5320282512 | S28017 | W15BW9 | $ | 1,420,282.87 |
| | | | | TOTAL   $ | 1,420,282.87 |

| LINE ITEM | ACRN | EDI/SFIS ACCOUNTING CLASSIFICATION | | | | |
|---|---|---|---|---|---|---|
| 0001AA | AA | 21  091120350000 | W15BW9 | 91B1B0353202881127125124I9281271A | 9RM221 | S28017 |
| 0001AB | AA | 21  091120350000 | W15BW9 | 91B1B0353202881127125124I9281271A | 9RM221 | S28017 |

Payment, Firm-Fixed-Price, Level of Effort

a. The contractor may expend up to the total number of level-of-effort hours set forth in the labor categories at the firm fixed-price rates in the task order.

b. The contractor shall be paid only for the total hours expended upon verification by the contracting officer or the contracting officer's representative (COR) that the performance is acceptable. The contractor may invoice monthly at the firm fixed-price billing rates for the actual hours expended per labor category.

c. If it appears, in accordance with the Performance Standards in the PWS, that the contractor's best effort is not being applied, future options shall not be exercised under this task order.

d. If material/ODCs and/or travel is included in the task order, they shall be established as ceiling priced CLINs. The contractor may add indirect rates (burdens) to these items if they have been approved for this task order period of performance, however no profit is allowed on these items.

e. The contractor may use a greater or lesser number of hours in any labor category, but shall not charge more than the firm fixed-price hourly rates and shall not exceed the total level of effort hours or the total amount of the Labor CLIN included in this task order.

f. If at any time the contractor has reason to believe that the hourly rate payments, travel and material amounts that will accrue in performing this task order, if added to all other payments and amounts previously accrued, will exceed 85 percent of the total price of the task order, the contractor shall notify the contracting officer, in writing. The notification shall include a revised estimate of the total price to the Government for performing this task order to the end of the awarded period of performance, with supporting reasons and documentation why the labor hours were expended so quickly and ahead of schedule. The 85% notification shall also be sent to the contract specialist and COR.

*** END OF NARRATIVE G0001 ***

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 18 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

SPECIAL CONTRACT REQUIREMENTS
H.1 Option to Extend Services and the Term of the Task Order

The Government may require continued performance of any services within the limits and at the rates specified in the task order and contract. This option may be exercised in one or more increments, or in total, by written notice to the contractor no later than task order expiration. The option period exercised may extend the period of performance by no more than 12 months.

*** END OF NARRATIVE H0001 ***

**A18**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 19 of 25 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010          MOD/AMD | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

CONTRACT CLAUSES

| | Regulatory Cite | Title | Date |
|---|---|---|---|
| 1 | 52.228-5 | INSURANCE--WORK ON A GOVERNMENT INSTALLATION | JAN/1997 |
| 2 | 52.232-25 | PROMPT PAYMENT | OCT/2008 |
| 3 | 52.243-1 | CHANGES--FIXED PRICE  (AUG 1987) -- ALTERNATE I  (APR 1984) | APR/1984 |
| 4 | 52.243-1 | CHANGES--FIXED PRICE | AUG/1987 |
| 5 | 52.245-1 | GOVERNMENT PROPERTY | AUG/2010 |
| 6 | 52.245-9 | USE AND CHARGES | AUG/2010 |
| 7 | 252.201-7000 | CONTRACTING OFFICER'S REPRESENTATIVE | DEC/1991 |
| 8 | 252.204-7000 | DISCLOSURE OF INFORMATION | DEC/1991 |
| 9 | 252.227-7020 | RIGHTS IN SPECIAL WORKS | JUN/1995 |
| 10 | 252.227-7025 | LIMITATIONS ON THE USE OR DISCLOSURE OF GOVERNMENT-FURNISHED INFORMATION MARKED WITH RESTRICTIVE LEGENDS | MAR/2011 |
| 11 | 252.246-7001 | WARRANTY OF DATA | DEC/1991 |
| 12 | 52.212-5 | CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS | AUG/2011 |

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

  (1) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22U.S.C. 7104(g)).

     --Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

  (2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

  (3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

  ___ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sep 2006), with Alternate I (Oct 1995)(41 U.S.C. 253g and 10 U.S.C. 2402).

  _X_ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

  ___ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub. L. 111-5).  (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

  ___ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (Jul 2010) (Pub. L. 109-282) (31 U.S.C. 6101 note).

  ___ (5) 52.204-11, American Recovery and Reinvestment Act -- Reporting Requirements (JUL 2010) (Pub. L. 111-5).

  _X_ (6) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (DEC 2010) (31 U.S.C. 6101 note).

  ___ (7) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (section 740 of Division C of Public Law 111-117, section 743 of Division D of Public Law 111-8, and section 745 of Division D of Public Law 110-161)

  ___ (8) 52.219-3, Notice of Total HUBZone Set-Aside or Sole-Source Award (Jan 2011)(15 U.S.C. 657a).

  ___ (9) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

  ___ (10) [Reserved]

  ___ (11)(i) 52.219-6, Notice of Total Small Business Set-Aside (June 2003) (15 U.S.C. 644).

  ___ (ii) Alternate I (Oct 1995) of 52.219-6.

  ___ (iii) Alternate II (Mar 2004) of 52.219-6.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 20 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

\_\_\_ (12)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003)(15 U.S.C. 644).

\_\_\_ (ii) Alternate I (Oct 1995) of 52.219-7.

\_\_\_ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (13) 52.219-8, Utilization of Small Business Concerns (Jan 2011) (15 U.S.C. 637(d)(2) and (3)).

_X_ (14)(i) 52.219-9, Small Business Subcontracting Plan (Jan 2011)(15 U.S.C. 637 (d)(4)).

\_\_\_ (ii) Alternate I (Oct 2001) of 52.219-9.

\_\_\_ (iii) Alternate II (Oct 2001) of 52.219-9.

\_\_\_ (iv) Alternate III (Jul 2010) of 52.219-9.

\_\_\_ (15) 52.219-14, Limitations on Subcontracting (Dec 1996)(15 U.S.C. 637(a)(14)).

\_\_\_ (16) 52.219-16, Liquidated Damages--Subcontracting Plan (JAN 1999) (15 U.S.C. 637(d)(4)(F)(i)).

\_\_\_ (17)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Oct 2008)(10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

\_\_\_ (ii) Alternate I (June 2003) of 52.219-23.

\_\_\_ (18) 52.219-25, Small Disadvantaged Business Participation ProgramDisadvantaged Status and Reporting (Dec 2010)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

\_\_\_ (19) 52.219-26, Small Disadvantaged Business Participation ProgramIncentive Subcontracting (Oct 2000)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

\_\_\_ (20) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (May 2004)(15 U.S.C. 657 f)

\_\_\_ (21) 52.219-28, Post Award Small Business Program Rerepresentation (Apr 2009)(15 U.S.C. 632(a)(2)).

\_\_\_ (22) 52.219-29 Notice of Total Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (APR 2011).

\_\_\_ (23) 52.219-30 Notice of Total Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (APR 2011).

\_\_\_ (24) 52.222-3, Convict Labor (June 2003)(E.O. 11755).

_X_ (25) 52.222-19, Child LaborCooperation with Authorities and Remedies (Jul 2010) (E.O. 13126).

_X_ (26) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (27) 52.222-26, Equal Opportunity (Mar 2007)(E.O. 11246).

_X_ (28) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

_X_ (29) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010)(29 U.S.C. 793).

_X_ (30) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

_X_ (31) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

\_\_\_ (32) 52.222-54, Employment Eligibility Verification (Jan 2009). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

\_\_\_ (33)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 21 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (34) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

___ (35)(i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (DEC 2007) (E.O. 13423).
___ (ii) Alternate I (DEC 2007) of 52.223-16.
_X_ (36) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).
___ (37) 52.225-1, Buy American Act--Supplies (Feb 2009)(41 U.S.C. 10a-10d).

___ (38)(i) 52.225-3, Buy American Act Free Trade Agreements -- Israeli Trade Act (Jun 2009) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, Pub. L. 108-77, 108-78, 108-286, 108-301, 109-53, 109-169, 109-283, and 110-138).

___ (ii) Alternate I (Jan 2004) of 52.225-3.

___ (iii) Alternate II (Jan 2004) of 52.225-3.

___ (39) 52.225-5, Trade Agreements (Aug 2009) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

___ (40) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (41) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (42) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007)(42 U.S.C. 5150).

___ (43) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (44) 52.232-30, Installment Payments for Commercial Items (Oct 1995)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

_X_ (45) 52.232-33, Payment by Electronic Funds Transfer -- Central Contractor Registration (Oct. 2003)(31 U.S.C. 3332).

___ (46) 52.232-34, Payment by Electronic Funds Transfer -- Other Than Central Contractor Registration (May 1999)(31 U.S.C. 3332).

___ (47) 52.232-36, Payment by Third Party (FEB 2010)(31 U.S.C. 3332).

___ (48) 52.239-1, Privacy or Security Safeguards (Aug 1996)(5 U.S.C. 552a).

___ (49)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006)(46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.222-41, Service Contract Act of 1965, (Nov 2007)(41 U.S.C. 351, et seq.).

_X_ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989)(29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

_X_ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Multiple Year and Option Contracts) (Sep 2009)(29 U.S.C.206 and 41 U.S.C. 351, et seq.).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Sep 2009)(29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

_X_ (5) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

_X_ (6) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services--Requirements (Feb 2009) (41 U.S.C. 351, et seq.).

_X_ (7) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (Mar 2009) (Pub. L. 110-247).

**A21**

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 22 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

___ (8) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

_____

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

   (1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractors directly pertinent records involving transactions related to this contract.

   (2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

   (3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause--

   (i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

   (ii) 52.219-8, Utilization of Small Business Concerns (Dec 2010)(15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

   (iii) [Reserved]

   (iv) 52.222-26, Equal Opportunity (Oct 2010)(E.O. 11246).

   (v) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

   (vi) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998)(29 U.S.C. 793).

   (vii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010)(E.O. 13496).

   (viii) 52.222-41, Service Contract Act of 1965, (Nov 2007), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, et seq.)

   (ix) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22 U.S.C. 7104(g)).

       ___ Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

   (x) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (Nov 2007) (41 U.S.C. 351, et seq.)

   (xi) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services--Requirements (Feb 2009) (41 U.S.C. 351, et seq.)

   (xii) 52.222-54, Employment Eligibility Verification (Jan 2009).

   (xiii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (Mar 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

   (xiv) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006)(46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 23 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:**  DRS C3 & AVIATION COMPANY

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

| 13 | 252.212-7001 | CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS APPLICABLE TO DEFENSE ACQUISITIONS OF COMMERCIAL ITEMS | AUG/2011 |
|---|---|---|---|

(a) The Contractor agrees to comply with the following Federal Acquisition Regulation (FAR) clause which, if checked, is included in this contract by reference to implement a provision of law applicable to acquisitions of commercial items or components.

__X_ 52.203-3, Gratuities (APR 1984) (10 U.S.C. 2207).

(b) The Contractor agrees to comply with any clause that is checked on the following list of Defense FAR Supplement clauses which, if checked, is included in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items or components.

(1) _X__ 252.203-7000, Requirements Relating to Compensation of Former DoD Officials (JAN 2009) (Section 847 of Pub. L. 110-181).

(2) ____ 252.203-7003, Agency Office of the Inspector General (SEP 2010) (Section 6101 of Pub. L. 110-252, 41 U.S.C. 3509 note).

(3) ____ 252.205-7000, Provision of Information to Cooperative Agreement Holders (DEC 1991) (10 U.S.C. 2416).

(4) ____ 252.219-7003, Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (DoD Contracts) (OCT 2010) (15 U.S.C. 637).

(5) __X_ 252.219-7004, Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (Test Program) (Jan 2011) (15 U.S.C. 637 note).

(6)(i) ____ 252.225-7001, Buy American Act and Balance of Payments Program (JAN 2009) (41 U.S.C. 10a-10d, E.O. 10582).

   (ii) ___ Alternate I (DEC 2010) of 252.225-7001.

(7) ____ 252.225-7008, Restriction on Acquisition of Specialty Metals (JUL 2009) (10 U.S.C. 2533b).

(8) ____ 252.225-7009, Restriction on Acquisition of Certain Articles Containing Specialty Metals (Jan 2011) (10 U.S.C. 2533b).

(9) _X__ 252.225-7012, Preference for Certain Domestic Commodities (Jun 2010) (10 U.S.C. 2533a).

(10) ____ 252.225-7015, Restriction on Acquisition of Hand or Measuring Tools (JUN 2005) (10 U.S.C. 2533a).

(11) ____ 252.225-7016, Restriction on Acquisition of Ball and Roller Bearings (Jun 2011) (Section 8065 of Public Law 107-117 and the same restriction in subsequent DoD appropriations acts).

(12)(i) ____ 252.225-7021, Trade Agreements (JUN 2011) (19 U.S.C. 2501-2518 and 19 U.S.C. 3301 note).

   (ii) ___ Alternate I (SEP 2008) of 252.225-7021.

   (iii) ___ Alternate II (DEC 2010) of 252.225-7021.

(13) ____ 252.225-7027, Restriction on Contingent Fees for Foreign Military Sales (APR 2003) (22 U.S.C. 2779).

(14) ____ 252.225-7028, Exclusionary Policies and Practices of Foreign Governments (APR 2003) (22 U.S.C. 2755).

(15)(i) ____ 252.225-7036, Buy American Act--Free Trade Agreements--Balance of Payments Program (DEC 2010) (41 U.S.C. 10a-10d and 19 U.S.C. 3301 note).

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 24 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

(ii) ___ Alternate I (JUL 2009) of 252.225-7036.

(iii) ___ Alternate II (DEC 2010) of 252.225-7036.

(iv) ___ Alternate III (DEC 2010) of 252.225-7036.

(16) ____ 252.225-7039, Contractors Performing Private Security Functions (AUG 2011) (Section 862 of Pub. L. 110-181, as amended by section 853 of Pub. L. 110-417 and sections 831 and 832 of Pub. L. 111-383).

(17) ____ 252.225-7038, Restriction on Acquisition of Air Circuit Breakers (JUN 2005) (10 U.S.C. 2534(a)(3)).

(18) _X__ 252.226-7001, Utilization of Indian Organizations, Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns (SEP 2004) (Section 8021 of Public Law 107-248 and similar sections in subsequent DoD appropriations acts).

(19) __X_ 252.227-7015, Technical Data--Commercial Items (MAR 2011) (10 U.S.C. 2320).

(20) __X_ 252.227-7037, Validation of Restrictive Markings on Technical Data (SEP 1999) (10 U.S.C. 2321).

(21) _X__ 252.232-7003, Electronic Submission of Payment Requests and Receiving Reports (MAR 2008) (10 U.S.C. 2227).

(22) ___ 252.237-7010, Prohibition on Interrogation of Detainees by Contractor Personnel (NOV 2010) (Section 1038 of Pub. L. 111-84).

(23) ____ 252.237-7019, Training for Contractor Personnel Interacting with Detainees (DEC 2010) (Section 1092 of Public Law 108-375).

(24) _X__ 252.243-7002, Requests for Equitable Adjustment (MAR 1998) (10 U.S.C. 2410).

(25) ___ 252.246-7004, Safety of Facilities, Infrastructure, and Equipment for Military Operations (OCT 2010) (Section 807 of Public Law 111-84).

(26) ____ 252.247-7003, Pass-Through of Motor Carrier Fuel Surcharge Adjustment to the Cost Bearer (SEP 2010) (Section 884 of Public Law 110-417).

(27)(i) ____ 252.247-7023, Transportation of Supplies by Sea (MAY 2002) (10 U.S.C. 2631).

(ii) ____ Alternate I (MAR 2000) of 252.247-7023.

(iii) ____ Alternate II (MAR 2000) of 252.247-7023.

(iv) ____ Alternate III (MAY 2002) of 252.247-7023.

(28) ____ 252.247-7024, Notification of Transportation of Supplies by Sea (MAR 2000) (10 U.S.C. 2631).

(c) In addition to the clauses listed in paragraph (e) of the Contract Terms and Conditions Required to Implement Statutes or Executive Orders--Commercial Items clause of this contract (FAR 52.212-5), the Contractor shall include the terms of the following clauses, if applicable, in subcontracts for commercial items or commercial components, awarded at any tier under this contract:

(1) 252.225-7039, Contractors Performing Private Security Functions (AUG 2011) (Section 862 of Pub. L. 110-181, as amended by section 853 of Pub. L. 110-417 and sections 831 and 832 of Pub. L. 111-383).

(2) 252.237-7010, Prohibition on Interrogation of Detainees by Contractor Personnel (NOV 2010) (Section 1038 of Pub. L. 111-84).

(3) 252.237-7019, Training for Contractor Personnel Interacting with Detainees (SEP 2006) (Section 1092 of Public Law 108-375).

(4) 252.247-7003, Pass-Through of Motor Carrier Fuel Surcharge Adjustment to the Cost Bearer (SEP 2010) (Section 884 of Public Law 110-417).

(5) 252.247-7023, Transportation of Supplies by Sea (MAY 2002) (10 U.S.C. 2631).

(6) 252.247-7024, Notification of Transportation of Supplies by Sea (MAR 2000) (10 U.S.C. 2631).

(End of clause)

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 25 **of** 25 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010       **MOD/AMD** | |

**Name of Offeror or Contractor:** DRS C3 & AVIATION COMPANY

LIST OF ATTACHMENTS

| List of Addenda | Title | Date | Number of Pages | Transmitted By |
|---|---|---|---|---|
| Attachment 0001 | QUALITY ASSURANCE SURVEILLANCE PLAN | | 003 | EMAIL |
| Attachment 0002 | CDRLS | 10-MAR-2011 | 010 | EMAIL |
| Attachment 0003 | CONTRACTOR PROPOSAL | 18-JUL-2011 | 001 | EMAIL |

| **AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT** | | | **1. Contract ID Code** Firm Fixed Price | | **Page** 1 **Of** 34 |
|---|---|---|---|---|---|

| **2. Amendment/Modification No.** | **3. Effective Date** | **4. Requisition/Purchase Req No.** | | **5. Project No. (If applicable)** |
|---|---|---|---|---|
| 08 | 2013APR23 | SEE SCHEDULE | | |

| **6. Issued By** | **Code** W56HZV | **7. Administered By (If other than Item 6)** | **Code** S1002A |
|---|---|---|---|
| U.S. ARMY CONTRACTING COMMAND<br>JENNIFER JUSELA<br>WARREN, MICHIGAN 48397-5000<br>HTTP://CONTRACTING.TACOM.ARMY.MIL<br><br><br>EMAIL: JENNIFER.L.JUSELA@US.ARMY.MIL | | DCMA ORLANDO<br>3555 MAGUIRE BLVD<br>ORLANDO, FL  32803-3726 | |

| **8. Name And Address Of Contractor (No., Street, City, County, State and Zip Code)** | | **9A. Amendment Of Solicitation No.** |
|---|---|---|
| TOLLIVER GROUP, INC., THE<br>1742 WILLA CIR<br>WINTER PARK, FL 32792-6310 | ☐ | |
| | | **9B. Dated (See Item 11)** |
| | ☒ | **10A. Modification Of Contract/Order No.** |
| | | W56HZV-09-A-A902/0010 |
| | | **10B. Dated (See Item 13)** |
| **Code** 38CH2 | **Facility Code** | 2011AUG26 |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14.  The hour and date specified for receipt of Offers

☐ is extended,   ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing items 8 and 15, and returning _____ copies of the amendments: (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers.  **FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER.**  If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

**12. Accounting And Appropriation Data (If required)**
ACRN: AD NET INCREASE: $4,562,908.02

### 13. THIS ITEM ONLY APPLIES TO MODIFICATIONS OF CONTRACTS/ORDERS
It Modifies The Contract/Order No. As Described In Item 14.

| | | |
|---|---|---|
| ☐ | **A. This Change Order is Issued Pursuant To:**<br>The Contract/Order No. In Item 10A. | **The Changes Set Forth In Item 14 Are Made In** |
| ☐ | **B. The Above Numbered Contract/Order Is Modified To Reflect The Administrative Changes** (such as changes in paying office, appropriation data, etc.) Set Forth In Item 14, Pursuant To The Authority Of FAR 43.103(b). | |
| ☒ | **C. This Supplemental Agreement Is Entered Into Pursuant To Authority Of:** FAR 43.103(a)(3): Mutual Agreement | |
| ☐ | **D. Other (Specify type of modification and authority)** | |

**E. IMPORTANT:**   Contractor   ☐ is not,   ☒ is required to sign this document and return _____ copies to the Issuing Office.

**14. Description Of Amendment/Modification (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)**

SEE SECOND PAGE FOR DESCRIPTION

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| **15A. Name And Title Of Signer (Type or print)** | | **16A. Name And Title Of Contracting Officer (Type or print)**<br>RYAN J. MCMILLAN<br>RYAN.J.MCMILLAN@US.ARMY.MIL (586)282-9618 | |
|---|---|---|---|
| **15B. Contractor/Offeror** | **15C. Date Signed** | **16B. United States Of America** | **16C. Date Signed** |
| | | By    /SIGNED/ | 2013APR23 |
| _____<br>(Signature of person authorized to sign) | | _____<br>(Signature of Contracting Officer) | |

| NSN 7540-01-152-8070<br>PREVIOUS EDITIONS UNUSABLE | 30-105-02 | STANDARD FORM 30 (REV. 10-83)<br>Prescribed by GSA FAR (48 CFR) 53.243 |
|---|---|---|

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 2 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010     **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION A - SUPPLEMENTAL INFORMATION

Buyer Name: JENNIFER JUSELA
Buyer Office Symbol/Telephone Number: CCTA-ASM-C/(586)282-9751
Type of Contract: Firm Fixed Price
Kind of Contract: Service Contracts
Type of Business: Other Small Business Performing in U.S.
Surveillance Criticality Designator: C
Weapon System: Countermine

*** End of Narrative A0000 ***

| Status | Regulatory Cite | Title | Date |
|---|---|---|---|
| A-1 DELETED | 52.232-4007 (TACOM) | WIDE AREA WORKFLOW (WAWF), CODES, AND DESIGNATED ACCEPTORS | APR/2008 |

CONTRACT:              W56HZV-09-A-A902
TASK ORDER:                     0010
MODIFICATION:                     08
PREVIOUS AMOUNT:       $ 1,883,628.29
AMOUNT OF THIS ACTION: $ 4,562,908.02
REVISED AMOUNT:        $ 6,446,536.31

1. The purpose of this supplemental agreement, Modification 08, is to convert the task order to a Firm-Fixed Price order for the completion of the Technical Manuals.

2. As a result of above, the changes are as follows:

    a. CLIN 0003AA is created and funded in the amount of $2,783,954.31

    b. CLIN 0003AB is created and funded in the amount of $340,885.63

    c. CLIN 0003AC is created and funded in the amount of $217,612.13

    d. CLIN 0003AD is created and funded in the amount of $263,642.35

    e. CLIN 0003AE is created and funded in the amount of $63,308.38

    f. CLIN 0003AF is created and funded in the amount of $444,927.91

    g. CLIN 0004AA is created and funded in the amount of $251,532.91

    h. CLIN 0004AB is created and funded in the amount of $48,618.46

    i. CLIN 0004AC is created and funded in the amount of $36,282.27

    j. CLIN 0004AD is created and funded in the amount of $41,809.52

    k. CLIN 0004AE is created and funded in the amount of $14,960.92

    l. CLIN 0004AF is created and funded in the amount of $55,373.23

    m. CLIN 0005AA is created as a "not separately priced" (NSP) CLIN.

    n. The following clauses have been deleted:
      52.232-25
      52.232-4007
      52.243-1 ALT I

    o. The following clauses have been added:

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 3 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010    **MOD/AMD** 08 | |

**Name of Offeror or Contractor:**  TOLLIVER GROUP, INC., THE

| | | | |
|---|---|---|---|
| 52.203-6 | 52.219-16 | 52.242-4007 | 252.227-7016 |
| 52.203-16 | 52.219-28 | 52.246-4009 | 252.227-7030 |
| 52.204-10 | 52.227-1 | 252.203-7003 | 252.237-7010 |
| 52.209-9 | 52.249-4 | 252.205-7000 | 252.245-7003 |
| 52.212-4 | 52.249-8 | 252.227-7013 | 252.245-7004 |

p. The following clauses have been updated:
52.212-5
52.237-4000
252.212-7001

q. Narrative H.4 GSA Schedule has been added.

r. Section C has been updated to include narrative C00002, Option 2 Performance Work Statement.

s. Section J has been updated to include Exhibit A, Option 2 Contract Data Requirements List (CDRL).

3. The total value of this task order is increased in the amount of $4,562,908.02 from $1,883,628.29 to $ 6,446,536.31.

4. All other Terms and conditions of the task order, except those addressed by this modification, remain unchanged and in full force and effect.

*** END OF NARRATIVE A0011 ***

**A28**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 4 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010   MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | SECTION B - SUPPLIES OR SERVICES AND PRICES/COSTS | | | | |
| 0003 | AMCS - TECH MANUAL R GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R CLIN CONTRACT TYPE:    Firm Fixed Price | | | | |
| 0003AA | MAINTENANCE MANUAL (-23) PTM SUBMISSIONS 1 & 2 | 2 | SV | | $    2,783,954.31 |

GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R
PRON: P126M0442T     PRON AMD: 01     ACRN: AD

PTM 1: Firm-Fixed Price Payments

The contractor shall invoice for payment of PTM 1
based on the following approximate date schedule:

```
Approx. Date     Invoiceable Amount
May 22, 2013       $ 309,328.25
Jun 22, 2013       $ 309,328.25
Jul 22, 2013       $ 309,328.25
Aug 22, 2013       $ 309,328.25
Sep 22, 2013       $ 309,328.25
Oct 22, 2013       $ 309,328.26
Nov 22, 2013       $ 309,328.26
Dec 22, 2013       $ 309,328.26
```

PTM 1 delivery schedule code is 001 below.

PTM 2: Firm-Fixed Price Payment

The contractor shall only invoice for payment of PTM
2 upon Government Acceptance of PTM 2 in accordance
with CDRL A002A. If PTM 1 is accepted with no changes
required, PTM 2 is not required, and the contractor
can invoice the PTM 2 invoiceable amount upon
Government Acceptance of PTM 1 with no changes
required.

```
        Invoiceable Amount
          $ 309,328.26
```

PTM 2 delivery schedule code is 002 below.

(End of narrative B001)

Inspection and Acceptance
INSPECTION: Destination     ACCEPTANCE: Destination

Deliveries or Performance
DLVR SCH                    PERF COMPL
REL CD        QUANTITY        DATE

| | | Page | 5 **of** 34 |
|---|---|---|---|
| **CONTINUATION SHEET** | **Reference No. of Document Being Continued**<br>**PIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** 08 | | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---------|-------------------|----------|------|------------|--------|
| | 001          1          27-JAN-2014 | | | | |
| | $     2,474,626.05 | | | | |
| | DLVR SCH                    PERF COMPL<br>REL CD      QUANTITY        DATE<br>002          1          01-MAY-2014 | | | | |
| | $       309,328.26 | | | | |
| 0003AB | MAINTENANCE MANUAL (-23) PTM SUMBMISSIONS 3 & 4 | 2 | SV | | $          340,885.63 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T    PRON AMD: 01   ACRN: AD | | | | |
| | PTM 3: Firm-Fixed Price Payments | | | | |
| | The contractor shall invoice for payment of PTM 3<br>based on the following approximate date schedule: | | | | |
| | Approx. Date    Invoiceable Amount<br>Sep 22, 2014     $ 85,221.40<br>Dec 22, 2014     $ 85,221.40<br>Mar 22, 2015     $ 85,221.41 | | | | |
| | PTM 3 delivery schedule code is 001 below. | | | | |
| | PTM 4: Firm-Fixed Price Payment | | | | |
| | The contractor shall only invoice for payment of PTM<br>4 upon Government Acceptance of PTM 4 in accordance<br>with CDRL A002A. If PTM 3 is accepted with no changes<br>required, PTM 4 is not required, and the contractor<br>can invoice the PTM 4 invoiceable amount upon<br>Government Acceptance of PTM 3 with no changes<br>required. | | | | |
| | Invoiceable Amount<br>$ 85,221.41 | | | | |
| | PTM 4 delivery schedule code is 002 below. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination    ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance<br>DLVR SCH                    PERF COMPL<br>REL CD      QUANTITY        DATE<br>001          1          26-MAR-2015 | | | | |
| | $       255,664.22 | | | | |

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page  6 **of** 34 |
|---|---|---|
| | **PIN/SIIN** W56HZV-09-A-A902/0010  **MOD/AMD** 08 | |

**Name of Offeror or Contractor:**  TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | DLVR SCH                        PERF COMPL<br>REL CD         QUANTITY          DATE<br> 002              1          02-JUN-2015<br><br>        $        85,221.41 | | | | |
| 0003AC | MAINTANCE MANUAL (-23) PTM SUBMISSION 5<br><br>GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T     PRON AMD: 01     ACRN: AD<br><br>PTM 5: Firm-Fixed Price Payments<br><br>Approx. Date     Invoiceable Amount<br>Jul 22, 2015      $ 108,806.06<br>        *              $ 108,806.07<br><br><br>The contractor shall only invoice for the second<br>payment of PTM 5 upon Government Acceptance of PTM 5<br>in accordance with CDRL A002A.<br><br>        (End of narrative B001)<br><br><br>Inspection and Acceptance<br>INSPECTION: Destination     ACCEPTANCE: Destination<br><br>Deliveries or Performance<br>DLVR SCH<br>REL CD         QUANTITY          DATE<br> 001              1          25-AUG-2015<br><br>        $        217,612.13 | 1 | SV | | $       217,612.13 |
| 0003AD | MAINTENANCE MANUAL (-23) PTM SUBMISSION 6<br><br>GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T     PRON AMD: 01     ACRN: AD<br><br>PTM 6: Firm-Fixed Price Payments<br><br>Approx. Date     Invoiceable Amount<br>Sep 22, 2015      $ 65,910.58<br>Oct 22, 2015      $ 65,910.58<br>Nov 22, 2015      $ 65,910.59<br>        *              $ 65,910.59<br><br>The contractor shall only invoice for the fourth<br>payment of PTM 6 upon Government Acceptance of PTM 6<br>in accordance with CDRL A002A.<br><br>        (End of narrative B001) | 1 | SV | | $       263,642.35 |

**A31**

| | Reference No. of Document Being Continued | Page 7 **of** 34 |
|---|---|---|
| **CONTINUATION SHEET** | **PIIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | <u>Inspection and Acceptance</u><br>INSPECTION: Destination    ACCEPTANCE: Destination<br><br><u>Deliveries or Performance</u><br>DLVR SCH                          PERF COMPL<br> REL CD       QUANTITY       DATE <br> 001          1        17-NOV-2015<br><br>         $     263,642.35 | | | | |
| 0003AE | <u>MAINTENANCE MANUAL (-23) PTM SUBMISSION 7</u><br><br>GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T    PRON AMD: 01    ACRN: AD<br><br>PTM 7: Firm-Fixed Price Payment<br><br>Approx. Date    Invoiceable Amount<br>   *       $ 63,308.38<br><br><br>The contractor shall only invoice for PTM 7 upon<br>Government Acceptance of PTM 7 in accordance with<br>CDRL A002A.<br><br>     (End of narrative B001)<br><br><br><u>Inspection and Acceptance</u><br>INSPECTION: Destination    ACCEPTANCE: Destination<br><br><u>Deliveries or Performance</u><br>DLVR SCH                          PERF COMPL<br> REL CD       QUANTITY       DATE <br> 001          1        29-DEC-2015<br><br>         $      63,308.38 | 1 | SV | | $_____63,308.38 |
| 0003AF | <u>MAINTENANCE MANUAL (-23) FRC</u><br><br>GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T    PRON AMD: 01    ACRN: AD<br><br>FRC: Firm-Fixed Price Payment<br><br>Approx. Date    Invoiceable Amount<br>Mar 22, 2016    $ 444,927.93 | 1 | SV | | $_____444,927.91 |

| CONTINUATION SHEET | Reference No. of Document Being Continued | | Page 8 of 34 |
|---|---|---|---|
| | **PIN/SIN** W56HZV-09-A-A902/0010 **MOD/AMD** 08 | | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | The contractor shall only invoice for FRC upon Government Acceptance of FRC in accordance with CDRL A002A. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination   ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance<br>DLVR SCH                    PERF COMPL<br> REL CD         QUANTITY          DATE<br>  001              1          08-MAR-2016 | | | | |
| | $      444,927.91 | | | | |
| 0004 | AMCS - TECH MANUAL R<br>GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>CLIN CONTRACT TYPE:<br>     Firm Fixed Price | | | | |
| 0004AA | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P) PTM<br>SUBM 1 & 2 | 2 | SV | | $      251,532.91 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T   PRON AMD: 01   ACRN: AD | | | | |
| | PTM 1: Firm-Fixed Price Payments | | | | |
| | The contractor shall invoice for payment of PTM 1 based on the following approximate date schedule: | | | | |
| | Approx. Date    Invoiceable Amount<br>May 22, 2013     $ 27,948.10<br>Jun 22, 2013     $ 27,948.10<br>Jul 22, 2013     $ 27,948.10<br>Aug 22, 2013     $ 27,948.10<br>Sep 22, 2013     $ 27,948.10<br>Oct 22, 2013     $ 27,948.11<br>Nov 22, 2013     $ 27,948.11<br>Dec 22, 2013     $ 27,948.11 | | | | |
| | PTM 1 delivery schedule code is 001 below. | | | | |
| | PTM 2: Firm-Fixed Price Payment | | | | |
| | The contractor shall only invoice for payment of PTM 2 upon Government Acceptance of PTM 2 in accordance with CDRL A002B. If PTM 1 is accepted with no changes | | | | |

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 9 of 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010 **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | required, PTM 2 is not required, and the contractor can invoice the PTM 2 invoiceable amount upon Government Acceptance of PTM 1 with no changes required.<br><br>   Invoiceable Amount<br>    $ 27,948.11<br><br>PTM 2 delivery schedule code is 002 below.<br><br>   (End of narrative B001)<br><br><br> Inspection and Acceptance<br> INSPECTION: Destination  ACCEPTANCE: Destination<br><br> Deliveries or Performance<br>DLVR SCH       PERF COMPL<br> REL CD   QUANTITY    DATE<br>  001     1    27-JAN-2014<br><br>    $  223,584.80<br><br>DLVR SCH       PERF COMPL<br> REL CD   QUANTITY    DATE<br>  002     1    01-MAY-2014<br><br>    $  27,948.11 | | | | |
| 0004AB | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P) PTM SUBM 3 & 4<br><br><br> GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br> PRON: P126M0442T  PRON AMD: 01  ACRN: AD<br><br>PTM 3: Firm-Fixed Price Payments<br><br>The contractor shall invoice for payment of PTM 3 based on the following approximate date schedule:<br><br>Approx. Date  Invoiceable Amount<br>Sep 22, 2014  $ 12,154.62<br>Dec 22, 2014  $ 12,154.62<br>Mar 22, 2015  $ 12,154.62<br><br>PTM 3 delivery schedule code is 001 below.<br><br><br>PTM 4: Firm-Fixed Price Payment<br><br>The contractor shall only invoice for payment of PTM 4 upon Government Acceptance of PTM 4 in accordance with CDRL A002B. If PTM 3 is accepted with no changes required, PTM 4 is not required, and the contractor can invoice the PTM 4 invoiceable amount upon Government Acceptance of PTM 3 with no changes | 2 | SV | | $  48,618.46 |

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 10 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010  MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | required. | | | | |
| | Invoiceable Amount<br>$ 12,154.62 | | | | |
| | PTM 4 delivery schedule code is 002 below. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination    ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance<br>DLVR SCH              PERF COMPL<br> REL CD      QUANTITY      DATE<br>  001          1        26-MAR-2015 | | | | |
| | $      36,463.85 | | | | |
| | DLVR SCH              PERF COMPL<br> REL CD      QUANTITY      DATE<br>  002          1        02-JUN-2015 | | | | |
| | $      12,154.61 | | | | |
| 0004AC | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P) PTM<br>SUBMISSION 5 | 1 | SV | | $      36,282.27 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R<br>PRON: P126M0442T   PRON AMD: 01   ACRN: AD | | | | |
| | PTM 5: Firm-Fixed Price Payments | | | | |
| | Approx. Date   Invoiceable Amount<br>Jul 22, 2015      $ 18,141.13<br>    *           $ 18,141.14 | | | | |
| | The contractor shall only invoice for the second<br>payment of PTM 5 upon Government Acceptance of PTM 5<br>in accordance with CDRL A002B. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination    ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance<br>DLVR SCH              PERF COMPL<br> REL CD      QUANTITY      DATE<br>  001          1        25-AUG-2015 | | | | |
| | $      36,282.27 | | | | |

**A35**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 11 of 34 |
|---|---|---|
| | PIN/SIN W56HZV-09-A-A902/0010 MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0004AD | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P) PTM SUBMISSION 6 | 1 | SV | | $ 41,809.52 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R PRON: P126M0442T   PRON AMD: 01   ACRN: AD | | | | |
| | PTM 6: Firm-Fixed Price Payments | | | | |
| | Approx. Date    Invoiceable Amount<br>Sep 22, 2015      $ 10,452.38<br>Oct 22, 2015      $ 10,452.38<br>Nov 22, 2015      $ 10,452.38<br>   *              $ 10,452.38 | | | | |
| | The contractor shall only invoice for the fourth payment of PTM 6 upon Government Acceptance of PTM 6 in accordance with CDRL A002B. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance<br>INSPECTION: Destination      ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance<br>DLVR SCH                      PERF COMPL<br> REL CD      QUANTITY        DATE<br>  001          1          17-NOV-2015 | | | | |
| | $       41,809.52 | | | | |
| 0004AE | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P) PTM SUBMISSION 7 | 1 | SV | | $ 14,960.92 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R PRON: P126M0442T   PRON AMD: 01   ACRN: AD | | | | |
| | PTM 7: Firm-Fixed Price Payment | | | | |
| | Approx. Date    Invoiceable Amount<br>   *              $ 14960.92 | | | | |
| | The contractor shall only invoice for PTM 7 upon Government Acceptance of PTM 7 in accordance with CDRL A002B. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance | | | | |

**A36**

| CONTINUATION SHEET | Reference No. of Document Being Continued | | Page 12 of 34 |
|---|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010  **MOD/AMD** 08 | | |

**Name of Offeror or Contractor:**  TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | INSPECTION: Destination     ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance | | | | |
| | DLVR SCH                         PERF COMPL | | | | |
| | REL CD         QUANTITY           DATE | | | | |
| | 001               1          29-DEC-2015 | | | | |
| | $      14,960.92 | | | | |
| 0004AF | REPAIR PARTS & SPECIAL TOOLS MANUAL (-23P)PTM SUBMISSION FRC | 1 | SV | | $      55,373.23 |
| | GENERIC NAME DESCRIPTION: AMCS - TECH MANUAL R | | | | |
| | PRON: P126M0442T    PRON AMD: 01    ACRN: AD | | | | |
| | FRC: Firm-Fixed Price Payment | | | | |
| | Approx. Date    Invoiceable Amount | | | | |
| | Mar 22, 2016      $ 55,373.24 | | | | |
| | The contractor shall only invoice for FRC upon Government Acceptance of FRC in accordance with CDRL A002B. | | | | |
| | (End of narrative B001) | | | | |
| | Inspection and Acceptance | | | | |
| | INSPECTION: Destination     ACCEPTANCE: Destination | | | | |
| | Deliveries or Performance | | | | |
| | DLVR SCH                         PERF COMPL | | | | |
| | REL CD         QUANTITY           DATE | | | | |
| | 001               1          08-MAR-2016 | | | | |
| | $      55,373.23 | | | | |
| 0005 | CONTRACTOR MANPOWER REPORTING | | | | |
| 0005AA | CONTRACTOR MANPOWER REPORTING | 4 | YR | | $      ** NSP ** |
| | Manpower Reporting Requirements to Account for Contract Services. Report all contractor manpower required for performance of this task order at the web address ://cmra.army.mil/ | | | | |
| | The Contracting Officer's Representative is | | | | |

| CONTINUATION SHEET | Reference No. of Document Being Continued<br>**PIIN/SIN** W56HZV-09-A-A902/0010 **MOD/AMD** 08 | Page 13 of 34 |
|---|---|---|

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| | responsible for ensuring that the contractor has reported the required information.<br><br>Information must be verified before the Contracting Officer's Representative will certify invoices for payment under this contract.<br><br>Contractor Manpower Reporting UIC Code: W6DWAA (PEO CS&CSS)<br><br>(End of narrative B001)<br><br><br>Inspection and Acceptance<br>INSPECTION: Destination      ACCEPTANCE: Destination<br><br>Deliveries or Performance | | | | |

```
DLVR SCH                        PERF COMPL
 REL CD        QUANTITY           DATE
   001            1            31-OCT-2013


DLVR SCH                        PERF COMPL
 REL CD        QUANTITY           DATE
   002            1            31-OCT-2014


DLVR SCH                        PERF COMPL
 REL CD        QUANTITY           DATE
   003            1            31-OCT-2015


DLVR SCH                        PERF COMPL
 REL CD        QUANTITY           DATE
   004            1            31-OCT-2016
```

**A38**

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 14 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION C - DESCRIPTION/SPECIFICATIONS/WORK STATEMENT

|   Status   Regulatory Cite | Title | Date |
|---|---|---|
| C-1 CHANGED 52.237-4000 | CONTRACTOR MANPOWER REPORTING (CMR) | FEB/2013 |
|           (TACOM) | | |

The Office of the Assistant Secretary of the Army (Manpower & Reserve Affairs) operates and maintains a secure Army data collection site where the contractor will report ALL contractor labor hours (including subcontractor labor hours) required for performance of services provided under this contract via secure data collection site. The contractor is required to completely fill in all required data fields in the format using the following web address: https://cmra.army.mil . The required information includes the following:

(1)  Contracting Office, Contracting Officer, Contracting Officer's Technical Representative;

(2)  Contract number, including task and delivery order number;

(3)  Beginning and ending dates covered by reporting period;

(4)  Contractor name, address, phone number, e-mail address, identity of contractor employee entering data;

(5)  Direct labor hours (including sub-contractors);

(6)  Direct labor dollars paid this reporting period (including sub-contractors);

(7)  Total payments (including sub-contractors);

(8)  Predominant Federal Service Code (FSC) reflecting services provided by contractor (and separate predominant FSC for each sub-contractor if different);

(9)  Data collection cost;

(10)  Organizational title associated with the Unit Identification Code (UIC) for the Army Requiring Activity (the Army Requiring Activity is responsible for providing the contractor with its UIC for the purposes of reporting this information);

(11)  Locations where contractor and sub-contractors perform the work (specified by zip code in the United States and nearest city, country, when in an overseas location, using standardized nomenclature provided on website);

(12)  Presence of deployment or contingency contract language; and

(13)  Number of contractor and sub-contractor employees deployed in theater this reporting period (by country).

Reporting inputs will be for the labor executed during the period of performance during each Government fiscal year (FY), which runs October 1 through September30. While inputs may be reported any time during the FY, all data shall be reported no later than October 31 of each calendar year, beginning with 2013.  Contractors may direct questions to the help desk at : https://cmra.army.mil.

End of Clause]

OPTION YEAR 2

Performance Work Statement

PART 1
Services to Create Technical Manuals for TACOM LCMC Managed Publications

1.0  Scope: Using commercial off the shelf manuals produced by the manufacturer as source data, the contractor shall furnish professional services to create and deliver the following Technical Manuals for the 910 MCV 2 Medium, Flail, Area Mine Clearance System (AMCS):

a.  TM 9-2355-407-10, Operator Manual
b.  TM 9-2355-407-23, Field Maintenance Manual
c.  TM 9-2355-407-23P, Field Maintenance Repair Parts and Special Tools List
        1. LO 9-2355-xxx-xx, Lubrication Instruction
        2. TB 9-xxxx-xxx-13, Transportation Instruction

1.0.1  The resulting Technical Manuals will enable military field users to support their equipment with current parts information for

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 15 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

provisioning, and updated procedures for maintenance and overhaul.

1.1  Background:  The services to be furnished for the required Technical Publications include provisioning, technical writing, illustration, content development and quality assurance. Technical Manuals (TM) shall be developed in accordance with (IAW) AR 750-1, which details the approved Two Level Maintenance (TLM) Logistics Management Information Baseline (LMI) which the contractor shall apply when developing Technical Manuals per this performance work statement (PWS). The Technical Manuals shall be written to conform to MIL-STD 40051-2 with change 3 requirements.

1.2  Period of Performance:  Option Year 2  22 April 2013  4 Dec 2015

1.2.1  RESERVED.

1.2.1  RESERVED.

1.2.2  RESERVED.

1.2.2.1  RESERVED.

1.2.2.2  RESERVED.

1.3  General Information

Contractor Quality Control:

1.3.1 The Contractor shall implement and maintain an effective quality control program to ensure services are performed in accordance with this Performance Work Statement (PWS). The Contractor shall implement procedures to identify and prevent or ensure non-recurrence of defective services. The contractors quality control program is the means of assuring the work complies with the requirement of this PWS. The contractor shall provide a Quality Control Plan (QCP) (CDRL A008) at the Start of Work meeting for Option Period 2 (see paragraph 3.1.4.1 below). The QCP shall include a description of the inspection system to cover all services listed in the PWS. The description shall include methods for identifying and preventing defects in the quality of services performed. The contractor shall develop quality control procedures that address the area identified in Technical Exhibit 1 Performance Requirement Summary. The Government will review and either accept or deny the QCP within 14 calendar days. After receiving Government acceptance of the quality control plan, any changes to the QCP shall be submitted to the Contracting Officer for approval no later than 14 calendar days prior to the proposed effective date of the change.

1.3.1.1  Quality Assurance (QA) of equipment publications. The contractor shall be responsible for the quality of the equipment publications deliverables. All delivered TM information shall be complete, technically accurate and useable by US Army Soldiers. The contractor shall develop and use a QCP IAW the following:

1.3.1.1.1  (i) Periodic QA reviews by persons different than those preparing the TMs, (ii) maintenance of QA records, (iii) TM development process improvement, and (iv) data controls to insure that current, accurate engineering and parts information is available to TM preparers.

1.3.1.1.2  The publications QA operation shall include QA personnel that are not the writers or editors of the publications being prepared. QA records shall be maintained, showing those publications corrections, deletions, and additions that were identified during publications validation process.

1.3.1.1.3  Government representatives have the right to review and comment on the contractors QA plan, records, and processes.

1.3.2  Government Quality Assurance:  The government shall evaluate the contractors performance under this contract in accordance with the Quality Assurance Surveillance Plan (QASP). This plan is primarily focused on what the Government must do to ensure that the contractor has performed in accordance with the performance standards. It defines how the performance standards will be applied, the frequency of surveillance, and the acceptable defect rate (s).

1.3.3  Government Incentives and Remedies:

1.3.3.1  Incentives: The Contracting Officers Representative (COR) performing surveillance may document high quality performance (e.g. timely delivery of high-quality data; accuracy and high-quality content of reports) and ensure this record of performance becomes a part of the contractors past performance record for this order.

1.3.3.2  Remedies: Timely submission of all deliverables addressing all required content in a high-quality manner is paramount; therefore, contractor failure in this task will result in (1) withholding of payments until the Government can determine the ramifications of the below standard performance, (2) contractor correction at no additional fee to the Government and (3) documentation of negative past performance. If the contractor believes that there are excusable circumstances, the contractor shall inform the Contracting Officer. Excusable circumstances may result in adjustment of the consequences mentioned in this paragraph. This paragraph

**A40**

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 16 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010     **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

does not invalidate any of the usual rights allowed by the Inspection of Services clause.

1.3.4  Organizational Conflict of Interest: Contractor and Subcontractor personnel performing work under this Task Order may receive, have access to or participate in the development of proprietary or source selection information (e.g., cost or pricing information, budget information or analyses, specifications or work statements, etc.) or perform evaluation services which may create a current or subsequent Organizational Conflict of Interests (OCI) as defined in FAR Subpart 9.5.  The Contractor shall notify the Contracting Officer immediately whenever it becomes aware that such access or participation may result in any actual or potential OCI and shall promptly submit a plan to the Contracting Officer to avoid or mitigate any such OCI.  The Contractors mitigation plan will be determined to be acceptable solely at the discretion of the Contracting Officer.  In the event the Contracting Officer unilaterally determines that any such OCI cannot be satisfactorily avoided or mitigated, the Contracting Officer may affect other remedies as he or she deems necessary, including prohibiting the Contractor from participation in subsequent contracted requirements which may be affected by the OCI.

1.3.5  Contractor Personnel Requirements

1.3.5.1  Contractor personnel shall be U.S. Citizens.

1.3.5.2  Contractor personnel shall be capable of reading, writing, and speaking English.

1.3.6 Non Disclosure Agreement:

1.3.6.1  Before performing work on this task order, all Contractor personnel performing work per this PWS shall sign a Non-Disclosure Agreement, see Attachment 2, to be legally bound and prohibited from disclosing unauthorized information.  Originals shall be maintained on file at the Contractor facility, and copies shall be electronically submitted to the COR, prior to work commencing.

1.3.6.2  The Contractor agrees to use and examine all information provided by the Government exclusively in the performance of this task order and to take the necessary steps in accordance with Government regulations to prevent disclosure of such information to any party outside the Government or Government designated support contractors possessing appropriate proprietary agreements.

1.3.6.3  The Contractor agrees to indoctrinate its personnel who have access to sensitive information concerning the relationship under which the Contractor has possession of or access to the information. Contractor personnel shall not engage in any other action, venture or employment wherein sensitive information will be used for the profit of any party other than those furnishing the information.

1.3.6.4  The Contractor shall restrict access to sensitive/proprietary information to the minimum number of employees necessary for task order performance.

1.3.7  Place of Performance: The primary Place of Performance shall be the contractors facility for Validation, Verification, and Logistics Demonstration (LD), although some travel to TACOM will be required for the Start-of-Work meeting and for Guidance Conferences. The contractor will be required to travel to Fort Custer in Battle Creek, MI in order to attend Instructor & Key Personnel Training (I&KPT).

1.3.8  Travel:

1.3.8.1  Contractor personnel will be required to travel in order to perform this task order.

1.3.8.2  RESERVED.

1.3.8.3  RESERVED.

1.3.8.4  RESERVED.

1.3.8.5  RESERVED.

1.3.8.6  RESERVED.

1.3.8.7  RESERVED.

1.3.8.8  Contractor shall submit a trip report (CDRL A007) after every trip. The trip report shall be due to the COR within 5 calendar days of return.

1.3.9  Security Requirement:

1.3.9.1  If at any time during the resultant task order any contractor personnel require access to any Government database they must undergo a favorable background investigation and maintain a favorable security status in accordance with Army Regulation AR 25-2 and AR 380-67.

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 17 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010         MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

1.3.9.2  All information or data developed under this contract belongs to and is the property of the U.S. Government and shall be marked and handled as For Official Use Only (FOUO) Distribution D. FOUO is information that may be withheld from the public under exemptions 2 through 9 of the Freedom of Information Act. Control, marking and protection of FOUO information will be in accordance with this document and Army Regulation 380-5, Chapter 5, paragraph 5-1 through 5-6. The contractor may disseminate FOUO information to their employees who have a need to know the information in connection with the task order. At the conclusion of the contract, all FOUO material not delivered to the Government will be destroyed by tearing or shredding to make it unreadable. FOUO material stored on electronic media will be purged or destroyed through a physical process. The contractor shall not transmit any FOUO information electronically over the Internet unless it is encrypted by FIPS 140-2 standard.  Alternative dissemination methods include: secure fax; US Mail; and hand carry FOUO material. FOUO information may be disseminated by vendors internal computer network provided it is protected with a security firewall and individual access is controlled by using IDs and passwords.

1.3.9.3  The Contractor shall not release any information or data to third parties without the prior express written approval of the Procuring Contracting Officer.

1.3.9.4  The contractor is responsible for obtaining required identification cards, tags, and badges in accordance with AR 600-8-14 for individuals traveling to TACOM or to Fort Custer, MI for official duty related to the performance of this task order.

1.3.9.5  The contractor and subcontractor(s), if any, shall complete a background security check (SF-85P) of all personnel being assigned to work on the task order before each employee reports for duty to perform work.

1.3.9.6  The Contractor shall have access to Government data for the accomplishment of work under this task order; contractors shall conform to all security requirements.

1.3.10  Contracting Officer Representative (COR): The COR is an individual designated in accordance with DFARS 201.602-2 and is authorized in writing by the contracting officer to perform specific technical functions. The contracting officer has designated Travis Christner,  (586) 282-7131, travis.e.christner.civ@mail.mil, as the contracting officers representative (COR) for this task order. The Contractor will receive a copy of the COR appointment letter that will specify the extent of the CORs authority to act on behalf of the contracting officer. The COR is not authorized to make any commitments or changes that will affect price, quantity, delivery or any other term or condition of this task order.  In addition to the duties and responsibilities identified in the COR appointment letter, the COR shall perform the functions stated in the Quality Assurance Surveillance Plan (QASP) which is attached to this task order.

1.3.11 Army Contractor Manpower Reporting System: The contractor shall comply with the clause entitled Contractor Manpower Reporting in the task order.

PART 2
GOVERNMENT FURNISHED INFORMATION and EQUIPMENT

2.1  The following types of Government Furnished Information (GFI) shall be provided by the Contracting Officer Representative for the 910 MCV 2 Medium, Flail, Area Mine Clearance System:

2.1.1  Initial Maintenance Allocation Chart (MAC)
2.1.2  Provisioning Parts List
2.1.3  Maintenance Analysis
2.1.4  Level of Repair Analysis (LORA) Results
2.1.5  Commercial-Off-The-Shelf (COTS) Manuals
2.1.6  Specifications and standards cited in the Performance of Work Statement (PWS)
2.1.7  Additional GFI as required

2.2  The contractor shall have access to the following type of Government Equipment:

2.2.1  The contractor shall have access to at least one 910 MCV 2 Medium, Flail, Area Mine Clearance System, to be located at the contractors facility. All Government Furnished Property issued to the contractor shall be itemized in section H of the task order.

PART 3

SPECIFIC TASKS

3.0 Integrated Logistics Support (ILS) Program.

3.1  Requirements: Technical Publications. The contractor shall develop equipment Technical Manuals (TMs) to support the Area Mine Clearance System (AMCS) program. The Contractor shall develop a Technical Manual Organization Plan (TMOP) CDRL A010. The Contractor shall use GEIA-STD-0007 for use in identifying content, format, delivery and related guidance for logistics data, except where otherwise identified in this Task Order. The LMI Baseline includes:

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 18 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

Provisioning Data (LSA-036 Report, IAW MIL-PRF-49506)
Commercial Off-The-Shelf Manuals

3.1.1 BASIC SERVICES.

Integrated Logistics Support (ILS) Program.

The TM preparation requirements and the delivery requirements are described below.  The specifications shown below shall be used.
Copies can be obtained from the government Contracting Officer or the LOGSA website.

| | |
|---|---|
| MIL-STD-40051-2 with change 3 | DoD Standard Practice, Preparation of Digital Technical Information for Page-Based TMs |
| MIL-HDBK-1222D | DoD Handbook, Guide to the General Style and Format of U.S. Army Work Package Technical Manual. The HDBK should be used in conjunction with MIL-STD-40051-2A |
| AR 25-30, 27 Mar 06 | The Army Publishing Program |
| AR 750-1 | Army Maintenance Policy |
| AR 700-18 | Army Guide to Provisioning |
| DI-SESS-81758 | Logistics Product Data |
| DI-SESS-81759 | Logistics Product Data Summaries |
| GEIA-STD-0007 | Logistics Product Data |
| DI-TMSS-81819A | Technical Manual validation Certificate |
| DI-TMSS-81818 | Technical Manual Validation Plan |
| DI-TMSS-81810 | Technical Manual Organization Plan (TMOP) |

The Contractor shall prepare an Electronic Technical Manual (ETM). The Repair Parts and Special Tools List (RPSTL) will be pulled from the Army Provisioning Master Record (PMR) from data that the Government provides and loads. The Contractor shall combine the RPSTL illustrations with the PMR RPSTL download. The Contractor shall develop the manuals as follows:

| | |
|---|---|
| TM 9-2355-407-10 | Operator Manual |
| TM 9-2355-407-23 | Field Maintenance Manual |
| TM 9-2355-407-23P | Field Maintenance Repair Parts and Special Tools List |
|   LO 9-2355-xxx-xx, Lubrication Instruction | |
|   TB 9-xxxx-xxx-13, Transportation Instructions | |

The TMs shall be divided into volumes if the page counts exceed 1500 pages (750 sheets) in accordance with MIL-STD-40051. An example of the TM Volume Designation would be TM 9-2355-407-23-1 (Field Maintenance Manual Volume 1), TM 9-2355-407-23-2 (Field Maintenance Manual Volume 2), TM 9-2355-407-23-3 (Field Maintenance Manual Volume 3), and so forth. Item Warranty information shall be included in the Manual(s).

3.1.1.1  The operator manual shall be prepared and delivered IAW MIL-STD-40051-2 with change 3, Contract Data Requirements List (CDRL) A001, and all attachments.

3.1.1.2  The maintenance manual, with RPSTL included, shall be prepared and delivered IAW MIL-STD-40051-2 with change 3, CDRL A002a and A002b, and all attachments.

3.1.1.2.1  Maintenance Publications and Provisioning (MPP) Reviews (A009): The Government and contractor will meet to assess and discuss logistics documentation development.  The first MPP Review will be held 30 days after the start of work, with follow-on meetings approximately every 30 days, as coordinated between the Government and the Contractor.  These working level meetings will be held at the Contractor facility.  The MPP will be led by the Government Maintenance Manager.

3.1.1.2.1.1  At a minimum, the personnel from the following functional areas are recommended to attend the MPP meetings; Quality Assurance (QA), Maintenance, Technical Writers, Illustrators, and Provisioning. The Contractor shall provide the appropriate Subject Matter Experts (SMEs) to receive guidance, clarification or assistance from the Government SMEs  during the course of development of the TMs at each of the MPP technical meeting.

3.1.1.2.1.2  The Contractor shall make available at each MPP the following documents:

Maintenance Allocation Chart (MAC)

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 19 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010       **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

Expendable Durable Items List  (EDIL)
Special Tools and Test Equipment (STTE)/Test Measurement and Diagnostic Equipment (TMDE) List
Critical Task List
10 Suites of Sample Work Packages (WPs) (maintenance, troubleshooting, Preventative Maintenance Checks and Services (PMCS), RPSTL, and
schematics - across the same component line)

3.1.1.2.1.3 The Government will review the documents made available at each MPP to determine if the Contractor is moving forward in its
work efforts on the TM development. The Government will provide notification to the contractor based on the assessment of information
provided under C.3.1.1.2.1.2 no later than 3 business days after each MPP.

3.1.1.2.4  The Contractor shall maintain and update the MAC in accordance with MIL-STD-40051-2 with change 3 (CDRL A001, A002a, and
A002b). The MAC is a living document that forms the basis for provisioning and technical manual development. It is, therefore, subject
to changes throughout the life of the contract. Its final approval will be concurrent with final TM approval for the Field Level
Maintenance Manual. Submittal shall consist of CD-ROM, PDF format. The MAC shall identify the maintenance functions that must be
performed, the maintenance levels responsible for the function, the active service time  tools and test equipment necessary to perform
the function, for each assembly, subassembly, and component in Functional Group Code sequence. The MAC shall include all maintenance
significant components, assemblies, subassemblies and modules. No item will be deleted from the MAC unless the contractor is
specifically authorized. If a maintenance function is a replacement function only for a repair part, the item shall not be listed in the
MAC, unless not listing the item would result in deletion of the group number. In this case, the item shall be listed in order to retain
the functional group number. Items requiring a test procedure before replacement shall also be listed on the MAC. The Government
provided the initial MAC to the contractor for incorporation and maintenance as part of the GFI.

3.1.1.3  RESERVED.

3.1.2  TM Deliverables. All publications deliverables shall be delivered to the COR as hardcopies and electronic. This includes all
deliverable data described in paragraph 3.1.2.4.  Final Reproducible Copy (FRC) will be delivered to TACOM on a disk (considered the
electronic copy) and one hard copy. The Contractor shall deliver all data in American English. All data delivered under this contract
shall be submitted electronically via CD-ROM in a Windows XP compatible format with 100 % embedded fonts and no Unicode errors.

3.1.2.1  A Preliminary Technical Manual (PTM) of each manual listed in paragraph 3.1.1 above shall be delivered in accordance with CDRLs
A001, A002a and A002b. The PTM must be a complete publication in the same format as the final publication. The PTM shall include all
required content per the CDRL and its attachments. All TMs submitted until formal Government request for FRC are considered PTMs.  The
Contractor shall make corrections to the PTMs as a result of verification, I&KPT, Government reviews, Logistics Demonstration, and
Operational Testing (OT) identified by the Government in accordance with CDRLs A 0001, A002a and A002b.

3.1.2.2  A Final Reproducible Copy (FRC) of each manual listed in paragraph 3.1.1 above shall be delivered as required in the
appropriate CDRL. The FRC shall have all PTM review, Quality Assurance (QA) reviews, validation and verification corrections, changes,
and additions incorporated. The FRC is considered the final document that must go through EPCO and LOGSA.  Any issues identified during
the submission process must be corrected by the Contractor and re-submittal required.

3.1.2.3  The contractor shall deliver all source material, defined as operating plans, standard procedures, computer files, drawings,
artwork, images, and photographs and residual material to include computer disks, and other media containing digital files developed to
fulfill the requirements of this TO. Per paragraph 3.1.2.6 below, the contractor shall furnish all data to the Government with unlimited
rights to use any and all publications data/products produced under this Performance Work Statement.

3.1.2.4  An XML-tagged instance is required, per MIL-STD 40051-2 with change 3, (CDRLs A001, A002a and A002b) for the below specified
equipment publications.

TM 9-2355-407-10      Operator Manual
TM 9-2355-407-23      Field Maintenance Manual
TM 9-2355-407-23P     Field Maintenance Repair Parts and Special Tools List
     LO 9-2355-xxx-xx, Lubrication Instruction
     TB 9-xxxx-xxx-13, Transportation Instructions

3.1.2.5  Data Rights. Technical Manuals and data prepared under this TO shall be delivered with unlimited rights to the government for
reproduction, use, and distribution. If any content delivered includes copyrighted material, the Government may request a copyright
release for that data. Copyright releases shall be submitted in the format identified in AR 25-30. Refer to Department of Defense
Federal Acquisition Regulation Supplement, Warranty of Data; paragraph 252.246-7001 for warranty of data requirements and invocation
stipulation.

3.1.3  QA of equipment publications.  The contractor shall be responsible for the quality of the equipment publications deliverables.
All delivered TM information shall be complete, technically accurate and useable by US Army Soldiers.  The contractor shall develop and
use a quality assurance plan IAW paragraphs 1.3.1, 1.3.1.1, 1.3.1.1.1, 1.3.1.1.2, 1.3.1.1.3, and 3.2.4.

3.1.4  RESERVED.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 20 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

3.1.4.1  A start-of-work meeting shall be held for Option Period 2. The meeting shall be at TACOM in Warren, MI and coordinated on a mutually agreed upon date with the COR within 14 calendar days of option exercise. The purpose of this meeting is to review publications TO requirements, establish lines of communications, address questions pertaining to the option period, and any future guidance conferences. This meeting shall be no longer than one eight hour day. At a minimum, four hours shall be for Option Period 2 initial publications guidance conference. This conference will review Government style comments to date.

3.1.5  Publications In-Process Review. The contractor shall support a government In-Process Review of the Operator Manual at TACOM Warren 120 days after the Start of Work meeting by (i) providing draft procedures and draft artwork;(ii) summarizing work accomplished to date; (iii) answering questions about publications work processes; (iv) providing records of QA reviews; and (v) responding to government comments regarding publications processes or work samples.

3.1.6  Publications Validation. The following paragraphs apply to all publications. Procedures must be created in the TM as defined by the LMI Baseline (refer to paragraph 3.1 above). For production of TMs required in this PWS, all procedures are considered new procedures.

3.1.6.1  The Contractor shall validate the technical accuracy and adequacy of all Procedures. The contractor shall maintain records of validation reviews that show when the material was performed/reviewed, what the findings were, and all corrective actions taken. Validation personnel must include personnel that did not author the procedures being validated.  The Contractor may schedule the validation activity when and where needed in order to meet publications milestones that will be developed during the Start of Work Meeting (see paragraph 3.1.4) and CDRL delivery requirements.  Government representatives have the right to examine these records upon request and to witness validation work. The Government reserves the right to attend all or part of the Contractors validation efforts conducted in support of this contract effort.  The Government plans to be a full-time attendee at the Validation and will provide written feedback to aid the contractor in ensuring the TMs meeting technical and standard requirements.  Information provided by the Government during validation does not negate the requirement for the Contractor to support TM Verification and make the appropriate changes identified during that event. TM Verification is scheduled for a nine month period.

3.1.6.2  Maintenance and troubleshooting procedures shall be 100% validated hands-on. These procedures requiring 100% validation hands-on shall be determined from the maintenance analysis effort for this equipment. PMCS content shall be validated by performance. Other content, such as Controls and Indicators, front matter, rear matter, torque tables, lists, theory of operation, glossary, and index information shall be validated by review against the production representative vehicle.

3.1.6.3  The Contractor is required to have and use a validation plan (CDRL A005)for validating TM content. The validation plan shall specify what TM content is to be validated and when and where that content is to be validated. The validation plan shall describe the validation method(s) used for each type of TM content. The Government will review the validation plan and determine if it is acceptable. If the Government determines the validation plan will not ensure technical accuracy and adequacy of all TM deliverables, the Contractor will be required to change the plan to ensure that validation efforts result in an acceptable level of quality assurance. A validation report shall be delivered after validation completion (CDRL A006). The validation report shall certify that validation has been completed and that the TM deliverable has had QA applied with use of the publications defects list. Contractor shall invoice upon Government acceptance.

3.1.6.3.1 Travel: 100% Hands on Validation to occur based on the tentative schedule consisting of two (2) trips, one (1) person, to Fort Custer, in Battle Creek, MI.

Operational Test (approx. 30 days),
I&KPT (approx. 30 days) and

3.1.7  TM Verification. The government is responsible for verification of the manuals to assure accuracy and usability by US Army Soldiers with assistance from the contractor. The TM Verification is schedule for a nine month period. The Government will provide the Contractor a Verification plan that identifies all responsibilities of parties 30 days prior to beginning the event. Government representatives will review the Preliminary Technical Manuals (PTM) (refer to paragraph 3.2.3 below) to determine that proper QA has been used during preparation, that the manuals appear to be complete, and that the PTMs are adequate for verification. The Government reserves the right to reject the TM if more than 15% errors are found during the PTM Review prior to beginning Verification or at any point during TM Verification. In accomplishing verification, the government may choose to verify manuals by desk-top review, review on equipment, or actual performance, or any combination of these methods. The Government intends to verify by performance to the extent required to assure that the contractor has properly prepared TM content that is usable. The Government reserves the right to perform 100% hands-on for every Work Package (WP) within the TM, at the discretion of the Government.  The Contractor shall return NO GO work packages within 72 hours of receipt.

3.1.7.1  The Contractor shall provide support to the government verification process (scheduled for a nine month period) and Logistics Demonstration.  This support shall consist of contractor personnel tracking changes to the master draft and assisting with record keeping. Arrange for the services of a photographer in order to assist in documenting problem areas and changes required to correct errors or omissions in the Draft Technical Manual procedures demonstrated.  Provide the necessary unique support items and services to manage, support, operate and maintain the AMCS during the conference including EDIL, unique repair parts, and mandatory replacement parts subject to damage or destruction during the course of the verification. These repair parts shall be made available prior to the

**A45**

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 21 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010    MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

beginning of the verification.

3.1.7.2  Contractor shall correct all errors found during government verification reviews in all publications deliverables. The Contractor shall make corrections to the PTMs as a result of verification, I&KPT, Government reviews, Logistics Demonstration, and Operational Testing (OT) identified by the Government in accordance with CDRLS A001, A002a, and A002b.

3.1.7.2.1  The Contractor shall correct all errors found in the TMs, Electronic TMs (ETMs), and electronic data files resulting from Contractor and Government reviews, test or validation/verification at no additional cost to Government.

3.1.7.2.2  AMSTA-LCC-MAI is designated as the Government Technical Manual acceptance activity. If the Contractor receives RPSTL comments or corrections from Government activities other than the Government acceptance activity, the Contractor shall forward these comments and corrections to the Government acceptance activity for approval or rejection.  All formal comments will be submitted through the COR.

3.1.8  RESERVED

3.2  CDRLs / Deliverables:

3.2.1  Monthly Contractor Progress, Status and Management Reports: The Contractor personnel shall electronically submit monthly status reports to the COR in Contractor format (CDRL A011).

3.2.1.1  Each monthly report shall be a synopsis of contractor personnel activity for the previous month, including monthly accomplishments and discussion of anticipated activities for the following month.

3.2.1.2  Each report shall also include a detailed description of the task order status; actions items and responsible parties; outstanding issues or problems; and work effort completed to date to include all required deliverables specified in the performance work statement.

3.2.1.3  The Contractor personnel shall deliver the monthly status report by the 30th of each month (CDRL A011).

3.2.2  The Contractor shall also submit meeting minutes for all scheduled meetings and teleconferences, whether at the contractors or governments request, within 3 business days after each meeting with the Government (CDRL A009).

3.2.3  The contractor shall provide Preliminary Technical Manuals and Final Reproducible Copies (FRC) which are due IAW CDRL A001, A002a, and A002b.

3.2.4  A Quality Control Plan shall be submitted by the contractor at the start of work meeting (CDRL A008).  Any revisions or updates by the contractor to this plan while performing under this task order shall be provided to the Government IAW CDRL A008.

3.2.5  The contractor will develop a Validation Plan not later than 14 calendar days prior to start of Validation (CDRL A005).

3.2.6  The Validation Report (CDRL A006) shall be due concurrent with the first submittal of the PTM. The contractor shall invoice upon Government acceptance.

3.2.7  The contractor shall submit a trip report (CDRL A007) after every trip. The trip report shall be due to the COR within 5 calendar days of return.

3.2.8  The contractor shall submit a Technical Manual Plan at the start of work meetings (CDRL A010). Any revisions or updates by the contractor to this plan while performing under this task order shall be provided to the Government IAW CDRL A010.

3.2.9  The contractor shall submit a Technical Manual Validation Certificate (CDRL A012) at the completion of Validation and in accordance with the Technical Manual Plan (CDRL A010).

*** END OF NARRATIVE C0002 ***

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 22 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010       **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION E - INSPECTION AND ACCEPTANCE

| Status | Regulatory Cite | Title | Date |
|---|---|---|---|
| E-1 ADDED | (52.246-4009) (TACOM) | INSPECTION AND ACCEPTANCE POINTS:  DESTINATION | FEB/1995 |

Inspection and acceptance of supplies offered under this purchase order shall take place as specified here.  Inspection: DESTINATION.
Acceptance: DESTINATION.

[End of Clause]

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 23 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010    MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION G - CONTRACT ADMINISTRATION DATA

| LINE ITEM | PRON/ AMS CD/ MIPR | OBLG STAT | JO NO/ ACCT ASSIGN | ACRN | PRIOR AMOUNT | INCREASE/ DECREASE | CUMULATIVE AMOUNT |
|---|---|---|---|---|---|---|---|
| 0003AA | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 2,783,954.31 | $ 2,783,954.31 |
| 0003AB | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 340,885.63 | $ 340,885.63 |
| 0003AC | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 217,612.13 | $ 217,612.13 |
| 0003AD | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 263,642.35 | $ 263,642.35 |
| 0003AE | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 63,308.38 | $ 63,308.38 |
| 0003AF | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 444,927.91 | $ 444,927.91 |
| 0004AA | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 251,532.91 | $ 251,532.91 |
| 0004AB | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 48,618.46 | $ 48,618.46 |
| 0004AC | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 36,282.27 | $ 36,282.27 |
| 0004AD | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 41,809.52 | $ 41,809.52 |
| 0004AE | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 14,960.92 | $ 14,960.92 |
| 0004AF | P126M0442T | 2 | A.0009158.1.1.1.4 | AD | $ 0.00 | $ 55,373.23 | $ 55,373.23 |

NET CHANGE $ 4,562,908.02

| ACRN | ACCOUNTING CLASSIFICATION | | | | INCREASE/ DECREASE |
|---|---|---|---|---|---|
| AD | 021 201220142035    A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | | 021001 $ | 4,562,908.02 |

NET CHANGE $ 4,562,908.02

| | PRIOR AMOUNT OF AWARD | INCREASE/DECREASE AMOUNT | CUMULATIVE OBLIG AMT |
|---|---|---|---|
| NET CHANGE FOR AWARD: | $ 1,883,628.29 | $ 4,562,908.02 | $ 6,446,536.31 |

| LINE ITEM | ACRN | EDI/SFIS ACCOUNTING CLASSIFICATION | | | |
|---|---|---|---|---|---|
| 0003AA | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0003AB | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0003AC | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0003AD | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0003AE | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0003AF | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AA | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AB | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AC | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AD | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AE | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |
| 0004AF | AD | 021 201220142035 | A5XDV R68102ARF02 | 3101 L033421790 A.0009158.1.1.1.4 | 021001 |

| Status | Regulatory Cite | Title | Date |
|---|---|---|---|
| | G-1 CHANGED 52.242-4007 | WIDE AREA WORKFLOW (WAWF), CODES, AND DESIGNATED ACCEPTORS APR/2008 | AUG/2012 |

The contractor shall use WAWF to electronically process invoices for payment and receiving reports.  The contractor shall register to use WAWF and take the Web-based training at ://wawf.eb.mil.  Direct any questions relating to the system and vendor training to the Ogden Help Desk at 866-618-5988.

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 24 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010    MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

To properly route an invoice and receiving report through WAWF, the contractor shall indicate the following when prompted:

    1. Select the appropriate type of invoice as indicated below.  It is imperative that contractors select the proper type of invoice.  Improper selection of an invoice type will result in the delay of a payment or the rejection of an invoice submittal.

    _____   Invoice and Receiving Report Combo (Supplies)
        Use for contracts that are entirely for supply requirements or for contracts that are predominantly for supply requirements but also includes minimal service line items.

    ____x_____   Invoice 2-in-1 (Services)
    Use for contracts that are entirely for service requirements.

    2. Use the following DoDAAC (Department of Defense Activity Address Code) codes when prompted:

        Your firms CAGE Code:  38CH2
        Issue DoDAAC Code:  W56HZV
        Admin DoDAAC Code:  S1002A
        Ship-To DoDAAC Code: N/A
        Accept-By DoDAAC Code:  W56TRU
        Payment DoDAAC Code:  HQ0338

    3. Include the Purchase Request Number as specified in each Contract Line Item Number (CLIN).  This number can be found at the bottom of the extended description of each CLIN. NOTE: The purchase request number may be different for each CLIN.

    4. Indicate the proper Unit of Measure as specified in each CLIN.  Failure to indicate the proper Unit of Measure will lead to vendor pay issues.

    5. Indicate the following Acceptor, Alternate Acceptor, and Contract Specialist when the WAWF system prompts for additional e-mail submission after clicking Signature.

        Primary Acceptor Name:  Travis Christner
        Primary Acceptor e-mail:  travis.e.christner.civ@mail.mil

        Contract Specialist Name:  Mira Patel
        Contract Specialist e-mail:  mira.patel.civ@mail.mil

To track the status of an invoice, in WAWF click on the link, Pay Status (myInvoice-External link) found under the tab named Lookup or by going to ://myinvoice.csd.disa.mil/index.html.  If the payment office indicated in the contract is Columbus, direct any payment related questions to the Defense Finance Accounting Services (DFAS) Columbus at 800-756-4571.   If the payment office is other than Columbus, contact the contract administrator for the customer service phone/fax numbers.

                        [End of clause]

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | | **Page** 25 **of** 34 |
|---|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010 | **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION H - SPECIAL CONTRACT REQUIREMENTS
H.1 Option to Extend Services and the Term of the Task Order

The Government may require continued performance of any services within the limits and at the rates specified in the task order and contract. This option may be exercised in one or more increments, or in total, by written notice to the contractor no later than task order expiration. The option period exercised may extend the period of performance by no more than 12 months.

*** END OF NARRATIVE H0001 ***

H.2 Use of Government Furnished Property (GFP):

| Nomenclature | NSN | U/I | Quantity | Part/Serial Number |
|---|---|---|---|---|
| 910 MCV-Mine Clearing System | 2355-22-622-7966 | EA | 00001 | 10363 |
| 910 MCV-Mine Clearing System | 2355-22-622-7966 | EA | 00001 | 10178 |

Container DNCU2203601; Inventory for Container DNCU2203601 is listed in Attachment 0004.

| STANDARD AUTOMOTIVE TOOL SET (SATS) - Attachment 0005 | 4810-01-531-2053 | EA | 00001 | N/A |

Inventory for SATS is listed in Attachment 0005.

| FORWARD REPAIR SYSTEM (FRS) Attachment 0006 | 4940-01-533-1621 | EA | 00001 | 0259-R |

Inventory for FRS is listed in Attachment 0006.

The accountability for this Government property is assigned to this contract W56HZV-09-A-A902 Task Order 0010.

*** END OF NARRATIVE H0002 ***

H.3 Vehicle Fuel Shipping Requirements

MCV-Mine Clearing Vehicles shall be shipped with no more than nine (9) gallons of fuel per tank. MCV-Mine Clearing Vehicles contain two fuel tanks. Fuel procured under Material/ODC CLIN 0001AC shall only be procured in nine (9) gallon increments per tank for a total of up to eighteen gallons per procurement.

*** END OF NARRATIVE H0003 ***

H.4 GSA Schedule:

If the GSA expired Schedule gets renewed during the performance of this Task Order and the newly awarded GSA rates are lower than the awarded rates on this Task Order, the contractor shall immediately contact the contracting office and a modification will be issued making a downward adjustment to the new GSA rates awarded.

*** END OF NARRATIVE H0004 ***

| CONTINUATION SHEET | Reference No. of Document Being Continued | Page 26 of 34 |
|---|---|---|
| | PIIN/SIIN W56HZV-09-A-A902/0010    MOD/AMD 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION I - CONTRACT CLAUSES

| Status | Regulatory Cite | Title | Date |
|---|---|---|---|
| I-1 ADDED | 52.203-6 | RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT | SEP/2006 |
| I-2 ADDED | 52.203-16 | PREVENTING PERSONAL CONFLICTS OF INTEREST | DEC/2011 |
| I-3 ADDED | 52.204-10 | REPORTING EXECUTIVE COMPENSATION AND FIRST-TIER SUBCONTRACT AWARDS | AUG/2012 |
| I-4 ADDED | 52.209-9 | UPDATES OF PUBLICLY AVAILABLE INFORMATION REGARDING RESPONSIBILITY MATTERS | FEB/2012 |
| I-5 ADDED | 52.212-4 | CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS | FEB/2012 |
| I-6 ADDED | 52.219-16 | LIQUIDATED DAMAGES--SUBCONTRACTING PLAN | JAN/1999 |
| I-7 ADDED | 52.227-1 | AUTHORIZATION AND CONSENT | DEC/2007 |
| I-8 DELETED | 52.232-25 | PROMPT PAYMENT | OCT/2008 |
| I-9 DELETED | 52.243-1 | CHANGES--FIXED PRICE  (AUG 1987) -- ALTERNATE I  (APR 1984) | APR/1984 |
| I-10 ADDED | 52.249-4 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (SERVICES) (SHORT FORM) | APR/1984 |
| I-11 ADDED | 52.249-8 | DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) | APR/1984 |
| I-12 ADDED | 252.203-7003 | AGENCY OFFICE OF THE INSPECTOR GENERAL | DEC/2012 |
| I-13 ADDED | 252.205-7000 | PROVISION OF INFORMATION TO COOPERATIVE AGREEMENT HOLDERS | DEC/1991 |
| I-14 ADDED | 252.227-7013 | RIGHTS IN TECHNICAL DATA--NONCOMMERCIAL ITEMS | FEB/2012 |
| I-15 ADDED | 252.227-7016 | RIGHTS IN BID OR PROPOSAL INFORMATION | JAN/2011 |
| I-16 ADDED | 252.227-7030 | TECHNICAL DATA--WITHHOLDING OF PAYMENT | MAR/2000 |
| I-17 ADDED | 252.237-7010 | PROHIBITION ON INTERROGATION OF DETAINEES BY CONTRACTOR PERSONNEL | NOV/2010 |
| I-18 ADDED | 252.245-7003 | CONTRACTOR PROPERTY MANAGEMENT SYSTEM ADMINISTRATION | APR/2012 |
| I-19 ADDED | 252.245-7004 | REPORTING, REUTILIZATION, AND DISPOSAL | APR/2012 |
| I-20 CHANGED | 52.212-5 | CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS | JAN/2013 |

(a) The Contractor shall comply with the following Federal Acquisition Regulation (FAR) clauses, which are incorporated in this contract by reference, to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

(1) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22U.S.C. 7104(g)).

--Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(2) 52.233-3, Protest After Award (AUG 1996) (31 U.S.C. 3553).

(3) 52.233-4, Applicable Law for Breach of Contract Claim (OCT 2004) (Pub. L. 108-77, 108-78).

(b) The Contractor shall comply with the FAR clauses in this paragraph (b) that the contracting officer has indicated as being incorporated in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.203-6, Restrictions on Subcontractor Sales to the Government (Sep 2006), with Alternate I (Oct 1995)(41 U.S.C. 253g and 10 U.S.C. 2402).

____ (2) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

____ (3) 52.203-15, Whistleblower Protections under the American Recovery and Reinvestment Act of 2009 (Jun 2010) (Section 1553 of Pub. L. 111-5).  (Applies to contracts funded by the American Recovery and Reinvestment Act of 2009.)

_X_ (4) 52.204-10, Reporting Executive Compensation and First-Tier Subcontract Awards (Aug 2012) (Pub. L. 109-282) (31 U.S.C. 6101 note).

____ (5) 52.204-11, American Recovery and Reinvestment Act -- Reporting Requirements (JUL 2010) (Pub. L. 111-5).

_X_ (6) 52.209-6, Protecting the Government's Interest When Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (DEC 2010) (31 U.S.C. 6101 note).

____ (7) 52.209-9, Updates of Publicly Available Information Regarding Responsibility Matters (FEB 2012) (41 U.S.C. 2313).

____ (8) 52.209-10, Prohibition on Contracting with Inverted Domestic Corporations (MAY 2012)(section 740 of Division C of Public Law 111-117, section 743 of Division D of Public Law 111-8, and section 745 of Division D of Public Law 110-161)

____ (9) 52.219-3, Notice of Total HUBZone Set-Aside or Sole-Source Award (Nov 2011)(15 U.S.C. 657a).

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 27 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010   **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

___ (10) 52.219-4, Notice of Price Evaluation Preference for HUBZone Small Business Concerns (Jan 2011) (if the offeror elects to waive the preference, it shall so indicate in its offer)(15 U.S.C. 657a).

___ (11) [Reserved]

___ (12)(i) 52.219-6, Notice of Total Small Business Set-Aside (Nov 2011) (15 U.S.C. 644).

___ (ii) Alternate I (Nov 2011) of 52.219-6.

___ (iii) Alternate II (Nov 2011) of 52.219-6.

___ (13)(i) 52.219-7, Notice of Partial Small Business Set-Aside (June 2003)(15 U.S.C. 644).

___ (ii) Alternate I (Oct 1995) of 52.219-7.

___ (iii) Alternate II (Mar 2004) of 52.219-7.

_X_ (14) 52.219-8, Utilization of Small Business Concerns (Jan 2011) (15 U.S.C. 637(d)(2) and (3)).

_X_ (15)(i) 52.219-9, Small Business Subcontracting Plan (Jan 2011)(15 U.S.C. 637 (d)(4)).

___ (ii) Alternate I (Oct 2001) of 52.219-9.

___ (iii) Alternate II (Oct 2001) of 52.219-9.

___ (iv) Alternate III (Jul 2010) of 52.219-9.

___ (16) 52.219-13, Notice of Set-Aside of Orders (NOV 2011) (15 U.S.C. 644(r)).

___ (17) 52.219-14, Limitations on Subcontracting (Nov 2011)(15 U.S.C. 637(a)(14)).

_X_ (18) 52.219-16, Liquidated Damages--Subcontracting Plan (JAN 1999) (15 U.S.C. 637(d)(4)(F)(i)).

___ (19)(i) 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns (Oct 2008)(10 U.S.C. 2323) (if the offeror elects to waive the adjustment, it shall so indicate in its offer).

___ (ii) Alternate I (June 2003) of 52.219-23.

___ (20) 52.219-25, Small Disadvantaged Business Participation ProgramDisadvantaged Status and Reporting (Dec 2010)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (21) 52.219-26, Small Disadvantaged Business Participation ProgramIncentive Subcontracting (Oct 2000)(Pub. L. 103-355, section 7102, and 10 U.S.C. 2323).

___ (22) 52.219-27, Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside (Nov 2011)(15 U.S.C. 657 f).

_X_ (23) 52.219-28, Post Award Small Business Program Rerepresentation (APR 2012)(15 U.S.C. 632(a)(2)).

___ (24) 52.219-29 Notice of Total Set-Aside for Economically Disadvantaged Women-Owned Small Business (EDWOSB) Concerns (Apr 2012) (15 U.S.C. 637(m)).

___ (25) 52.219-30 Notice of Total Set-Aside for Women-Owned Small Business (WOSB) Concerns Eligible Under the WOSB Program (Apr 2012) (15 U.S.C. 637(m)).

_X_ (26) 52.222-3, Convict Labor (June 2003)(E.O. 11755).

___ (27) 52.222-19, Child LaborCooperation with Authorities and Remedies (Mar 2012) (E.O. 13126).

_X_ (28) 52.222-21, Prohibition of Segregated Facilities (Feb 1999).

_X_ (29) 52.222-26, Equal Opportunity (Mar 2007)(E.O. 11246).

_X_ (30) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 28 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** 08 | |

**Name of Offeror or Contractor:**  TOLLIVER GROUP, INC., THE

_X_ (31) 52.222-36, Affirmative Action for Workers with Disabilities (Oct 2010)(29 U.S.C. 793).

_X_ (32) 52.222-37, Employment Reports on Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

_X_ (33) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

___ (34) 52.222-54, Employment Eligibility Verification (Jul 2012). (Executive Order 12989). (Not applicable to the acquisition of commercially available off-the-shelf items or certain other types of commercial items as prescribed in 22.1803.)

___ (35)(i) 52.223-9, Estimate of Percentage of Recovered Material Content for EPA-Designated Items (May 2008) (42 U.S.C. 6962(c)(3)(A)(ii)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (ii) Alternate I (May 2008) of 52.223-9 (42 U.S.C. 6962(i)(2)(C)). (Not applicable to the acquisition of commercially available off-the-shelf items.)

___ (36) 52.223-15, Energy Efficiency in Energy-Consuming Products (Dec 2007) (42 U.S.C. 8259b).

___ (37)(i) 52.223-16, IEEE 1680 Standard for the Environmental Assessment of Personal Computer Products (DEC 2007) (E.O. 13423).
___ (ii) Alternate I (DEC 2007) of 52.223-16.
_X_ (38) 52.223-18, Encouraging Contractor Policies to Ban Text Messaging While Driving (AUG 2011) (E.O. 13513).
___ (39) 52.225-1, Buy American Act--Supplies (Feb 2009)(41 U.S.C. 10a-10d).

___ (40)(i) 52.225-3, Buy American Act Free Trade Agreements -- Israeli Trade Act (NOV 2012) (41 U.S.C. 10a-10d, 19 U.S.C. 3301 note, 19 U.S.C. 2112 note, 19 U.S.C. 3805 note, Pub. L. 108-77, 108-78, 108-286, 108-302, 109-53, 109-169, 109-283, and 110-138).

___ (ii) Alternate I (MAR 2012) of 52.225-3.

___ (iii) Alternate II (MAR 2012) of 52.225-3.

___ (iv) Alternate III (NOV 2012) of 52.225-3.

___ (41) 52.225-5, Trade Agreements (NOV 2012) (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note)).

___ (42) 52.225-13, Restrictions on Certain Foreign Purchases (Jun 2008) (E.o.s, proclamations, and statutes administered by the Office of Foreign Assets Control of the Department of the Treasury).

___ (43) 52.226-4, Notice of Disaster or Emergency Area Set-Aside (Nov 2007) (42 U.S.C. 5150).

___ (44) 52.226-5, Restrictions on Subcontracting Outside Disaster or Emergency Area (Nov 2007)(42 U.S.C. 5150).

___ (45) 52.232-29, Terms for Financing of Purchases of Commercial Items (Feb 2002)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

___ (46) 52.232-30, Installment Payments for Commercial Items (Oct 1995)(41 U.S.C. 255(f), 10 U.S.C. 2307(f)).

_X_ (47) 52.232-33, Payment by Electronic Funds Transfer -- Central Contractor Registration (Oct. 2003)(31 U.S.C. 3332).

___ (48) 52.232-34, Payment by Electronic Funds Transfer -- Other Than Central Contractor Registration (May 1999)(31 U.S.C. 3332).

___ (49) 52.232-36, Payment by Third Party (FEB 2010)(31 U.S.C. 3332).

___ (50) 52.239-1, Privacy or Security Safeguards (Aug 1996)(5 U.S.C. 552a).

___ (51)(i) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (Feb 2006)(46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631).

___ (ii) Alternate I (Apr 2003) of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, that the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items:

_X_ (1) 52.222-41, Service Contract Act of 1965, (Nov 2007)(41 U.S.C. 351, et seq.).

_X_ (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (May 1989)(29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

A53

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 29 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

_X_ (3) 52.222-43, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Multiple Year and Option Contracts) (Sep 2009)(29 U.S.C.206 and 41 U.S.C. 351, et seq.).

___ (4) 52.222-44, Fair Labor Standards Act and Service Contract Act -- Price Adjustment (Sep 2009)(29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

___ (5) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (Nov 2007) (41 U.S.C. 351, et seq.).

___ (6) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services--Requirements (Feb 2009) (41 U.S.C. 351, et seq.).

___ (7) 52.222-17, Nondisplacement of Qualified Workers (JAN 2013) (E.O.13495).

___ (8) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (Mar 2009) (Pub. L. 110-247).

___ (9) 52.237-11, Accepting and Dispensing of $1 Coin (Sep 2008) (31 U.S.C. 5112(p)(1)).

---

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records -- Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractors directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence for examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or claims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e)(1) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) and (d) of this clause, the Contractor is not required to flow down any FAR clause, other than those in this paragraph (e)(1) in a subcontract for commercial items. Unless otherwise indicated below, the extent of the flow down shall be as required by the clause--

(i) 52.203-13, Contractor Code of Business Ethics and Conduct (Apr 2010) (Pub. L. 110-252, Title VI, Chapter 1 (41 U.S.C. 251 note)).

(ii) 52.219-8, Utilization of Small Business Concerns (Dec 2010)(15 U.S.C. 637(d)(2) and (3)), in all subcontracts that offer further subcontracting opportunities. If the subcontract (except subcontracts to small business concerns) exceeds $650,000 ($1.5 million for construction of any public facility), the subcontractor must include 52.219-8 in lower tier subcontracts that offer subcontracting opportunities.

(iii) 52.222-17, Nondisplacement of Qualified Workers (JAN 2013) (E.O. 13495). Flow down required in accordance with paragraph (l) of FAR clause 52.222-17.

(iv) 52.222-26, Equal Opportunity (Oct 2010)(E.O. 11246).

(v) 52.222-35, Equal Opportunity for Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans (Sep 2010)(38 U.S.C. 4212).

(vi) 52.222-36, Affirmative Action for Workers with Disabilities (June 1998)(29 U.S.C. 793).

(vii) 52.222-40, Notification of Employee Rights Under the National Labor Relations Act (DEC 2010) (E.O. 13496).

(viii) 52.222-41, Service Contract Act of 1965, (Nov 2007), flow down required for all subcontracts subject to the Service Contract Act of 1965 (41 U.S.C. 351, et seq.)

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 30 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010          **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

(ix) 52.222-50, Combating Trafficking in Persons (FEB 2009) (22 U.S.C. 7104(g)).

_____ Alternate I (Aug 2007) of 52.222-50 (22 U.S.C. 7104(g)).

(x) 52.222-51, Exemption from Application of the Service Contract Act to Contracts for Maintenance, Calibration, or Repair of Certain Equipment--Requirements (Nov 2007) (41 U.S.C. 351, et seq.)

(xi) 52.222-53, Exemption from Application of the Service Contract Act to Contracts for Certain Services--Requirements (Feb 2009) (41 U.S.C. 351, et seq.)

(xii) 52.222-54, Employment Eligibility Verification (Jul 2012).

(xiii) 52.226-6, Promoting Excess Food Donation to Nonprofit Organizations. (Mar 2009) (Pub. L. 110-247). Flow down required in accordance with paragraph (e) of FAR clause 52.226-6.

(xiv) 52.247-64, Preference for Privately-Owned U.S. Flag Commercial Vessels (Feb 2006)(46 U.S.C. Appx 1241(b) and 10 U.S.C. 2631). Flow down required in accordance with paragraph (d) of FAR clause 52.247-64.

(2) While not required, the contractor may include in its subcontracts for commercial items a minimal number of additional clauses necessary to satisfy its contractual obligations.

(End of Clause)

I-21 CHANGED 252.212-7001     CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR          FEB/2013
                              EXECUTIVE ORDERS APPLICABLE TO DEFENSE ACQUISITIONS OF COMMERCIAL
                              ITEMS

(a) The Contractor agrees to comply with the following Federal Acquisition Regulation (FAR) clause which, if checked, is included in this contract by reference to implement a provision of law applicable to acquisitions of commercial items or components.

__X__ 52.203-3, Gratuities (APR 1984) (10 U.S.C. 2207).

(b) The Contractor agrees to comply with any clause that is checked on the following list of Defense FAR Supplement clauses which, if checked, is included in this contract by reference to implement provisions of law or Executive orders applicable to acquisitions of commercial items or components.

(1) __X__ 252.203-7000, Requirements Relating to Compensation of Former DoD Officials (SEP 2011) (Section 847 of Pub. L. 110-181).

(2) __X__ 252.203-7003, Agency Office of the Inspector General (DEC 2012) (section 6101 of Pub. L. 110-252, 41 U.S.C. 3509).

(3) _____ 252.205-7000, Provision of Information to Cooperative Agreement Holders (DEC 1991) (10 U.S.C. 2416).

(4) _____ 252.219-7003, Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (DoD Contracts) (AUG 2012) (15 U.S.C. 637).

(5) _____ 252.219-7004, Small, Small Disadvantaged and Women-Owned Small Business Subcontracting Plan (Test Program) (JAN 2011) (15 U.S.C. 637 note).

(6)(i) _____ 252.225-7001, Buy American Act and Balance of Payments Program (DEC 2012) (41 U.S.C. 10a-10d, E.O. 10582).

   (ii) ___ Alternate I (OCT 2011) of 252.225-7001.

(7) _____ 252.225-7008, Restriction on Acquisition of Specialty Metals (JUL 2009) (10 U.S.C. 2533b).

(8) _____ 252.225-7009, Restriction on Acquisition of Certain Articles Containing Specialty Metals (JUN 2012) (10 U.S.C. 2533b).

(9) __X__ 252.225-7012, Preference for Certain Domestic Commodities (FEB 2013) (10 U.S.C. 2533a).

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 31 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010      **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

(10) ____ 252.225-7015, Restriction on Acquisition of Hand or Measuring Tools (JUN 2005) (10 U.S.C. 2533a).

(11) ____ 252.225-7016, Restriction on Acquisition of Ball and Roller Bearings (Jun 2011) (Section 8065 of Public Law 107-117 and the same restriction in subsequent DoD appropriations acts).

(12) ____ 252.225-7017, Photovoltaic Devices (DEC 2012) (Section 846 of Pub. L. 111-383).

(13)(i) ____ 252.225-7021, Trade Agreements (DEC 2012) (19 U.S.C. 2501-2518 and 19 U.S.C. 3301 note).

  (ii) ___ Alternate I (OCT 2011) of 252.225-7021.

  (iii) ___ Alternate II (OCT 2011) of 252.225-7021.

(14) ____ 252.225-7027, Restriction on Contingent Fees for Foreign Military Sales (APR 2003) (22 U.S.C. 2779).

(15) ____ 252.225-7028, Exclusionary Policies and Practices of Foreign Governments (APR 2003) (22 U.S.C. 2755).

(16)(i) ____ 252.225-7036, Buy American Act--Free Trade Agreements--Balance of Payments Program (DEC 2012) (41 U.S.C. 10a-10d and 19 U.S.C. 3301 note).

  (ii) ___ Alternate I (JUN 2012) of 252.225-7036.

  (iii) ___ Alternate II (NOV 2012) of 252.225-7036.

  (iv) ___ Alternate III (JUN 2012) of 252.225-7036.

  (v) ___ Alternate IV (NOV 2012) of 252.225-7036.

  (vi) ___ Alternate V (NOV 2012) of 252.225-7036.

(17) ____ 252.225-7038, Restriction on Acquisition of Air Circuit Breakers (JUN 2005) (10 U.S.C. 2534(a)(3)).

(18) ____ 252.225-7039, Contractors Performing Private Security Functions (JUN 2012) (Section 862 of Pub. L. 110-181, as amended by section 853 of Pub. L. 110-417 and sections 831 and 832 of Pub. L. 111-383).

(19) __X__ 252.226-7001, Utilization of Indian Organizations, Indian-Owned Economic Enterprises, and Native Hawaiian Small Business Concerns (SEP 2004) (Section 8021 of Public Law 107-248 and similar sections in subsequent DoD appropriations acts).

(20) ____ 252.227-7013, Rights in Technical Data--Noncommercial Items (FEB 2012), if applicable (see 227.7103-6(a)).

(21) ____ 252.227-7015, Technical Data--Commercial Items (DEC 2011) (10 U.S.C. 2320).

(22) ____ 252.227-7037, Validation of Restrictive Markings on Technical Data (JUN 2012) (10 U.S.C. 2321).

(23) __X__ 252.232-7003, Electronic Submission of Payment Requests and Receiving Reports (MAR 2008) (10 U.S.C. 2227).

(24) ___ 252.237-7010, Prohibition on Interrogation of Detainees by Contractor Personnel (NOV 2010) (Section 1038 of Pub. L. 111-84).

(25) ____ 252.237-7019, Training for Contractor Personnel Interacting with Detainees (DEC 2010) (Section 1092 of Public Law 108-375).

(26) __X__ 252.243-7002, Requests for Equitable Adjustment (DEC 2012) (10 U.S.C. 2410).

(27) ____ 252.246-7004, Safety of Facilities, Infrastructure, and Equipment for Military Operations (OCT 2010) (Section 807 of Public Law 111-84).

(28) ____ 252.247-7003, Pass-Through of Motor Carrier Fuel Surcharge Adjustment to the Cost Bearer (SEP 2010) (Section 884 of Public Law 110-417).

(29)(i) ____ 252.247-7023, Transportation of Supplies by Sea (MAY 2002) (10 U.S.C. 2631).

  (ii) ____ Alternate I (MAR 2000) of 252.247-7023.

  (iii) ____ Alternate II (MAR 2000) of 252.247-7023.

  (iv) ____ Alternate III (MAY 2002) of 252.247-7023.

| | | |
|---|---|---|
| **CONTINUATION SHEET** | **Reference No. of Document Being Continued**<br>**PIIN/SIIN** W56HZV-09-A-A902/0010     **MOD/AMD** 08 | **Page** 32 **of** 34 |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

(30) ____ 252.247-7024, Notification of Transportation of Supplies by Sea (MAR 2000) (10 U.S.C. 2631).

(31) ____ 252.247-7027, Riding Gang Member Requirements (OCT 2011) (Section 3504 of Pub. L. 110-417).

(c) In addition to the clauses listed in paragraph (e) of the Contract Terms and Conditions Required to Implement Statutes or Executive Orders--Commercial Items clause of this contract (FAR 52.212-5), the Contractor shall include the terms of the following clauses, if applicable, in subcontracts for commercial items or commercial components, awarded at any tier under this contract:

(1) 252.225-7039, Contractors Performing Private Security Functions (JUN 2012) (Section 862 of Pub. L. 110-181, as amended by section 853 of Pub. L. 110-417 and sections 831 and 832 of Pub. L. 111-383).

(2) 252.227-7013, Rights in Technical Data--Noncommercial Items (FEB 2012), if applicable (see 227.7103-6(a)).

(3) 252.227-7015, Technical Data--Commercial Items (DEC 2011), if applicable (see 227.7102-4(a)).

(4) 252.227-7037, Validation of Restrictive Markings on Technical Data (JUN 2012), if applicable (see 227.7102-4(c)).

(5) 252.237-7010, Prohibition on Interrogation of Detainees by Contractor Personnel (NOV 2010) (Section 1038 of Pub. L. 111-84).

(6) 252.237-7019, Training for Contractor Personnel Interacting with Detainees (SEP 2006) (Section 1092 of Public Law 108-375).

(7) 252.247-7003, Pass-Through of Motor Carrier Fuel Surcharge Adjustment to the Cost Bearer (SEP 2010) (Section 884 of Public Law 110-417).

(8) 252.247-7023, Transportation of Supplies by Sea (MAY 2002) (10 U.S.C. 2631).

(9) 252.247-7024, Notification of Transportation of Supplies by Sea (MAR 2000) (10 U.S.C. 2631).

(End of clause)

I-22 ADDED    52.219-28    POST-AWARD SMALL BUSINESS PROGRAM REREPRESENTATION               APR/2012

(a) Definitions. As used in this clause--

"Long-term contract" means a contract of more than five years in duration, including options. However, the term does not include contracts that exceed five years in duration because the period of performance has been extended for a cumulative period not to exceed six months under the clause at 52.217-8, Option to Extend Services, or other appropriate authority.

"Small business concern" means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and the size standard in paragraph (c) of this clause. Such a concern is "not dominant in its field of operation" when it does not exercise a controlling or major influence on a national basis in a kind of business activity in which a number of business concerns are primarily engaged. In determining whether dominance exists, consideration shall be given to all appropriate factors, including volume of business, number of employees, financial resources, competitive status or position, ownership or control of materials, processes, patents, license agreements, facilities, sales territory, and nature of business activity.

(b) If the Contractor represented that it was a small business concern prior to award of this contract, the Contractor shall rerepresent its size status according to paragraph (e) of this clause or, if applicable, paragraph (g) of this clause, upon the occurrence of any of the following:

(1) Within 30 days after execution of a novation agreement or within 30 days after modification of the contract to include this clause, if the novation agreement was executed prior to inclusion of this clause in the contract.

(2) Within 30 days after a merger or acquisition that does not require a novation or within 30 days after modification of the contract to include this clause, if the merger or acquisition occurred prior to inclusion of this clause in the contract.

(3) For long-term contracts

(i) Within 60 to 120 days prior to the end of the fifth year of the contract; and

(ii) Within 60 to 120 days prior to the date specified in the contract for exercising any option thereafter.

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 33 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010        **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

(c) The Contractor shall rerepresent its size status in accordance with the size standard in effect at the time of this rerepresentation that corresponds to the North American Industry Classification System (NAICS) code assigned to this contract. The small business size standard corresponding to this NAICS code can be found at

\*HYPERLINK "http://www.sba.gov/content/table-small-business-size-standards"http://www.sba.gov/content/table-small-business-size-standards

(d) The small business size standard for a Contractor providing a product which it does not manufacture itself, for a contract other than a construction or service contract, is 500 employees.

(e) Except as provided in paragraph (g) of this clause, the Contractor shall make the rerepresentation required by paragraph (b) of this clause by validating or updating all its representations in the Online Representations and Certifications Application and its data in the Central Contractor Registration, as necessary, to ensure that they reflect the Contractor's current status. The Contractor shall notify the contracting office in writing within the timeframes specified in paragraph (b) of this clause that the data have been validated or updated, and provide the date of the validation or update.

(f) If the Contractor represented that it was other than a small business concern prior to award of this contract, the Contractor may, but is not required to, take the actions required by paragraphs (e) or (g) of this clause.

(g) If the Contractor does not have representations and certifications in ORCA, or does not have a representation in ORCA for the NAICS code applicable to this contract, the Contractor is required to complete the following rerepresentation and submit it to the contracting office, along with the contract number and the date on which the rerepresentation was completed:

The Contractor represents that it [  ] is, [  ] is not a small business concern under NAICS Code _____ assigned to contract number _____. [Contractor to sign and date and insert authorized signer's name and title].

(End of clause)

| **CONTINUATION SHEET** | **Reference No. of Document Being Continued** | **Page** 34 **of** 34 |
|---|---|---|
| | **PIIN/SIIN** W56HZV-09-A-A902/0010         **MOD/AMD** 08 | |

**Name of Offeror or Contractor:** TOLLIVER GROUP, INC., THE

SECTION J - LIST OF ATTACHMENTS

| List of Addenda | Title | Date | Number of Pages | Transmitted By |
|---|---|---|---|---|
| Exhibit A | OPTION 2 CONTRACT DATA REQUIREMENTS LIST (CDRL) | 21-MAR-2013 | 011 | |

**A59**

PIIN/SIIN W56HZV-09-A-A902/0010
MOD/AMD 08
ATT/EXH ID Exhibit A
PAGE   1

CONTRACT DATA REQUIREMENTS LIST        Form Approval OMB No. 0704-0188

Public reporting burden for this collection of information is estimated to average 440 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports, 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302, and to the Office of Management and Budget, Paperwork Reduction Project (0704-0188), Washington, DC 20503. Please DO NOT RETURN your form to either these addresses. Send completed form to the Government Issuing Contracting Officer for the Contract/PR No. listed in Block E.

---

A. CONTRACT LINE ITEM NO.: N/A

B. EXHIBIT: A

C. CATEGORY: TM

D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)

E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010

F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2


1. DATA ITEM NO: A001

2. TITLE OF DATA ITEM: Technical Manual  Operators Manual

3. SUBTITLE: TM 9-2355-407-10

4. AUTHORITY: MIL-STD-40051-2 with change 3

5. CONTRACT REFERENCE: 3.1.1.1, 3.1.1.2.2, 3.1.2, 3.1.2.1, 3.1.2.2, 3.1.2.4, 3.2.3

6. REQUIRING OFFICE: SFAE-CSS-MR-A

7. DD250 REQ: DD

8. APP CODE: A

9. DIST. STMT. REQD: D

10. FREQUENCY: See Block 16

11. AS OF DATE: N/A

12. DATE OF FIRST SUB: See Block 16

13. DATE OF SUBS. SUB: See Block 16

14. DISTRIBUTION/ A. ADDRESSEE                          B. COPIES      DRAFT      FINAL

Hard Copy PTM

AMSTA-LCC-MAI:                                                          1          2


Electronic CD-ROM

AMSTA-LCC-MAI                                                          4          4

SFAE-CSS-MR-A                                                          1          1


Final Reproducible Copy DVD/CD-ROM

AMSTA-LCC-MAI                                                                     2

SFAE-CSS-MR-A                                                                     1

                                                         15. TOTAL:   6         10


Notice of Delivery

AMSTA-LCC-MAI:

usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil   1          1


SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil                         1          1

               lauren.c.franke.civ@mail.mil                            1          1

               sarah.a.plocinik.civ@mail.mil                           1          1


16. REMARKS:

Deliverables for this CDRL shall be prepared in accordance with MIL STD Content Selection Matrix as listed in MIL-STD-40051-2 with change 3.


Preliminary Technical Manual (PTM) submissions shall include searchable PDF files.


PTM#3 submission is due 14 calendar days after receipt of Government comments.


The Government will review the PTM submission and provide comments NLT 30 calendar days after receipt. A corrected PTM shall be resubmitted within 15 calendar days after receiving the Governments comments The review process of the PTM will continue until the Government requests FRC submission.

Final Reproducible Copy (FRC)/Electronic Technical Manual (ETM) version shall be delivered 5 calendar days after the Governments FRC request. The Contractor shall deliver one (1) DVD with the complete 'I'M in searchable, editable electronic copy (PDF), and one (1)DVD containing the source files (text and art) used to create the manual. Contractor shall deliver electronic copy of Assembly/Running sheets in excel format.

Hard copies shall be delivered to:

AMSTA-LCC-MAI
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 231, 3rd floor Mail Stop 528, ATTN: AMSTA-LCC-MAI, AMCS Program C/O Lisa Kelly,, Warren, MI 48397-5000.

SFAE-CSS-MR-A
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 252, Mail Stop 808, ATTN: AMCS Program COR c/o Travis Christner, Warren, MI 48397-5000.

Receipt of delivery does not denote acceptance by the Government. Only a DD Form 250 shall accompany the FRC/ETM version submission per this CDRL. The PTM shall be submitted with letter of transmittal.

G. PREPARED BY: Travis Christner                     I. APPROVED BY:
H. DATE: 17 December 12                               J. DATE:

---

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO.: A002A
2. TITL OF DATA ITEM: Technical Manual  Field Maintenance Manual
3. SUBTITLE: TM 9-2355-407-23
4. AUTHORITY: MIL-STD-40051-2 with change 3
5. CONTRACT REFERENCE: 3.1.1.2, 3.1.1.2.1, 3.1.1.2.2, 3.1.2, 3.1.2.1, 3.1.2.2, 3.1.2.4, 3.2.3
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT. REQD: D
10. FREQUENCY: See Block 16
11. AS OF DATE: N/A
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS. SUB: See Block 16

| 14. DISTRIBUTION/ A. ADDRESSEE | B. COPIES | DRAFT | FINAL |
|---|---|---|---|
| Hard Copy PTM | | | |
| AMSTA-LCC-MAI: | | 1 | 2 |
| | | | |
| Electronic CD-ROM | | | |
| AMSTA-LCC-MAI | | 4 | 4 |
| SFAE-CSS-MR-A | | 1 | 1 |
| | | | |
| Final Reproducible Copy DVD/CD-ROM | | | |
| AMSTA-LCC-MAI | | | 2 |
| SFAE-CSS-MR-A | | | 1 |
| 15. TOTAL: | | 6 | 10 |
| | | | |
| Notice of Delivery | | | |
| AMSTA-LCC-MAI: | | | |
| usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil | | 1 | 1 |
| | | | |
| SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil | | 1 | 1 |
| lauren.c.franke.civ@mail.mil | | 1 | 1 |

**A61**

sarah.a.plocinik.civ@mail.mil                          1          1

16. REMARKS:
Deliverables for this CDRL shall be prepared in accordance with MIL STD Content Selection Matrix as listed in MIL-STD-40051-2 with change 3.

Preliminary Technical Manual (PTM) submissions shall include searchable PDF files. Submission is required after each Milestone event: Validation, Verification, Instructor & Key Personnel Training (I&KPT), and Logistics Demonstration.

Final PTM delivery shall include searchable PDF files. The review process of the PTM will continue until the Government accepts a Final Reproducible Copy (FRC) submission. A corrected PTM shall be resubmitted within 14 calendar days after receiving the Governments comments

All PTM submissions of the 23 manual shall be concurrent to submissions of the 23P manual (CDRL A002B).

PTM #1 submission is due 21 calendar days after Government acceptance of Contractors Certificate of Validation. The Government shall provide comments within 45 calendar days.

PTM #2 submission is due 30 calendar days after receipt of Government review comments on PTM #1. The Government will assess PTM #2 for Verification requirements. The Government will notify the Contractor within 14 calendar days of receipt of PTM #2 if acceptable to proceed to Verification. Verification is planned to start approximately 45 days after receipt of PTM #2. If PTM #2 is determined not acceptable to proceed to Verification the Government will provide comments and explanation 45 calendar days after receipt of PTM #2. A corrected PTM shall be resubmitted within 30 calendar days after receiving the Governments comments.

PTM #3 submission is due 30 calendar days after Government verification completion. PTM #3 shall incorporate all Government review comments provided during verification. The Government will provide review comments on PTM #3 45 days after receipt.

PTM #4 shall be delivered 21 calendar days after receipt of Government comments on PTM #3. Government will provide comments on PTM #4 within 14 calendar days of receipt. PTM #4 will be used to support I&KPT.

PTM #5 shall incorporate all comments provided by the Government from I&KPT. The Government will provide comments within 14 calendar days of completion of I&KPT. PTM #5 shall be submitted 21 calendar days after receipt of Government comments. Government will provide comments on PTM #5 within 14 calendar days of receipt.  PTM #5 will be used to support Logistics Demonstration.

PTM #6 shall incorporate all comments provided by the Government from Logistics Demonstration. The Government will provide comments within 14 calendar days of completion of Logistics Demonstration. PTM #6 shall be submitted 14 calendar days after receipt of Government comments. The Government will provide comments on PTM #6 within 14 calendar days of receipt.

PTM#7 submission shall be the final PTM that is reviewed for FRC decision. The Government will either request FRC or provide comments on PTM #7 within 14 calendar days of receipt. A corrected PTM shall be resubmitted within 14 calendar days after receiving the Governments comments

Final Reproducible Copy (FRC)/Electronic Technical Manual (ETM) version shall be delivered 5 calendar days after the Governments FRC request. The Contractor shall deliver one (1) DVD with the complete 'I'M in searchable, editable electronic copy (PDF), and one (1)DVD containing the source files (text and art) used to create the manual. Contractor shall deliver electronic copy of Assembly/Running sheets in excel format.

Hard copies shall be delivered to:

AMSTA-LCC-MAI
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 231, 3rd floor Mail Stop 528, ATTN: AMSTA-LCC-MAI, AMCS Program C/O Lisa Kelly,, Warren, MI 48397-5000.

SFAE-CSS-MR-A
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 252, Mail Stop 808, ATTN: AMCS Program COR c/o Travis Christner, Warren, MI 48397-5000.

Receipt of delivery does not denote acceptance by the Government. Only a DD Form 250 shall accompany the FRC/ETM version submission per this CDRL. The PTM shall be submitted with letter of transmittal.

G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE: 17 December 12                              J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO.: A002B
2. TITL OF DATA ITEM: Technical Manual  Field Maintenance Repair Parts and Special Tools List
3. SUBTITLE: TM 9-2355-407-23P
4. AUTHORITY: MIL-STD-40051-2 with change 3
5. CONTRACT REFERENCE: 3.1.1.2, 3.1.1.2.1, 3.1.1.2.2, 3.1.2, 3.1.2.1, 3.1.2.2, 3.1.2.4, 3.2.3
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT. REQD: D
10. FREQUENCY: See Block 16
11. AS OF DATE: N/A
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS. SUB: See Block 16
14. DISTRIBUTION/ A. ADDRESSEE                    B. COPIES    DRAFT    FINAL

Hard Copy PTM
AMSTA-LCC-MAI:                                                  1        2

Electronic CD-ROM
AMSTA-LCC-MAI                                                   4        4
SFAE-CSS-MR-A                                                   1        1

Final Reproducible Copy DVD/CD-ROM
AMSTA-LCC-MAI                                                            2
SFAE-CSS-MR-A                                                            1
                                               15. TOTAL:      6        10

Notice of Delivery
AMSTA-LCC-MAI:
usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil  1        1

SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil                 1        1
               lauren.c.franke.civ@mail.mil                     1        1
               sarah.a.plocinik.civ@mail.mil                    1        1

16. REMARKS:
Deliverables for this CDRL shall be prepared in accordance with MIL STD Content Selection Matrix as listed in MIL-STD-40051-2 with change 3.

Preliminary Technical Manual (PTM) submissions shall include searchable PDF. Submission is required after each Milestone event: Validation, Verification, Instructor & Key Personnel Training (I&KPT), and Logistics Demonstration.

Final PTM delivery shall include searchable PDF files. The review process of the PTM will continue until the Government accepts a Final Reproducible Copy (FRC) submission. A corrected PTM shall be resubmitted within 14 calendar days after receiving the Governments comments

All PTM submissions of the 23P manual shall be concurrent to submissions of the 23 manual (CDRL A002A).

PTM #1 submission is due 21 calendar days after Government acceptance of Contractors Certificate of Validation. The Government shall provide comments within 45 calendar days.

PTM #2 submission is due 30 calendar days after receipt of Government review comments on PTM #1. The Government will assess PTM #2 for Verification requirements. The Government will notify the Contractor within 14 calendar days of receipt of PTM #2 if acceptable to proceed to Verification. Verification is planned to start approximately 45 calendar days after receipt of PTM #2. If PTM #2 is determined not acceptable to proceed to Verification, the Government will provide comments and explanation 45 calendar days after

| | |
|---|---|
| **PIIN/SIIN** | W56HZV-09-A-A902/0010 |
| **MOD/AMD** | 08 |
| **ATT/EXH ID** | Exhibit A |
| **PAGE** | 5 |

receipt of PTM #2. A corrected PTM shall be resubmitted within 30 calendar days after receiving the Governments comments.

PTM #3 submission is due 30 calendar days after Government verification completion.  PTM#3 shall incorporate all Government review comments provided during verification. The Government will provide review comments on PTM #3 45 calendar days after receipt.

PTM #4 shall be delivered 21 calendar days after receipt of Government comments on PTM #3. Government will provide comments on PTM #4 within 14 calendar days of receipt. PTM #4 will be used to support I&KPT.

PTM #5 shall incorporate all comments provided by the Government from I&KPT. The Government will provide comments within 14 calendar days of completion of I&KPT. PTM #5 shall be submitted 21 calendar days after receipt of Government comments. Government will provide comments on PTM #5 within 14 calendar days or receipt.  PTM #5 will be used to support Logistics Demonstration.

PTM #6 shall incorporate all comments provided by the Government from Logistics Demonstration. The Government will provide comments within 14 calendar days of completion of Logistics Demonstration. PTM #6 shall be submitted 14 calendar days after receipt of Government comments. The Government will provide comments on PTM #6 within 14 calendar days of receipt.

PTM #7 submission shall be the final PTM that is reviewed for FRC decision. The Government will either request FRC or provide comments on PTM #7 within 14 calendar days of receipt. A corrected PTM shall be resubmitted within 14 calendar days after receiving the Governments comments

Final Reproducible Copy (FRC)/Electronic Technical Manual (ETM) version shall be delivered 5 calendar days after the Governments FRC request. The Contractor shall deliver one (1) DVD with the complete 'I'M in searchable, editable electronic copy (PDF), and one (1)DVD containing the source files (text and art) used to create the manual. Contractor shall deliver electronic copy of Assembly/Running sheets in excel format.

Hard copies shall be delivered to:

AMSTA-LCC-MAI
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 231, 3rd floor Mail Stop 528, ATTN: AMSTA-LCC-MAI, AMCS Program C/O Lisa Kelly,, Warren, MI 48397-5000.

SPAE-CSS-MR-A
US ARMY TACOM LCMC, 6501 E. 11 Mile Road Bldg 252, Mail Stop 808, ATTN: AMCS Program COR c/o Travis Christner, Warren, MI 48397-5000.

Receipt of delivery does not denote acceptance by the Government. Only a DD Form 250 shall accompany the FRC/ETM version submission per this CDRL. The PTM shall be submitted with letter of transmittal.

G. PREPARED BY: Travis Christner                           I. APPROVED BY:
H. DATE: 17 December 12                                     J. DATE:

---

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A005
2. TITLE OF DATA ITEM: Validation Plan
3. SUBTITLE: Technical Manual Validation Plan
4. AUTHORITY:              DI-TMSS-81818
5. CONTRACT REFERENCE: 3.1.6.3, 3.2.5
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT REQ: A
10. FREQUENCY: See Block 16
11. AS OF DATE: Award
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS SUB: See Block 16
14. DISTRIBUTION/ A. ADDRESSEE                    B. COPIES     DRAFT     FINAL

AMSTA-LCC-MAI:
usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil   1        1

SFAE-CSS-MR-A:   travis.e.christner.civ@mail.mil          1        1
                lauren.c.franke.civ@mail.mil             1        1
                sarah.a.plocinik.civ@mail.mil            0        1

                                    15. TOTAL:    3        4

16. REMARKS:
The initial submission shall be due 14 calendar days prior to start of Validation. The Contractor shall submit electronically in
Contractor format. The Validation Plan is a living document. Validation Plan shall contain at a minimum the following data items:

(1)             Technical Manual Work Packages by name and number.

(2)             Validation schedule for each Work Package.

(3)             Level of completion for each Work Package.

The Government will provide notice of acceptance within 7 calendar days of receipt. If not accepted, the Contractor shall have 7
calendar days to correct errors or revise plan, and return corrected plan to Government for review.

G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE:  17 December 12                             J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A006
2. TITLE OF DATA ITEM: Logistics Management Information (LMI) Summaries
3. SUBTITLE: Validation Report
4. AUTHORITY: DI-CMAN-80792A
5. CONTRACT REFERENCE: 3.1.6.3, 3.2.6
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT REQ: A
10. FREQUENCY: See Block 16
11. AS OF DATE: N/A
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS SUB: See Block 16
14. DISTRIBUTION/ A. ADDRESSEE                B. COPIES    DRAFT    FINAL

AMSTA-LCC-MAI:
usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil   1        1

SFAE-CSS-MR-A:   travis.e.christner.civ@mail.mil          1        1
                lauren.c.franke.civ@mail.mil             1        1
                sarah.a.plocinik.civ@mail.mil            0        1

                                    15. TOTAL:    3        4

16. REMARKS:
The Validation Report shall be due concurrent with the first submittal of the Preliminary Technical Manual (PTM).

This report shall be submitted in the contractors format via digitized (MS Word or equivalent) and paper formats.

**A65**

Contractor shall invoice upon Government acceptance.

The Government will provide notice of acceptance or non-acceptance for documentation to the Contractor within 14 calendar days of receipt. If not accepted, the contractor shall have 14 calendar days to correct any errors or clarify validation results, and return a corrected report to the Government.

The Contractor shall submit a final updated Validation Report indicating 100 percent Validation completion concurrent with all PTM submittals.

Hard Copy submittals under this CDRL shall be forwarded to the following address: ATTN: Travis Christner, Detroit Arsenal, Bldg 252, Mail Stop 808, 6501 E. 11 Mile Road, Warren, MI 48397-5000.

G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE: 17 December 12                              J. DATE:

---

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A007
2. TITLE OF DATA ITEM: Contractor's Progress, Status and Management Report
3. SUBTITLE: Trip Report
4. AUTHORITY: DI-MISC-80508B
5. CONTRACT REFERENCE: 1.3.8.8, 3.2.7
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ:
8. APP CODE:
9. DIST. STMT REQ: A
10. FREQUENCY: After Every Trip
11. AS OF DATE: N/A
12. DATE OF FIRST SUB:
13. DATE OF SUBS SUB: Within 5 calendar days after each Trip

| 14. DISTRIBUTION/ A. ADDRESSEE | B. COPIES | DRAFT | FINAL |
|---|---|---|---|
| SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil | | 0 | 1 |
| lauren.c.franke.civ@mail.mil | | 0 | 1 |
| sarah.a.plocinik.civ@mail.mil | | 0 | 1 |
| 15. TOTAL: | | 0 | 3 |

16. REMARKS:
Contractor shall submit report in contractor format within 5 calendar days of trip return.

G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE:  17 December 12                             J. DATE:

---

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A008
2. TITLE OF DATA ITEM: Quality Control

```
3. SUBTITLE:
4. AUTHORITY: FED-STD-368A
5. CONTRACT REFERENCE: 1.3.1, 1.3.1.1, 3.1.4.1, 3.2.4
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ:
8. APP CODE: A
9. DIST. STMT. REQD:
10. FREQUENCY: At SOW Meeting
11. AS OF DATE: N/A
12. DATE OF FIRST SUB:
13. DATE OF SUBS. SUB:
14. DISTRIBUTION/ A. ADDRESSEE                         B. COPIES    DRAFT    FINAL

AMSTA-LCC-MAI:
usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil    1        1

SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil                           1        1
                lauren.c.franke.civ@mail.mil                              1        1
                sarah.a.plocinik.civ@mail.mil                             0        1

                                            15. TOTAL:                    3        4
```

16. REMARKS:
The contractor shall develop a Quality Control Plan reflecting all required information in the Performance Requirements Summary. This plan is due at the Start of Work Meeting. The Government will review and either accept or deny the QCP within 14 calendar days. After receiving Government acceptance of the quality control plan, any changes to the QCP shall be submitted to the Contracting Officer for approval no later than 14 calendar days prior to the proposed effective date of the change.

```
G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE:  17 December 12                             J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A009
2. TITLE OF DATA ITEM: Report, Record of Meeting/Minutes
3. SUBTITLE: Meeting Minutes
4. AUTHORITY: DI-ADMIN-81505
5. CONTRACT REFERENCE: 3.1.1.2.1, 3.2.2
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ:
8. APP CODE:
9. DIST. STMT. REQD:
10. FREQUENCY: See block 16
11. AS OF DATE: N/A
12. DATE OF FIRST SUB:
13. DATE OF SUBS. SUB:
14. DISTRIBUTION/ A. ADDRESSEE                         B. COPIES    DRAFT    FINAL

AMSTA-LCC-MAI:
usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil    0        1

SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil                           0        1
                lauren.c.franke.civ@mail.mil                              0        1
                sarah.a.plocinik.civ@mail.mil                             0        1

                                            15. TOTAL:                    0        4
```

16. REMARKS:
Reports are due 3 business days after each meeting. Contractor shall submit report in contractor format.

G. PREPARED BY: Travis Christner          I. APPROVED BY:
H. DATE:  17 December 12                   J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A010
2. TITLE OF DATA ITEM: Technical Manual Organization Plan (TMOP)
3. SUBTITLE: Technical Manual Plan
4. AUTHORITY: DI-TMSS-81810
5. CONTRACT REFERENCE: 3.1, 3.2.8, 3.2.9
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT REQ: A
10. FREQUENCY: See Block 16
11. AS OF DATE: N/A
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS SUB: See Block 16

| 14. DISTRIBUTION/ A. ADDRESSEE | B. COPIES | DRAFT | FINAL |
|---|---|---|---|
| AMSTA-LCC-MAI: | | | |
| usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil | 1 | | 1 |
| | | | |
| SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil | | 1 | 1 |
| lauren.c.franke.civ@mail.mil | | 1 | 1 |
| sarah.a.plocinik.civ@mail.mil | | 0 | 1 |
| | 15. TOTAL: | 3 | 4 |

16. REMARKS:
The initial submission shall be due at the start of work meeting for Option Period 2. The Contractor shall submit electronically in Contractor format. The TM Plan is a living document and shall be updated by the Contractor if changes in PTM submission dates shift.

The Government will provide notice of acceptance within 7 calendar days of receipt. If not accepted, the Contractor shall have 7 calendar days to correct errors or revise plan, and return corrected plan to Government for review.

G. PREPARED BY: Travis Christner          I. APPROVED BY:
H. DATE: 17 December 12                    J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 Medium Flail, Area Mine Clearance System (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A011
2. TITLE OF DATA ITEM: Contractor's Progress, Status and Management Report
3. SUBTITLE: Monthly Status Report
4. AUTHORITY: DI-MGMT-80227 T
5. CONTRACT REFERENCE: 1.3.8.2, 3.2.1, 3.2.1.1, 3.2.1.2, and 3.2.1.3

**PIIN/SIIN** W56HZV-09-A-A902/0010
**MOD/AMD** 08
**ATT/EXH ID** Exhibit A
**PAGE** 10

6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ:
8. APP CODE:
9. DIST. STMT. REQD:
10. FREQUENCY: MTHLY
11. AS OF DATE: See Block 16
12. DATE OF FIRST SUB:
13. DATE OF SUBS. SUB:

| 14. DISTRIBUTION/ A. ADDRESSEE | B. COPIES | DRAFT | FINAL |
|---|---|---|---|
| AMSTA-LCC-MAI: | | | |
| usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil | 0 | | 1 |
| | | | |
| SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil | | 0 | 1 |
| lauren.c.franke.civ@mail.mil | | 0 | 1 |
| sarah.a.plocinik.civ@mail.mil | | 0 | 1 |
| | 15. TOTAL: | 4 | 4 |

16. REMARKS:
Items 10.3 (f, g, h and i) shall be deleted from this monthly report.

The contractor shall submit the report in the contractors format by the 30th of the month.

G. PREPARED BY:                              I. APPROVED BY:
H. DATE: 17 December 2012                     J. DATE:

_____

A. CONTRACT LINE ITEM NO.: N/A
B. EXHIBIT: A
C. CATEGORY: TM
D. SYSTEM/ITEM: 910 MCV 2 AREA MINE CLEARANCE SYSTEM (AMCS)
E. CONTRACT/PR NO.: W56HZV-09-A-A902-0010
F. CONTRACTOR: The Tolliver Group, Inc. Cage: 38CH2

1. DATA ITEM NO: A012
2. TITLE OF DATA ITEM: Technical Manual Validation Certification
3. SUBTITLE:
4. AUTHORITY: DI-TMSS-81819A
5. CONTRACT REFERENCE: 3.1.1, 3.2.9
6. REQUIRING OFFICE: SFAE-CSS-MR-A
7. DD250 REQ: DD
8. APP CODE: A
9. DIST. STMT REQ: A
10. FREQUENCY: See Block 16
11. AS OF DATE: Award
12. DATE OF FIRST SUB: See Block 16
13. DATE OF SUBS SUB: See Block 16

| 14. DISTRIBUTION/ A. ADDRESSEE | B. COPIES | DRAFT | FINAL |
|---|---|---|---|
| AMSTA-LCC-MAI: | | | |
| usarmy.detroit.tacom.mbx.ilsc-rc-maintenance-and-publications@mail.mil | 1 | | 1 |
| | | | |
| SFAE-CSS-MR-A:  travis.e.christner.civ@mail.mil | | 1 | 1 |
| lauren.c.franke.civ@mail.mil | | 1 | 1 |
| sarah.a.plocinik.civ@mail.mil | | 0 | 1 |
| | 15. TOTAL: | 3 | 4 |

16. REMARKS:
The Validation Certification shall be submitted upon completion of the Validation and in accordance with the Technical Manual Plan.

| | |
|---:|:---|
| **PIIN/SIIN** | W56HZV-09-A-A902/0010 |
| **MOD/AMD** | 08 |
| **ATT/EXH ID** | Exhibit A |
| **PAGE** | 11 |

The Government will provide notice of acceptance within 7 calendar days of receipt. If not accepted, the Contractor shall have 7 calendar days to correct errors or revise, and return corrected Certificate to Government for review.

G. PREPARED BY: Travis Christner                    I. APPROVED BY:
H. DATE: 17 December 12                             J. DATE:
_____

DD FORM 1423-E

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 APR 15 ₧ 4: 06

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA :
ex rel.;                   :
                           :
ROBERT C. SEARLE          :
533 GRAHAM RD.            :
LEESVILLE, LA 71446       :
                           :
     Plaintiffs,          :
                           :
v.                         :
                           :
DRS Technical Services Inc. :
12930 Worldgate Drive     :
Suite 700                 :
Herndon, VA 20170-5807    :
                           :
DRS C3 & Aviation Company :
400 Professional Drive    :
Gaithersburg, MD 20879-3436 :
                           :
The Tolliver Group, Inc.  :
1742 Willa Circle         :
Winter Park, Florida 32792-6310 :

     Defendants.

Civil Action No. 1:14-CV-00402
(CMH/TCB)
FILED UNDER SEAL:

PURSUANT TO
31 U.S.C. § 3730(b)(2)


DO NOT PLACE IN PRESS BOX
DO NOT ENTER ON PACER

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1. Mr. Robert C. Searle (the "relator") brings this action on behalf of the United States of America against defendants for treble damages and civil penalties arising from the defendants' false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 et seq.

2. Defendants made false statements as to the completeness and accuracy of the performance of the contract knowing the work product was not compliant with the Performance Work Statement.

3. The violations arise out of false certifications from defendants to the Government in order to receive funds pursuant to a contract.

4. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the relator has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Virginia a statement of all material evidence and information related to the complaint. This disclosure statement included material evidence known to relator at his filing establishing the existence of defendants' false claims. Because the statement includes attorney-client communications and work product of relator's attorneys, and submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands this disclosure to be confidential.

### Jurisdiction and Venue

5. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because defendant DRS Technical Services Inc. is headquartered in Herndon, VA

### Parties

7. Relator Robert Searle is a citizen of the United States and a resident of the State of Louisiana. The relator brings this action based on his direct, independent, and personal knowledge as well as information and belief.

2

**A72**

8. Relator is an original source of this information to the United States. He has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act, which is based on the information.

9. The United States of America purchases integrated logistical services through Department of the Army's Tank Automotive Armaments Command (TACOM) to support the Army's equipment. These services include producing operator, maintenance, and parts manuals. TACOM contracts with vendors to produce these manuals. TACOM solicited, accepted bids for, and awarded contract W56HZV-09-A-A902-0010[1]for the production of technical manuals for the 910 MCV-Mine Clearing System.

10. Defendant DRS Technical Services Inc. is a provider of integrated logistical support including technical manuals, competed for and awarded contract W56HZV-09-A-A902-0010.

11. Defendant DRS C3 & Aviation Company, through novation agreement, assumed full rights and responsibilities of the W56HZV-09-A-A902-0010.

12. Defendant The Tolliver Group Inc., through novation agreement, assumed full rights and responsibilities of the W56HZV-09-A-A902-0010.

### Facts and Findings

13. TACOM sought, requested proposals, advertised, received bids for, and awarded a contract under TACOM Omnibus W56HZV-09-A-A902 task order 0010 (hereinafter Contract) to Defendant DRS Technical Services Inc. on or about 26 Aug 2011,[2]for the production of MIL STD compliant operator, maintenance, and parts manuals of the 910 Mine Clearing Vehicle (MCV).

---

[1]**Exhibit 1** DD form 1155 W56HZV-09-A-A902  Task Order 10 Order for Supplies and Services
[2]**Exhibit 2** Omnibus III Task Order Awards spreadsheet (lines 608-599)

14. Defendant DRS Technical Services Inc. transferred full Contract rights and responsibilities to DRS C3 & Aviation Company effective 22 Jul 2011 through a novation agreement.[3]

15. Defendants DRS Technical Services Inc. and DRS C3 & Aviation Company are subsidiaries of DRS Technologies Inc. (headquartered in Arlington, VA).

16. On or about 26 Aug 2011, TACOM and defendant DRS C3 & Aviation Company (hereinafter DRS) completed a start of work meeting.

17. The Contract lists all Government Furnished Information and Equipment[4](GFI and GFE) in Part 2 of the Performance Work Statement.

18. Among the GFI listed was the "Technical Data Package (TDP)".

19. The TDP provides the information required and necessary to commence work in accordance with the Performance Work Statement.[5]

20. Although not having the required TDP, defendant DRS commenced work on the contract.

21. Defendant DRS submitted certification of the accuracy and completeness of the work to TACOM.

22. Defendant DRS sought and received payment for completed work although the source TDP was not present, nor utilized to accomplish the work.

23. On or about 6 Aug 2012, TACOM exercised option period 1 of the Contract with Modification 06 (Exhibit 1).

---

[3]**Exhibit 1** Novation agreement (pg 7)
[4]**Exhibit 1** GOVERNMENT FURNISHED INFORMATION and EQUIPMENT  (pg 31)
[5]**Exhibit 3** IPS Element Guidebook (page 354)

24. On or about 13 Nov 2012, DRS transferred all Contract rights and responsibilities to The Tolliver Group Inc. (hereinafter TTGI) through a novation agreement.[6]

25. On or about 29 Nov 2012, TACOM issued a sole source justification on behalf of TTGI.[7]

26. Exhibit 4, Limited Source Justification memorandum, TACOM states: "The Government does not have the opportunity to purchase all of the necessary engineering and technical data from the OEM, Hydrema, to support the AMCS vehicle TM development. The OEM will not sell the technical data to the Government but has been working with TTGI on the development of the TMs."

27. Defendant TTGI submitted certification of the accuracy and completeness of the work to TACOM.

28. Defendant TTGI sought and received payment for completed work although the source TDP was not present, nor utilized to complete the work.

29. Defendants DRS and TTGI certified they complied with the terms and conditions of the Contract and validated each procedure they created.

30. Defendants DRS and TTGI certified the accuracy and completeness of the technical manuals they produced by submitting form DI-TMSS-81819[8].

31. Form DI-TMSS-81819 contains the following statement: "The technical manual is hereby certified to be accurate and complete, and the information, instructions, text, and illustrations conform in all respects to the above requirements."

---

[6]**Exhibit 1** Novation agreement (pg 6)
[7]**Exhibit 4** Limited Source Justification (par 5.b. pg 2, par 5.d.ii pg3)
[8]**Exhibit 5** DI-TMSS-81819Technical Manual Validation Certificate(pg 2)

## COUNT I

32. Relator re-alleges and incorporates the allegations of paragraphs 1–31 as if fully set forth herein.

33. Defendants knowingly falsely represented that performed work was in accordance with the Contract Performance Work Statement.

34. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 et seq.

35. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in excess of $6.5 million[9] and was damaged to the extent that these funds were paid based upon defendants' false representations.

## COUNT II

36. Relator re-alleges and incorporates the allegations of paragraphs 1–35 as if fully set forth herein.

37. Defendants knowingly and falsely certified that each procedure in the technical manuals had been validated and was technically accurate; although the TDP is the sole source for said technical accuracy.

38. Defendants knowingly and falsely represented that the work performed was in accordance with the requirements of the Contract Performance Work Statement.

39. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 et seq.

40. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in excess of $6.5 million and was damaged to the extent that these funds were paid based upon defendants' false certifications.

---

[9]**Exhibit 6** W56HZV-09-A-A902 TO10 Modification 11 29 Jan 2014

6

**A76**

## COUNT III

41. Relator re-alleges and incorporates the allegations of paragraphs 1–40 as if fully set forth herein.

42. Defendants combined, conspired, and agreed together to defraud the United States by knowingly submitting false claims to the United States for the purpose of getting the false or fraudulent claims paid or allowed and committed the other overt acts set forth above in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(3), causing damage to the United States.

**WHEREFORE,** relator respectfully requests this Court to enter judgment against defendants, as follows:

(a) That the U.S. be awarded treble damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 et seq. provides;

(b) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

(c) That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(d) That the relator be awarded the maximum amount allowed him pursuant the False Claims Act; and

(e) That this Court award such other and further relief as it deems proper.

## DEMAND FOR JURY TRIAL

Relator, on behalf of himself and the United States, demands a jury trial on all claims alleged herein.

Respectfully Submitted,

Dated: April 15, 2014                    ROBERT C. SEARLE,

By Counsel,

7

**A77**

Tucker & Associates, PLLC

By: _____

Christopher E. Brown, Esq.
VSB#39852
8521 Leesburg Pike, Suite 200
Vienna, Virginia 22182
703.924.0223
Fax 703.562.7726
cbrown@tuckerlawpllc.com
*Counsel for Relator*

Dequilla Wayne White, Esq.
Louisiana State Bar #02182
905 NONA STREET
LEESVILLE, LA 71446
832.461.5366
Fax 337.239.0013
dequillawaynewhite1@gmail.com
*Associated Counsel for Relator*

8

**A78**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** <u>**ex rel.**</u> **ROBERT C. SEARLE,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Civil Action No.: 1:14cv402** ) **(CMH/TCB)** |
| **DRS TECHNICAL SERVICES, INC.,** **DRS C3 & AVIATION COMPANY &** **THE TOLLIVER GROUP, INC.,** | ) ) ) |
| **Defendants.** | ) ) |

## THE TOLLIVER GROUP, INC.'S MOTION TO DISMISS

Defendant The Tolliver Group, Inc. ("TTGI") respectfully moves for the dismissal with prejudice of all claims asserted against it in the False Claims Act Complaint and Demand for Jury Trial (the "Complaint") filed by Plaintiff Robert C. Searle on behalf of the United States of America ("Searle"). (Doc. 1.) Searle has failed to state his claims with specificity as required by Rule 9(b) of the <u>Federal Rules of Civil Procedure</u> and has failed to state a claim upon which relief can be granted under Rule 12(b)(6) of the <u>Federal Rules of Civil Procedure</u>. In further support of this motion, TTGI submits its Brief in Support of Motion to Dismiss contemporaneously herewith.

WHEREFORE, PREMISES CONSIDERED, TTGI respectfully requests that this Court dismiss the claims asserted against it in this action, with prejudice as to Searle.

**A79**

Respectfully submitted,


/s/ Rebecca L. Saitta
Rebecca L. Saitta (VA Bar No. 65408)
Stephen Obermeier (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: 202-719-7000
Facsimile: 202-719-7049
Email: RSaitta@wileyrein.com
        SObermeier@wileyrein.com

Walter Brad English (admitted *pro hac vice*)
Emily Jones Chancey (admitted *pro hac vice*)
MAYNARD COOPER & GALE PC
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: 256-512-5705
Facsimile: 256-512-5740
Email: benglish@maynardcooper.com
        echancey@maynardcooper.com

*Counsel for The Tolliver Group, Inc.*

**A80**

The only certification referenced in the Complaint provides:

> Except as stated in B below, the technical manual identified above has been satisfactorily validated in accordance with the requirements of the contract, TMCR, and (as applicable) Government-approved TM Validation Plan.  The technical manual is hereby certified to be accurate and complete, and the information, instructions, text and illustrations conform in all respects to the above requirements.

(Doc. 1-7, p. 3.)[5]  Yet, nowhere in the Complaint does Relator allege that the technical manual was not "satisfactorily validated," or that it was not "accurate and complete."  For this reason alone, Counts I and II fail.

The crux of Searle's claims against TTGI in Counts I and II is as follows:  (i) the Contract references a TDP as a document <u>to be provided by the Government</u> (doc. 1 ¶¶ 17-18); (ii) TTGI did not have the TDP (<u>id.</u> at ¶ 28); (iii) TTGI prepared technical manuals and certified the accuracy and completeness of same (<u>id.</u> at ¶¶ 27, 29); and (iv) the Government paid TTGI's invoices (<u>id.</u> at 28).  The TDP is nothing more than a document containing the technical description of items.  (Doc. 1-5, p. 2.)  Searle asks the Court to assume that the reference to the TDP contained in the Contract necessarily means that the TDP was required to prepare technical manuals.  (Doc. 1, ¶ 37.)  The Complaint, however, contains not a single allegation explaining the basis for such an assumption.  In fact, the TDP is not included in the "source data" required to be used under the Contract.  (<u>See</u> Doc. 1-2, p. 3.)  The TDP is not listed in in Part 2, Government Furnished Information and Equipment of Modification No. 11 to the Contract, demonstrating that the TDP was not required to perform work under the Contract.  (Doc. 1-8, p.

---

[5] To the extent Searle intended to allege the existence of another certification, he has not done so with the particularity required by Rule 9(b).  Furthermore, to the extent Searle attempts to assert an implied certification claim, the allegations contained in the Complaint fall substantially short of that required to make out such a claim.  <u>Triple Canopy</u>, 775 F.3d at 636-37.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *ex rel.* ROBERT C. SEARLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:14-cv-00402 |
| | ) | |
| | ) | |
| DRS TECHNICAL SERVICES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER**

THIS MATTER comes before the Court on Defendants' Motions to Dismiss.  It appearing to the Court that Plaintiff's Complaint does not set forth claims for fraud with sufficient particularity, it is hereby

ORDERED that Defendant's Motions to Dismiss are GRANTED and Plaintiff has fourteen (14) days to file an amended complaint.

*Claude M. Hilton*
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
~~April~~ *May* 1, 2015

**A82**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| <u>ex rel.</u> **ROBERT C. SEARLE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 1:14cv402** |
| ) | **(CMH/TCB)** |
| **DRS TECHNICAL SERVICES, INC.,** ) | |
| **DRS C3 & AVIATION COMPANY &** ) | |
| **THE TOLLIVER GROUP, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

**BRIEF IN SUPPORT OF THE TOLLIVER GROUP, INC.'S MOTION TO DISMISS
FIRST AMENDED FALSE CLAIMS ACT COMPLAINT**

      Defendant The Tolliver Group, Inc. ("TTGI") moves for the dismissal, with prejudice, of

all claims asserted against it in the First Amended False Claims Act Complaint and Demand for

Jury Trial (the "Amended Complaint") filed by Plaintiff Robert C. Searle on behalf of the United

States of America ("Searle" or "Relator").[1]

**I.      INTRODUCTION**

      Having had his original 8-page complaint dismissed for failing to plead fraud with the

requisite particularity under Federal Rule of Civil Procedure 9(b), Relator now attempts to push

this case past the motion to dismiss stage with a 46-page amended complaint, including

approximately 200 paragraphs of new allegations against Defendants.  But under the False

Claims Act ("FCA"), a Relator cannot raise new claims without first submitting them to the

---

[1] TTGI seeks dismissal with prejudice against Searle, but not as it relates to the Government.
TTGI seeks dismissal without prejudice as to the Government.

**A83**

Department of Justice.  And in any event, the Court need only read the first few pages of

Relator's incoherent ramblings to realize that more is certainly not better.  Indeed, other than

providing the superficial appearance of bolstering his original claims, Relator's amended

complaint fails entirely to satisfy Rules 9(b) and 12(b)(6).  Counts I, II, and IX simply repeat the

same allegations about the Government's failure to provide a technical data package (the "TDP")

and the Defendants' purported conspiracy that this Court dismissed previously.  And Counts III

through VIII—though difficult even to decipher—are entirely new claims that merely tick off a

list of Searle's critiques of discrete portions of TTGI's operator technical manual and in no way

allege a fraud of any kind.  The Amended Complaint should be dismissed with prejudice as to

Searle.

## II.   <u>ARGUMENT AND CITATION OF AUTHORITIES</u>

Searle's amended complaint must both state a claim under Federal Rule of Civil

Procedure 12(b)(6), <u>id.</u>; <u>United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.</u>, 707 F.3d

451, 455 (4th Cir. 2013) <u>cert. denied,</u> 134 S. Ct. 1759, 188 L. Ed. 2d 592 (2014) ("[f]acts that are

'merely consistent with' liability do not establish a plausible claim for relief.") (internal citations

omitted), and satisfy the pleading requirements of Rule 9(b), <u>United States v. Triple Canopy,</u>

<u>Inc.</u>, 775 F.3d 628, 634 (4th Cir. 2015); <u>Takeda Pharm.</u>, 707 F.3d at 455.  To state a claim under

the FCA, Searle must allege the following elements:  (1) a false statement, (2) made with

requisite scienter, (3) that is material, and (4) that results in a claim to the Government.  <u>Triple</u>

<u>Canopy</u>, 775 F.3d at 634.  To meet the Rule 9(b) standard, a FCA plaintiff is required to describe

the "who, what, when, where, and how" of the fraud he or she alleges.  <u>United States ex rel.</u>

<u>Wilson v. Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 379 (4th Cir. 2008).  Requiring FCA

plaintiffs to adhere to the specificity requirement of Rule 9(b) deters frivolous lawsuits, such as

the instant one, filed by plaintiffs seeking to conduct a "fishing expedition." <u>Triple Canopy</u>, 775

F.3d at 634.  Here, Searle has failed to meet both burdens, and his claims should be dismissed.

A.     <u>Counts I and II of the Amended Complaint Fail to State a Claim Against TTGI</u>

Counts I and II of the Complaint repeat the same claims that this Court previously

dismissed.  (Doc. 46.)  Specifically, Counts I and II allege that without the TDP, TTGI could not

have provided a technically accurate technical manual under Contract No. W56HZV-09-A-A902

(the "Contract").  Searle's claims still do not comply with Rules 12(b)(6) or 9(b) of the <u>Federal</u>

<u>Rules of Civil Procedure</u> and are due to be dismissed, with prejudice.

First, Searle has not alleged that TTGI has made a false statement.  Searle continues to

assume, without providing any basis for his assumption, that because the TDP was listed as

"Government Furnished Information" in the original contract, the TDP was required to perform

the Contract work.  Searle ignores the fact that the TDP was removed from the list of

"Government Furnished Information" by Modification 8.  (Doc. 47-1, p. 37.)  Searle also

assumes that TTGI could not have obtained technical data in any other manner.  Yet, Searle has

conceded that TTGI could have reverse-engineered the equipment.  (Doc. 39, p. 4.)  Searle also

acknowledges that Defendants sent a representative to the original manufacturer's facility to

learn about the equipment (doc. 47 ¶ 34) and that the original manufacturer was working with the

Government and TTGI to develop the technical manuals (doc. 47 ¶ 48).  Thus, Searle has alleged

facts that undermine his assumption that the work could not have been completed without the

TDP.  Plainly, the Government's failure to provide the TDP does not render TTGI's technical

manuals inaccurate or incomplete, nor does it render TTGI's certifications false.

Second, Searle attempts to blur the distinction between the TDP (a document the Government intended to provide TTGI prior to commencement of work under the Contract) and the technical manuals (documents TTGI prepared in accordance with the Contract requirements and delivered to the Government).  Searle declares that TTGI could not have data rights in technical manuals that TTGI produced because TTGI did not receive the TDP.  However, Searle's own allegations undercut this declaration.  Searle alleges that TTGI sent a representative to the original manufacturer's facility in place of the license (doc. 47 ¶ 34), and again, Searle acknowledges that the original manufacturer assisted with the development of the manuals (id. at 48).  Thus, under Searle's own allegations, to the extent TTGI needed to obtain the data rights, it could have done so in another manner.  Although the Court "must view the facts alleged in the light most favorable to the plaintiff," it need not "accept . . . unwarranted inferences, unreasonable conclusions, or arguments."  Takeda Pharm., 707 F.3d at 455 (internal quotation omitted).  Because Searle's factual allegations do not establish a plausible claim for relief under the FCA, these counts are due to be dismissed.

Even if this Court were to substitute Searle's conclusions and suppositions for allegations of a false statement, which it should not, Searle's claims still fail because he has not made specific allegations as to the materiality of the alleged false statement to the Government's decision to pay TTGI's invoices.  The Government, as the party required to provide the TDP and other "Government Furnished Information" (doc. 47 at ¶¶ 26-27), necessarily knew that it did not furnish the TDP to TTGI.  Because the Government knew that it did not furnish the TDP to TTGI, the Government also knew that TTGI did not have the TDP.  Therefore, the Government's decision to pay TTGI's invoices could not have been influenced by or made in reliance upon any

assumption that TTGI tested the technical manuals against the TDP or prepared them with the TDP in hand.  Searle's allegations as to the Government's reliance are entirely unsupported.

Counts I and II of the Amended Complaint are also woefully deficient under Rule 9(b). Searle fails to describe how the Government's failure to provide the TDP renders TTGI's certification(s) false.  He fails to identify when and how many claims for payment were submitted, and how any certification was related to a claim for payment.  Indeed, Searle fails even to identify which provision of the FCA he believes TTGI has violated.[2]  At the end of the day, Searle pleads in Counts I and II only that TTGI submitted a false certification and was paid by the Government.  (See Doc. 47 ¶¶ 249-256.)  Without substantially more detail, the claim must fail.

As stated above, Searle bears the burden of alleging facts with specificity and stating a plausible claim for relief.  Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 12(b)(6); Takeda Pharm., 707 F.3d at 455-56.  Searle has failed to meet those burdens, instead submitting, for the second time, a pleading full of speculation and conclusory allegations, which do not meet the specificity requirement of Rule 9(b) or state a plausible claim upon which relief can be granted under Rule 12(b)(6).  See Takeda Pharm., 707 F.3d at 455-56.  As such, Counts I and II should be dismissed with prejudice as to Searle.

---

[2] For the reasons discussed supra, Searle's claims would fail regardless of the subsection upon which he relies because Searle has not alleged that TTGI made or used a false statement or that any alleged false statement was material.  See e.g. 31 U.S.C. § 3729(a)(1)(B) (imposing liability upon a person who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"); 31 U.S.C. § 3729(a)(1)(G) (imposing liability on a person who "knowingly makes, uses or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government").

B.   <u>Searle Has Not Alleged the Existence of a Conspiracy (Count IX).</u>

Count IX of the Amended Complaint repeats Relator's claim from his original complaint for conspiracy to defraud the Government under 31 U.S.C. § 3729(a)(1)(C).  In order to plead a claim under this section, Searle must allege: (1) the existence of an unlawful agreement among Defendants to get a false claim reimbursed by the Government; and (2) at least one act performed in furtherance of that agreement.  <u>United States ex rel. DeCesare v. Americare In Home Nursing</u>, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010).  Moreover, Searle must allege that Defendants agreed to use a false statement to reach their unlawful purpose.  <u>Allison Engine Co. v. United States ex rel. Sanders</u>, 553 U.S. 662, 665 (2008).  Searle has failed to allege these elements in any respect, much less with the specificity required by Rule 9(b).  <u>See</u> <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 790 (4th Cir. 1999) (conspiracy claims under the FCA are also subject to the specificity requirements of Rule 9(b)).

At the outset, Searle has not alleged the existence of a false statement by Defendants in connection with the Government's failure to provide the TDP.  Where there is no false statement, there can be no unlawful agreement to use that statement to defraud the Government.  But even if this Court assumed the existence of a false statement (which it should not), Searle's conspiracy claim still fails because he has not alleged the occurrence of any conspiratorial conduct whatsoever.

The only interaction alleged between TTGI and the other Defendants was the novation agreement wherein TTGI assumed the rights and responsibilities under the Contract.  (Doc. 47 ¶¶ 15-16, 18.)  And nothing about the novation of the Contract is alleged to constitute any wrongdoing whatsoever.  Because Searle has not alleged the elements of his conspiracy claim

with specificity, nor has he stated a plausible conspiracy claim, Count IX of the Complaint is due to be dismissed with prejudice as to Searle.  Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 12(b)(6).

    C.    <u>Counts III - VIII of the Amended Complaint Fail to State a Claim Against TTGI</u>

Counts III through VIII of the Amended Complaint are entirely new claims that are completely unrelated to the allegations contained in the original complaint.  These counts are not based on the Government's failure to provide the TDP, but instead contain Searle's critiques of the manual TTGI has produced under the Contract.[3]  As demonstrated below, these counts are also due to be dismissed, with prejudice.

As an initial matter, Counts III through VIII are due to be dismissed because Searle has not provided the Government with an opportunity to investigate his new claims.  Section 3730(b)(2) requires a relator to file his or her complaint under seal, serve a copy upon the Government, and provide the Government with at least sixty (60) days in which to investigate these claims and determine whether it will intervene in the action.  31 U.S.C. § 3730(b)(2).  Complaints—including amended complaints—that fail to comply with this requirement are due to be dismissed, with prejudice.  <u>United States ex rel. Davis v. Prince</u>, 766 F. Supp. 2d 679, 682-84 (E.D. Va. 2011) ("The sealing requirement is mandatory; failure to file a complaint under seal requires dismissal of a *qui tam* complaint with prejudice."); <u>see id.</u> ("[T]he term 'complaint' in § 3730(b)(2) encompasses amended complaints.").  In this case, Searle did not provide the

---

[3] TTGI was required to produce three (3) manuals under the Contract:  an operator manual, a field maintenance manual, which is to include a Repair Parts and Special Tools List, and a National Maintenance Work Requirements manual.  (Doc. 47-1 at 32.)  TTGI has completed the operator manual and the Government has reviewed, accepted, and published same.  (Doc. 47 ¶ 57.)  The other two manuals are still in process and not yet due to be completed.  (Doc. 47-6, p. 1 ¶ 3.)  Counts III through VIII appear to relate to the operator manual.

Government with an opportunity to investigate the almost two hundred paragraphs of new allegations and six new counts of the Amended Complaint.  (Doc. 47 ¶¶ 53-240, 257-332.)  For this reason, Counts III through VIII must be dismissed, with prejudice.

Even if the Court excuses Searle's failure to comply with this requirement—which it should not—Counts III through VIII must be dismissed for failure to comply with Rules 12(b)(6) or 9(b) of the Federal Rules of Civil Procedure.  The allegations in support of Counts III and VIII are difficult to understand, but appear to reflect Searle's critiques and criticisms of TTGI's operator manual rather than any false claims.  Indeed, some of Searle's critiques appear to concern matters as minor as typographical errors.  (Doc. 47 ¶ 229.)

Assuming Searle's disjointed allegations as true, at most Searle alleges a claim for breach of contract against TTGI.  And it is well settled that litigious claimants, such as Searle, cannot "shoehorn" a breach of contract claim into a claim under the FCA.  United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 373 (4th Cir. 2008); United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010).  As the Fourth Circuit recognized:  "[i]f every dispute involving contractual performance were to be transformed into a *qui tam* FCA suit, the prospect of litigation in government contracting would literally have no end."  Kellogg Brown & Root, Inc., 525 F.3d at 373.

Searle seeks to do precisely what the Fourth Circuit has cautioned against:  bring FCA claims against government contractors based on his own interpretation of extensive and complex government standards.  (See e.g. doc. 47-7.)  Searle acknowledges that the Government has approved and published TTGI's operator manual.  (Doc. 47 ¶ 57.)  The Government, as the actual party to the Contract and the entity responsible for producing the manuals and standards

against which TTGI's work was judged, apparently found TTGI's operator manual to be compliant with its standards.[4]  Searle may not substitute his own interpretation of the Government's standards and requirements or use the FCA to enforce an ordinary breach of contract claim.  For this reason, Searle fails to state a claim upon which relief may be granted, and Counts III through VIII are due to be dismissed, with prejudice.

Even if this Court is able to decipher Searle's allegations and excuse his misuse of the FCA, Counts III through VIII of the Amended Complaint are still due to be dismissed because Searle has not made specific allegations as to the materiality of the alleged false statement(s) to the Government's decision to pay TTGI.  Searle acknowledges that the Government accepted and published TTGI's operator manual, which contains the items Searle alleges to be non-compliant.  (Doc. 47 ¶ 57.)  According to Searle, sometime thereafter, TTGI submitted invoices and the Government  (with the completed operator manual in hand) paid TTGI's invoices.  (Id. at ¶ 240.)  The performance work statement of the Contract required TTGI to implement a quality assurance plan.  (Doc. 47-1 ¶ 1.3.1.)  The Government was to inspect all deliverables and ensure that the work had been performed in accordance with all contractual requirements.  (Id. at ¶ 1.3.2.)  The Government had various remedies if TTGI's work was non-compliant.  (Id. at ¶ 1.3.3.2.)  Yet the Government accepted TTGI's work, and paid its invoices.  (Doc. 47 ¶¶ 57, 263.)  If the Government was satisfied with TTGI's work, as it clearly was, then Searle's assumption that the Government failed to avail itself of its contractual rights is not sufficient to state a FCA claim.

---

[4] To the extent Searle raises issues with respect to the manuals that are still in process and not yet due, TTGI and the Government still have the opportunity to correct any errors or omissions.

Counts III through VIII of the Amended Complaint also lack the specificity required by Rule 9(b).  Searle merely lists his issues with TTGI's manual(s) and declares that all of TTGI's invoices and certification(s) must have been false claims.  Searle fails to identify when and how many claims for payment were submitted or which alleged issues related to which claim(s).  As with Counts I, II and IX, Searle essentially pleads only that TTGI submitted false certifications and was paid by the Government.  (See Doc. 47 ¶¶ 263, 269, 275, 307, 314, 332.)  Without substantially more detail, the claim must fail.

    D.    <u>Searle Should Not Be Permitted to Further Amend his Pleading</u>.

It is patently clear that the crux of the Amended Complaint is that TTGI performed work under the Contract, without the TDP, the Government accepted TTGI's work, and the Government paid TTGI for its work.  (Doc. 47 ¶¶ 42-44, 52.)  Those facts alone will never support a FCA claim.  That is, those facts do not support the conclusory allegation that TTGI's certification was false.  And because the Government was the source of the TDP (<u>id.</u> at ¶ 20.), it necessarily knew that TTGI did not have the TDP, and yet it nevertheless accepted Defendants' work under the Contract and remitted payment to Defendants.  (<u>Id.</u> at ¶ 247.)  Furthermore, the Government reviewed and accepted TTGI's operator manual and has published the same.  (<u>Id.</u> at 242.)

The Government could have terminated the Contract if it felt that Defendants were unable to perform without the TDP.  48 C.F.R. 52.249-4; (doc. 47-1, p. 49).  But it did not do so.  Therefore, Defendants were <u>obligated</u> to perform the Contract requirements.  Contractors have a duty to proceed to complete work under government contracts.  <u>See</u> Nash, Ralph Jr. and Feldman, Steven W., <u>Government Contract Changes</u>, Third Edition, § 6.1 (Thompson West

2007); see also Appeal of Green Thumb Lawn Maint., ENGBCA No. 6249, 98-1 B.C.A. (CCH)

¶ 29688 (Apr. 9, 1998) ("'duty to proceed' is a statutory requirement . . . and is a fundamental

obligation of a Government contractor").  The Contract included FAR 52.243-1 *Changes – Fixed*

*Price*, (doc. 47-1, p. 49) which provides in pertinent part:  "Failure to agree to any adjustment

shall be a dispute under the Disputes clause.[5]  However, nothing in this clause shall excuse the

Contractor from proceeding with the contract as changed."  48 C.F.R. § 52.243-1(e).

Under the Contract, the Government was obligated to provide the TDP.  (Doc. 47 ¶¶ 26-

27.)  The Government, however, did not have the TDP and did not provide the TDP to TTGI,

each facts necessarily known to the Government.  (Id. at ¶ 48.)  As a matter of law, TTGI had a

duty to proceed to perform the Contract, despite the Government's failure to provide the TDP.  It

is undisputed that TTGI proceeded as required.  It is also undisputed that the Government

accepted TTGI's work.  As a matter of law, there is no set of facts (or, in this case, conclusory

allegations) that can give rise to a claim against TTGI for proceeding, as required, despite the

Government's failure to provide the TDP.  Thus, claims predicated upon that notion—as Counts

I, II and IX are—fail to state a claim for which relief may be granted and should be dismissed as

matter of law.

---

[5] Strangely, the Contract did not include the standard Disputes Clause.  However, the Contract Disputes Act applies to the Contract.  See 41 U.S.C. § 7102.  Thus, the Contract should be read as including the standard Disputes Clause.  See, e.g., Todd Constr., L.P. v. United States, 94 Fed. Cl. 100 (2010) ("The notion that certain legal mandates are treated as part of the contract ultimately became known as the Christian doctrine, named after G.L. Christian & Assocs. v. United States, 160 Ct. Cl. 1, 312 F.2d 418, 424–26 (1963), motion for rehearing denied, 160 Ct. Cl. 58, 320 F.2d 345 (1963).")  The standard Disputes Clause likewise imposes upon the contractor a duty to proceed, notwithstanding any disputes with the government.  Nash, Ralph Jr. and Feldman, Steven W., Government Contract Changes, Third Edition, § 6.1 (Thompson West 2007), 48 C.F.R. § 52.233-1.

The Government also could have refused to publish TTGI's operator manual if it deemed it non-compliant, but it did not.  In fact, the Government extended the Contract to allow TTGI additional time to complete the maintenance manual and parts manual, citing TTGI's "engineering knowledge … technical expertise," experience, and successful completion of the operator manual as justification for a sole-source award to TTGI.  (Doc. 47-6, p. 2-3.)  Searle should not be permitted to second-guess the Government's decision to allow performance to proceed without the TDP or to accept TTGI's work under the Contract.

Because the facts Searle alleges will never establish a cause of action against Defendants, Searle should not be permitted an opportunity to amend the Amended Complaint, as doing so would be futile.  See Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010); Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011); Hanover Ins. Co. v. Corrpro Cos, Inc., 312 F. Supp. 2d 816, 822 (E.D. Va. 2004) ("Amendment is 'futile' where the proposed amendment would not remedy the defect in the complaint.").

### III.   CONCLUSION

WHEREFORE, PREMISES CONSIDERED, TTGI respectfully requests that this Court dismiss the claims asserted against it in this action with prejudice as to Searle.

Respectfully submitted,


/s/ Rebecca L. Saitta
Rebecca L. Saitta (VA Bar No. 65408)
Stephen Obermeier (admitted *pro hac vice*)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC 20006
Telephone: 202-719-7000
Facsimile: 202-719-7049
Email: RSaitta@wileyrein.com
        SObermeier@wileyrein.com


Walter Brad English (admitted *pro hac vice*)
Emily Jones Chancey (admitted *pro hac vice*)
MAYNARD COOPER & GALE PC
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: 256-512-5705
Facsimile: 256-512-5740
Email: benglish@maynardcooper.com
        echancey@maynardcooper.com


*Counsel for Defendant The Tolliver Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2015, a copy of the foregoing has been served through the Court's electronic filing system upon the following:

Christopher E. Brown, Esq.
The Brown Firm PLLC
526 King Street, Suite 207
Alexandria, Virginia 22314

Dequilla Wayne White, Esq.
905 Nona Street
Leesville, LA 71446

Richard W. Sponseller, Esq.
Peter S. Hyun, Esq.
Assistant United States Attorneys
United States Attorney's Office
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314

Jason C. Lynch, Esq.
Andy Liu, Esq.
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595

I hereby certify that on this 1st day of June, 2015, a copy of the foregoing has been served by hand delivery upon the following:

Christopher E. Brown, Esq.
The Brown Firm PLLC
526 King Street, Suite 207
Alexandria, Virginia 22314

/s/ Rebecca L. Saitta
Rebecca L. Saitta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| <u>ex rel.</u> **ROBERT C. SEARLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:14cv402** |
| | ) | **(CMH/TCB)** |
| **DRS TECHNICAL SERVICES, INC.,** | ) | |
| **DRS C3 & AVIATION COMPANY &** | ) | |
| **THE TOLLIVER GROUP, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>THE TOLLIVER GROUP, INC.'S BRIEF IN SUPPORT OF</u>**
**<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Defendant The Tolliver Group, Inc. ("TTGI") respectfully moves for summary judgment

in its favor on all claims asserted against it by Plaintiff Robert C. Searle, purportedly on behalf of

the United States of America ("Relator" or "Plaintiff").  There are no genuine issues of material

fact, and TTGI is entitled to judgment as a matter of law on all claims asserted against it in this

action.

## Table of Contents

Table of Contents ...................................................................................................... i

Table of Authorities .................................................................................................. ii

I.     Introduction ............................................................................................1

II.    Statement of Undisputed Material Facts ...............................................3

     A.     History and Nature of the Contract .............................................3

     B.     Manual Drafting Process ..............................................................8

     C.     Work Package 0103 ....................................................................10

     D.     General Purpose Gloves and Gasket ..........................................11

     E.     Trouble Shooting Instructions ....................................................12

     F.     Certifications ..............................................................................13

III.    Summary Judgment Standard ...............................................................15

IV.    Argument and Citation of Authorities ..................................................16

     A.     TTGI has Not Violated 31 U.S.C. § 3729(a)(1)(A) ...................16

           1.     TTGI Did Not Make Any False Statements ................17

                i.     Express Certification....................................17

                ii.     Implied Certification ...................................18

           2.     TTGI Acted in Good Faith.........................................22

           3.     Relator Cannot Show Materiality ...............................25

           4.     Relator Has Not Shown that the U.S. Army Suffered Damages ..............28

     B.     TTGI Has Not Engaged in a Conspiracy
           Under 31 U.S.C. § 3729(a)(1)(C) ..............................................29

     C.     Relator Did Not File Counts III through VIII Under Seal ....................30

V.    Conclusion ............................................................................................30

## <u>Table of Authorities</u>

<u>**Cases:**</u>

Allison Engine Co. v. United States ex rel. Sanders,
     553 U.S. 662, 665 (2008)..................................................................................................29

Anderson v. Liberty Lobby, Inc.,
     477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)......................................................15

G.L. Christian & Assocs. v. United States,
     160 Ct. Cl. 1, 312 F.2d 418 (1963) ....................................................................................8

Hoschar v. Appalachian Power Co.,
     739 F.3d 163 (4th Cir. 2014) ............................................................................................16

Kungys v. United States,
     485 U.S. 759, 108 S. Ct. 1537, 1546, 99 L. Ed. 2d 839 (1988)........................................25

Neder v. United States,
     527 U.S. 1, 119 S. Ct. 1827, 1840, 144 L. Ed. 2d 35 (1999)...................................... 25-26

Thompson v. Potomac Elec. Power Co.,
     312 F.3d 645 (4th Cir.2002) .............................................................................................16

Todd Constr., L.P. v. United States,
     94 Fed. Cl. 100 (2010) ........................................................................................................8

United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama,
     104 F.3d 1453 (4th Cir. 1997) ..........................................................................................16

United States ex rel. Davis v. Prince,
     766 F. Supp. 2d 679 (E.D. Va. 2011) ...............................................................................30

United States ex rel. DeCesare v. Americare In Home Nursing,
     757 F. Supp. 2d 573 (E.D. Va. 2010) ...............................................................................29

United States ex rel. Harrison v. Westinghouse Savannah River Co.,
     352 F.3d 908 (4th Cir. 2003) ............................................................................................28

United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.,
     612 F.3d 724 (4th Cir. 2010) .......................................................................... 22, 23-24, 25

United States v. Triple Canopy, Inc.,
     775 F.3d 628 (4th Cir. 2015) ....................................................... 16, 17, 18-19, 21, 23, 25

United States ex rel. Ubl v. IIF Data Solutions,
     650 F.3d 445 (4th Cir. 2011) ...............................................................................20, 21, 24

United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,
    525 F.3d 370, 373 (4th Cir. 2008) ...................................................................................22

United States v. Prabhu,
    442 F. Supp. 2d 1008, 1029 (D. Nev. 2006) ...................................................................20

**Statutes:**

31 U.S.C. § 3729 ...........................................................................................16, 17, 25, 28, 29, 30

31 U.S.C. § 3730 ...........................................................................................................................30

31 U.S.C. § 3731 ...........................................................................................................................28

41 U.S.C. § 7102 .............................................................................................................................8

**Regulations:**

48 C.F.R. § 52.233-1 ......................................................................................................................8

48 C.F.R § 52.243-1 .......................................................................................................................8

**Rules:**

Fed. R. Civ. P. 56 ..........................................................................................................................15

**Miscellaneous:**

Nash, Ralph Jr. and Feldman, Steven W.,
    Government Contract Changes, Third Edition, (Thompson West 2007) ...........................8

Restatement (Second) of Torts § 538 (1977) ...........................................................................25-26

I.      **INTRODUCTION**

Much ink has been spilled in this case.  Reading the highly technical pleadings, one might think this to be a technical case.  But it is not.  Rather, the case before the Court is relatively simple.

Relator's claims can be distilled into two distinct categories.  First, Relator claims that TTGI violated the False Claims Act ("FCA") by proceeding with the creation of Technical Manuals for the 910 MCV-Mine Clearing System under Task Order 10 of its contract with the Army without a government-furnished technical data package ("TDP").  Secondly, Relator contends that TTGI violated the FCA because of certain alleged deviations between the final version of the Operator's Manual and certain military standards and Army regulations referenced in the subject contract.  Neither set of claims has any merit.

The Court has likely seen the preceding sentence written in many briefs.  But this case is different because it is not just the defendants making that argument.  **Here, the government contracting officer's representative ("COR")—*i.e.*, the person responsible for overseeing the contractor's performance and for approving its invoices—has submitted a declaration supporting the Defendants.**  That declaration confirms that although the government indicated that it intended to provide the contractors with a TDP for use in developing the manuals, it did not do so, it knew that it did not do so, and it nevertheless instructed the contractors to proceed with performance.  The declaration further confirms that any deviations with military standards and/or Army regulations were approved by or done at the direction of the Army.  That declaration presents an insurmountable hurdle for Relator.

Relator has failed to establish **any** element of a FCA claim.  In fact, Relator barely conducted discovery, deposing no one and issuing only minimal document requests.  In his own

summary judgment motion, Relator referred to not a single document produced by any of the defendants.  Instead, Relator relies on the allegations in his First Amended Complaint ("FAC") and the attachments thereto.  Put simply, Relator cannot, based on his FAC alone, meet his burden to establish any FCA violation.

Foremost, as TTGI argued in its motions to dismiss, Relator cannot even establish the existence of a false statement or claim.  Since that time, Relator has conceded that TTGI made no express false certifications, and he now relies solely on an implied certification theory that is not even raised in his FAC.  Even if he could raise a claim here that was not raised in his complaint—he cannot—he has failed entirely to pass the high bar for implied certifications recently established by the Fourth Circuit.

And even if he could pass that bar, he must prove that the statement or claim was made with the requisite scienter.  Here, as demonstrated by Relator's own summary judgment motion, Relator has presented **no evidence of scienter whatsoever**.  And the COR has negated even Relator's speculation of scienter by testifying that the government instructed contractors to proceed without the TDP.  The same declaration establishes that the potential variances about which Relator complains were approved and/or directed by the government.

Relator hopes that the Court will presume scienter, as he has, when the opposite is the only conclusion supported by the record.  The contractors, including TTGI, followed the government's instructions.  Following the government's instructions cannot constitute the "guilty mind" required to establish liability under the FCA.

Similarly, Relator cannot establish materiality.  The COR has testified that he approved TTGI's invoices.  He approved those invoices knowing that performance had commenced without the TDP, and being fully aware of the potential variances in the final version of the

2

**A102**

Operator's Manual, about which Relator complains.  Relator cannot overcome that testimony. The undisputed facts establish that it was TTGI which was motivated to take action at the government's direction, and not the government taking action because of a false statement by TTGI.

In addition, Relator has failed to prove that the government suffered any damages. Relator has not made any attempt to show what additional amount the government paid because of the alleged false statements.  Indeed, all evidence in the record demonstrates that the government is entirely satisfied with TTGI's performance and has received everything owed to it to date.

At most, Searle has proven that the contractors' actions differed from his interpretation of the subject contract.  This case demonstrates the precise abuse about which the United States Court of Appeals for the Fourth Circuit warned when authorizing implied certification claims, which is the sole basis of Relator's claims.  As shown below, the Court must put an end to this abuse, and enter judgment in favor of TTGI.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.   History and Nature of the Contract.

1.   On February 12, 2009, contract number W56HZV-09-A-A902 (the "Contract") was awarded to DRS Technical Services, Inc. ("DRS TSI").  Declaration of Travis Christner, Exhibit A to TTGI's Cross-Motion for Summary Judgment ("Christner Decl.") ¶ 3.  The Contract was a Blanket Purchase Agreement, or BPA.  Christner Decl. ¶ 3.

2.   On August 26, 2011, Task Order 10 under the Contract was awarded to DRS TSI. Christner Decl. ¶ 3.  Task Order 10 is the pertinent task order in this case, and was awarded on a fixed price level of effort basis.  Dkt 47 # 1.  Task Order 10 had a base year-period of

performance from August 26, 2011 through August 25, 2012, and gave the Army the ability to exercise an option for Option Year 1, that would extend the period of performance for up to August 25, 2013.  Christner Decl. ¶ 8; Dkt 47 # 1 at 13, 15.

3.      Through a series of novation agreements, Task Order 10 was novated from DRS TSI to Defendant DRS C3 & Aviation Company ("DRS C3," and together with DRS TSI, "DRS Defendants") and, ultimately, on September 25, 2012, to TTGI.  Christner Decl. ¶ 4.

4.      Task Order 10 required the contractor to create and deliver to the Army's Tank and Automotive Command ("TACOM") Technical Manuals for the 910 MCV-Mine Clearing System, also known as the 910 MCV 2, Medium Flail Area Mine Clearance System (the "Mine Sweep Vehicle").  Christner Decl. ¶ 5; Declaration of Mark Miller, Exhibit B to TTGI's Cross-Motion for Summary Judgment ("Miller Decl.") ¶ 4; Dkt 47 # 1 at 28.

5.      Those manuals were the (1) TM 9-2355-407-10, Operator Manual; (2) TM 9-2355-407-23 RP, Field Maintenance Manual Repair Parts and Special Tools List; and (3) NMWR 9-2355-407, National Maintenance Work Requirements (each a "manual" and collectively, the "manuals").  See Dkt 47 #1 at 28, 1.0; Christner Decl. ¶ 5.

6.      Task Order 10 contained a Performance Work Statement ("PWS") which indicated that the manuals to be produced were to "enable military field users to support their equipment with current parts information for provisioning, and updated procedures for maintenance and overhaul" of the Mine Sweep Vehicle.  Dkt 47 #1 at 28, 1.0.1.  Task Order 10 also indicated that the government intended to provide the contractor with certain information, known as Government Furnished Information ("GFI"), to enable it to create the manuals.  Christner Decl. ¶ 6; Miller Decl. ¶ 8; Dkt 47 # 1 at 31.  As originally drafted, Task Order 10 indicated that the expected GFI would include a TDP from the original equipment manufacturer

("OEM"), engineering drawings, and commercial-off-the-shelf manuals.  Miller Decl. ¶ 8; see

Dkt 47 #1 at 31, Part 2.  The government also intended to provide the contractor with at least one

Mine Sweep Vehicle, to be located at the contractor's facility.  Id. at 2.2.1; Christner Decl. ¶ 6;

Miller Decl. ¶ 8.

       7.       The U.S. Army creates a Logistics Support Analysis Record (LSAR) for major

equipment and systems, such as the Mine Sweep Vehicle.  Christner Decl. ¶ 35; Miller Decl. ¶ 9.

The LSAR is a Logistics Engineering tool and is populated with various logistical data.

Christner Decl. ¶ 35; Miller Decl. ¶ 9.  The logistical data will include all of the data associated

with both corrective and preventive maintenance tasks.  Christner Decl. ¶ 35; Miller Decl. ¶ 9.

The items required to support each maintenance task will also be identified.  Christner Decl. ¶

35; Miller Decl. ¶ 9.  This would normally include spare parts, tools, support equipment

(standard and special), and personnel.  Christner Decl. ¶ 35; Miller Decl. ¶ 9.  One of the

components of the LSAR is the Provisioning Requirements which are referred to as an LSA 036

report.  Christner Decl. ¶ 35; Miller Decl. ¶ 9.  The LSA 036 report is a database which is

updated to reflect what items are currently available to the Army to be procured.  Christner Decl.

¶ 35; Miller Decl. ¶ 9.  The LSA 036 report was also provided to the contractors pursuant to Task

Order 10.  Christner Decl. ¶ 35; Miller Decl. ¶ 9.

       8.       TACOM did not receive the TDP from the OEM.  Christner Decl. ¶ 10.

Therefore, TACOM did not provide the contractors with a TDP for the Mine Sweep Vehicle.

See Miller Decl. ¶ 10.

       9.       On December 17, 2012, the Contracting Officer's Representative prepared

changes to the Contract Data Requirements List ("CDRL").  Christner Decl. ¶ 9.  Among other

things, these changes impacted the timing of the delivery of PTM #3 of the Operator Manual, the

government's comments, the resubmission of the PTM, and the government's request for a FRC. Id.  These changes also impacted the timing of delivery of seven PTMs and a final FRC for each of the Field Maintenance Manual, TM 9-2355-407-23, and the Field Maintenance Repair Parts and Special Tools List, TM 9-2355-407-23P.  Id.

10.     On December 19, 2012, the Army approved a Limited Source Justification ("LSJ") authorizing it to use an exception to the fair opportunity process then in effect at the contracting command.  Christner Decl. ¶ 10; Dkt 47 # 6.  By the exception, the Army would modify Task Order 10 by extending the period of performance, increasing the contract value, and restructuring Task Order 10 from a fixed price level of effort contract to a firm fixed price contract.  Christner Decl. ¶ 10; Dkt 47 # 6 at 1.  The LSJ stated that the government had been unable to buy the TDP from the OEM, and although the contractor, TTGI, had been working with the OEM, the government could not obtain from the OEM its proprietary data.  Christner Decl. ¶ 10; Dkt 47 # 6 at 3.  The LSJ further stated that vehicle characteristics, unknown to the government at the time of the award, caused the government to realize that its original estimate of the hours to perform technical manual development was extremely low.  Christner Decl. ¶ 10; Dkt 47 # 6 at 3.

11.     On April 23, 2013, the Army awarded to TTGI Modification 08 to Task Order 10. Christner Decl. ¶ 11.  Among other things, this modification converted Task Order 10 to a firm fixed price contract, increased the value of the Task Order, and extended the period of performance from April 22, 2013 through December 31, 2015.  Id.; Dkt 47 # 1 at 8. Modification 08 also revised Task Order 10's performance work statement.  Dkt 47 # 1 at 8.  The revisions required the contractor, TTGI, to use "commercial off-the-shelf manuals produced by the [OEM] as source data" in order to create and deliver the following Technical Manuals:  (1)

TM 9-2355-407-10, Operator Manual; (2) TM 9-2355-407-23, Field Maintenance Manual; and

(3) TM 9-2355-407-23P, Field Maintenance Repair Parts and Special Tools List.  Christner Decl.

¶ 11; see Miller Decl. ¶ 13; Dkt 47 # 1 at 34.  No longer was the contractor required to create and

deliver the Technical Manual NMWR 9-2325-407.  Christner Decl. ¶ 11

12.     Modification 08 to Task Order 10 also removed the requirement that TACOM

provide the TDP to the contractor.  Christner Decl. ¶ 21; Miller Decl. ¶ 10; Dkt 47 # 1 at 37.  At

no point did Task Order 10 require the contractor to rely on the TDP in order to produce the

Technical Manuals.  Christner Decl. ¶ 20; Miller Decl. ¶ 10.  The government was always aware

that the contractors did not possess the TDP.  Christner Decl. ¶ 21; Miller Decl. ¶ 12.

13.     TACOM provided TTGI with three primary sources of information to create the

Manuals: commercial manuals from the OEM for the Mine Sweep Vehicle, including electrical

and hydraulic engineering drawings related to the Mine Sweep Vehicle; the LSAR; and two of

the Mine Sweep Vehicles for use at the contractor's facility.  Christner Decl. ¶¶ 12, 19, 35;

Miller Decl. ¶ 11.  These sources of information are sufficient to create the Technical Manuals.

Christner Decl. ¶ 20-21; Miller Decl. ¶ 11.  The TDP was not needed to create the Technical

Manuals.  Christner Decl. ¶ 20; Miller Decl. ¶ 11.

14.     TACOM was aware that TTGI did not possess the TDP.  Christner Decl. ¶ 21;

Miller Decl. ¶ 12.  Although Task Order 10 required monthly meetings between TTGI and

TACOM, TACOM insisted that those meetings occur more frequently, and were regularly held

on a weekly basis.  Miller Decl. ¶ 12.  During these meetings, TTGI and TACOM discussed the

fact that TTGI did not possess the TDP, and the ways in which TTGI would perform the contract

requirements without the TDP.  Id.  TACOM instructed TTGI to perform under Task Order 10,

notwithstanding the fact that it did not have (and did not need) the TDP.  Id.

15.     The Contract required TTGI to proceed notwithstanding the absence of the TDP. See Dkt 47-1 at 49 (incorporating FAR 52.243-1 *Changes – Fixed Price*, which requires contractors to proceed notwithstanding disputes). See also 48 C.F.R. § 52.243-1(e).[1]

**B.     Manual Drafting Process**

16.     Task Order 10, in accordance with the CDRL, required the contractor to submit Preliminary Technical Manuals ("PTMs"), and after verification by the Army, a Final Reproducible Copy ("FRC") for each of the required manuals.  Christner Decl. ¶ 7; see Miller Decl. ¶ 15.

17.     The process for the creation of the FRC for each of the manuals is iterative in nature.  Christner Decl. ¶ 15; Miller Decl. ¶ 15.  The contractor was required to deliver PTM # 1 for each manual.  Christner Decl. ¶ 15; Miller Decl. ¶ 15.  After the contractor delivered the PTMs, the PTMs were reviewed by a number of government agencies, including:

(a)     TACOM LCMC;

(b)     The United States Army Training and Doctrine Command ("TRADOC").  Among other things, TRADOC develops and designs training and training doctrine for the United States Army.

---

[1] Strangely, the Contract did not include the standard Disputes Clause.  However, the Contract Disputes Act applies to the Contract.  See 41 U.S.C. § 7102.  Thus, the Contract should be read as including the standard Disputes Clause.  See, e.g., Todd Constr., L.P. v. United States, 94 Fed. Cl. 100 (2010) ("The notion that certain legal mandates are treated as part of the contract ultimately became known as the Christian doctrine, named after G.L. Christian & Assocs. v. United States, 160 Ct. Cl. 1, 312 F.2d 418, 424–26 (1963), motion for rehearing denied, 160 Ct. Cl. 58, 320 F.2d 345 (1963).")  The standard Disputes Clause likewise imposes upon the contractor a duty to proceed, notwithstanding any disputes with the government.  Nash, Ralph Jr. and Feldman, Steven W., Government Contract Changes, Third Edition, § 6.1 (Thompson West 2007), 48 C.F.R. § 52.233-1.

(c)      The United States Army Combined Arms Support Command ("CASCOM").

CASCOM develops and provides training courses to military personnel, and is a

subordinate element of TRADOC.

(d)      The Maneuvers Support Center of Excellence ("MSCOE").  MSCOE, also a

subordinate element of TRADOC, is responsible for development of Doctrine & Training

Tactics ("DTT") that are focused on Operator "-10" level manuals and training specific to

each unique piece of equipment.  MSCOE is the authoritative agency that directs the

MOS 12B skill set.  Therefore, MSCOE can deviate from the guidelines in a MIL-STD.

Army Regulation ("AR") 750-1 permits an operator to perform the tasks ascribed to them

in the FRC of the Operator Manual for the 910 MCV-Area Mine Clearing System.

Christner Decl. ¶ 15; see Miller Decl. ¶ 15.

18.      Ultimately, the government is responsible for verification of the manuals to assure

accuracy and usability by U.S. Army Soldiers.  Miller Decl. ¶ 16; see Christner Decl. ¶ 17.

"Usability" as determined and verified by the US Army, rather than strict adherence to MIL-STD

45001-2, is the required standard under Task Order 10.  Miller Decl. ¶ 16.

19.      TACOM LCMC solicits input from each of the above entities as to the PTMs.

Christner Decl. ¶ 16; Miller Decl. ¶ 17.  After the review is completed, TACOM LCMC provides

the contractor with a mark-up version.  Christner Decl. ¶ 16; Miller Decl. ¶ 17.  The mark-up

included changes to the PTM iteration at the government's direction.  Christner Decl. ¶ 16;

Miller Decl. ¶ 17.  Where no change was suggested, the government found the content of the

PTM to be acceptable, in accordance with the requirements of Task Order 10, and consistent

with the training doctrine that the government wanted to employ.  Christner Decl. ¶ 16; Miller

Decl. ¶ 17.  In other words, after PTM #1 (i.e., the initial PTM), all changes were made at the

express direction of the government.  Christner Decl. ¶ 16; Miller Decl. ¶ 17.  Thus, the FRC for

each manual will have been reviewed, on multiple levels, by multiple governmental agencies,

and confirmed to be consistent with contract requirements, the training doctrine that the

government wishes to employ, and all other government requirements.  Christner Decl. ¶ 17.

20.     In the case of the Operators Manual, Task Order 10 required three rounds of

revisions before the FRC was produced.  Christner Decl. ¶ 17; Miller Decl. ¶ 18.  For the Field

Maintenance Manual Repair Parts and Special Tools, Task Order 10 required seven rounds of

revisions before the FRC is produced.  Christner Decl. ¶ 17; Miller Decl. ¶ 18.  Once the

contractor completes this revision process, TACOM LCMC approves the technical manual and

formally requests the FRC.  Christner Decl. ¶ 17; Miller Decl. ¶ 18.

21.     The contractor was required to provide a validation certificate for PTM #1 for

each Technical Manual, but not for subsequent PTMs or the FRC.  Miller Decl. ¶ 19.  TTGI

provided the required validation certificates for PTM #1 of each Technical Manual.  Christner

Decl. ¶ 22; Miller Decl. ¶ 19.

22.     The Operator Manual has been completed, the government has requested the FRC

of the Operator Manual, and TTGI delivered the FRC for the Operator Manual on September 26,

2013.  Miller Decl. ¶ 22.  The government has reviewed and approved same, and has published

the Operator Manual.  Id.  To date, the FRC for the Operators Manual is the only FRC that has

been completed and accepted by TACOM.  Miller Decl. ¶ 19.

**C.     Work Package 0103**

23.     MIL-STD-40051 establishes the technical content, style and format guidelines for

the preparation of Technical Manuals.  Christner Decl. ¶ 30; Miller Decl. ¶ 23.  And it is

important to note that military standards are generally viewed as guidelines, not rigid

requirements. Miller Decl. ¶ 23. MIL-STD-40051 has been revised several times. Christner Decl. ¶ 30; Miller Decl. ¶ 24. Task Order 10 originally required that the contractors reference MIL-STD-40051-2A in order to create the manuals. Christner Decl. ¶ 30; Miller Decl. ¶ 24. Modification 2 of Task Order 10 changed that and required that the contractors reference MIL-STD-40051-2 with Change 3. Christner Decl. ¶ 30; Miller Decl. ¶ 24.

24.     MIL-STD-40051-2A required that a "-10" manual, such as the Operator Manual, include a work package titled "Service Upon Receipt." Miller Decl. ¶ 25. MIL-STD-40051-2 with Change 3 prohibits a work package titled "Service Upon Receipt." Miller Decl. ¶ 25.

25.     At the time that Task Order 10 incorporated MIL-STD-4051-2A, the contractors produced a work package titled "Service Upon Receipt" as part of the Operator PTM #1. Miller Decl. ¶ 26. Despite the modification to Task Order 10 regarding the applicable version of MIL-STD-40051, TACOM directed TTGI to create such a work package and include it in the Operator Manual. See Christner Decl. ¶ 31; Miller Decl. ¶ 26. In accordance with such instruction, TTGI included Work Package 0103 titled "Service Upon Receipt" in the Operator PTM. Miller Decl. ¶ 26. Throughout the review process described above, the Operator PTM included a work package titled "Service Upon Receipt," and TACOM and the other government agencies described above approved of the inclusion of said work package. See id.

**D.     General Purpose Gloves and Gasket**

26.     The gasket listed in the FRC of the Operator Manual was listed in error. Christner Decl. ¶ 35; Miller Decl. ¶ 28. Any inaccuracy was not the fault of the contractors, and has since been corrected by the government. Christner Decl. ¶ 35; see Miller Decl. ¶ 28.

27.     The data that was provided to the contractors contains an entry for general purpose gloves under NSN 8415-01-136-0078. Christner Decl. ¶ 37; Miller Decl. ¶ 29. TTGI

notified TACOM that the general purpose gloves in the data provided by TACOM were no longer available.  Christner Decl. ¶ 37; Miller Decl. ¶ 29.  Based on TTGI's input, TACOM updated the information.  Christner Decl. ¶ 37; Miller Decl. ¶ 29.  When TACOM approved the Operator Manual and requested that TTGI produce the FRC, the Operator Manual contained a reference to general purpose gloves that were procurable.  Christner Decl. ¶ 37; Miller Decl. ¶ 29.[2]

### E.   Trouble Shooting Instructions

28.   Paragraphs 77 through 96 of the FAC allege that the Operator Manual incorrectly applies MIL-STD 40051-2 by providing incorrect troubleshooting procedures or by allowing vehicle operators to make certain repairs to the Mine Sweep Vehicle.  Christner Decl. ¶ 32; see Miller Decl. ¶ 30.  To the extent that the FRC of the Operator Technical Manual contains any variations from MIL-STD-40051-2A, or any other purported requirement, those variations have been approved by MSCOE and executed (sometimes even directed) by TACOM.  Christner Decl. ¶ 32; see Miller Decl. ¶ 30.

29.   Paragraphs 97 through 112 of the FAC allege that the Operator Manual incorrectly applies MIL-STD 40051-2 by stating that vehicle operators could change a fuse on the Mine Sweep Vehicle.  Christner Decl. ¶ 33; see Miller Decl. ¶ 30.  To the extent that the FRC of the Operator Technical Manual contains any variations from MIL-STD-40051-2A, or any other purported requirement, those variations have been approved by MSCOE and executed (sometimes even directed) by TACOM.  Christner Decl. ¶ 33; see Miller Decl. ¶ 30.

---

[2] The Miller Decl. and the Christner Decl. provide that these gloves were listed in the LSA036 report.  As noted by Relator in his motion to strike the Miller Decl., the LSA036 Report does not contain a list of expendable/durable items, such as gloves.  The precise location of this list is not material to the parties' dispute.  That this information was provided to TTGI by the government - - which Relator does not dispute - - is the pertinent fact.

30.     Paragraphs 113 through 196 of the FAC allege that the Operator Manual incorrectly applies MIL-STD 40051-2 by stating that vehicle operators could make various repairs to the Mine Sweep Vehicle.  Christner Decl. ¶ 34; <u>see</u> Miller Decl. ¶ 30.  To the extent that the FRC of the Operator Manual contains any variations from MIL-STD-40051-2A, or any other purported requirement, those variations have been approved by MSCOE and executed (sometimes even directed) by TACOM.  Christner Decl. ¶ 34; <u>see</u> Miller Decl. ¶ 30.

31.     DRS TSI, DRS, C3A and TTGI have performed as required under the Contract and Task Order 10 (as modified).  Christner Decl. ¶ 39.  To the extent that Relator challenges what he perceives to be deviations from the PWS or other requirements, those deviations were knowingly and intentionally accepted by the government.  Christner Decl. ¶ 39.

**F.     Certifications**

32.     The COR was and remains responsible for reviewing all certifications provided by the contractors.  Christner Decl. ¶ 24.  With delivery of each PTM # 1, the contractor was required to and did provide a validation certificate.  Christner Decl. ¶ 24.  A true copy of the validation certificate provided by TTGI for PTM #1 of the Operator Manual (TM 9-2355-407-10) is attached as Exhibit 1 to the Christner Decl.  Christner Decl. ¶ 24; <u>see also</u> Miller Decl. ¶ 31 and Attachment 1.  A true copy of the validation certificate provided by TTGI for PTM #1 of the Maintenance Manual (TM 9-2355-407-23&P) is attached as Exhibit 2 to the Christner Decl. Christner Decl. ¶ 24; <u>see also</u> Miller Decl. ¶ 31 and Attachment 2.

33.     The COR reviewed and accepted the validation certificates referenced above. Christner Decl. ¶¶ 22, 24.

34.     None of the certifications Defendants submitted contained a "certification of the accuracy and completeness of work to TACOM, including conformity to all standards,

regulations and FARs (sic) [Federal Acquisition Regulation] in the PWS [Performance Work Statement," nor was such certification required.  Christner Decl. ¶ 23 (describing FAC ¶¶ 43, 51).

35.     None of the certifications Defendants submitted contained a "certification of compliance with Contract PWS, regulations, standards, and DFARS [Defense Federal Acquisition Regulation Supplement], as well as granting Government data rights," nor was such certification required.  Christner Decl. ¶ 26 (describing FAC ¶¶ 44, 52).

36.     Under Task Order 10, payment was first made on a fixed price level of effort basis, and after Modification 08, effective April 23, 2013, payment was made on a firm fixed price basis.  Christner Decl. ¶ 25.  These progress payments were made in full and would have been made irrespective of the content of the validation certificates referred to above.  Christner Decl. ¶ 25.

37.     Attached as collective Exhibit 4 to the Christner Decl. are true and accurate specimen copies of the invoices submitted by TTGI prior to Modification 08 (when Task Order 10 was being performed as a fixed-price level of effort contract).  Christner Decl. ¶ 27; see also Miller Decl. ¶ 32 and Attachment 3.  The COR approved those invoices for payment.  Christner Decl. ¶ 27.  At the time the COR did so, and at the time that the invoices were paid, the government was aware that the contractor did not have the TDP and of the processes being implemented to perform the requirements of Task Order 10 as modified.  Christner Decl. ¶ 27.

38.     Attached as collective Exhibit 5 to the Christner Decl. are true and accurate specimen copies of the invoices submitted by TTGI after Modification 08 (when Task Order 10 was being performed as a fixed-price contract).  Christner Decl. ¶ 28; see also Miller Decl. ¶ 33 and Attachment 4.  The COR approved those invoices for payment.  Christner Decl. ¶ 28.  At the time the COR did so, and at the time that the invoices were paid, the government was aware that

the contractor did not have the TDP and of the processes being implemented to perform the requirements of Task Order 10 as modified.  Christner Decl. ¶ 28.

39.     TTGI did not submit any certifications in connection with Task Order 10 other than those reflected on the exhibits to the Christner Decl. or the Miller Decl.  Miller Decl. ¶ 34.

40.     The only data provided by TTGI to the government with respect to the Technical Manuals was derived by TTGI from its reverse-engineering and "100% hands-on validation" of PTM#1, or otherwise available from commercial, off-the shelf manuals.  Miller Decl. ¶ 35. TTGI had all necessary rights to provide that information to the government, and did not violate Task Order 10 or any other requirement or regulation by doing so.  Id.

41.     TTGI had absolutely no intent to submit any false certification or claim of any type.  Miller Decl. ¶ 36.  To the contrary, TTGI has performed its obligations under Task Order 10 in good faith, and in compliance with the requirements of Task Order 10 (as modified) and the express direction it received from TACOM.  Id.  The FRC of the Operators Manual conformed to those requirements and directions, as will the FRC of the other Technical Manuals that will be provided to the government.  Id.

III.     **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  An otherwise properly supported summary judgment motion will not be defeated by the existence of a dispute as to immaterial facts; only disputes over facts that might affect the outcome of the trial will properly preclude the entry of summary

judgment.  Id. at 248.  "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case."  Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir.2002) (internal quotation marks omitted); Hoschar v. Appalachian Power Co., 739 F.3d 163, 169 (4th Cir. 2014).  Relator bears the initial burden of proof as to each and every element of his claims.  See United States ex rel. Berge v. Bd. of Trustees of the Univ. of Alabama, 104 F.3d 1453, 1462 (4th Cir. 1997).  As demonstrated herein, Relator has failed to meet its burden on any elements of its claims, and TTGI is entitled to judgment as a matter of law.  There exists no genuine dispute of material fact, and TTGI is entitled to judgment as a matter of law.

**IV.   ARGUMENT AND CITATION OF AUTHORITIES**

In this case, the relevant material facts are not in dispute, and TTGI respectfully requests that this Court determine as a matter of law that TTGI has not violated the FCA, nor conspired to violate the FCA.

**A.    TTGI Has Not Violated 31 U.S.C. § 3729(a)(1)(A)**

TTGI is entitled to summary judgment on Plaintiff's claims for violation of § 3729(a)(1)(A) (Counts I through VIII) because TTGI did not make any false statements, TTGI did not knowingly or recklessly deceive the government, and the defects alleged by Relator were not material to the government's payments to TTGI.  The elements of a claim under § 3729(a)(1)(A) are as follows:  (1) a false statement, (2) made with requisite scienter, (3) that is material, and (4) that results in a claim to the government.  United States v. Triple Canopy, Inc., 775 F.3d 628, 634 (4th Cir. 2015).  Plaintiff cannot demonstrate the elements of this claim.

1.      **TTGI Did Not Make Any False Statements**

i.      **Express Certification**

TTGI is entitled to judgment as a matter of law because Relator has not demonstrated that TTGI made a false statement, either express or implied.  It is axiomatic that a claim under the FCA must be predicated upon a false statement.  See Triple Canopy, 775 F.3d at 634; see also 31 U.S.C. § 3729(a)(1)(A).

The FAC purports to quote numerous express certifications that Relator contends to have been provided by TTGI.  (See e.g., Dkt 47 ¶¶ 43, 44, 51, 52.)  However, none of the certifications that Relator quotes, and upon which his claims are seemingly based, actually exist. See Christner Decl. ¶¶ 24, 27, 28; Miller Decl. ¶¶ 31-35.  Relator certainly cannot rely on express certifications that TTGI has not given to establish his claim.  See Christner Decl. ¶ 24, 27, 28; Ex. 1, 2, 4, 5 to Christner Decl.; Attachments 1 through 4 to Miller Decl.

TTGI has provided very few certifications related to its work on the contract.  First, TTGI provided a validation certificate for the first iteration (i.e., "PTM #1") of each of the Technical Manuals.  Miller Decl. ¶ 31.  TTGI has not certified any subsequent PTM or FRC, nor is it required to do so.  Miller Decl. ¶ 19.  TTGI also certified that the hours reflected on its invoices had actually been worked.  Ex. 4 and 5 to Christner Decl.; Attachments 3 and 4 to Miller Decl. There are no other express certifications by TTGI.  Christner Decl. ¶ 24, 27, 28; Miller Decl. ¶¶ 31, 34, 36.

The record contains no evidence or allegation whatsoever that any of the express certifications actually submitted by TTGI were false.  It is thus not surprising that, during his deposition, Relator conceded that his claims are not based on an express certification.  See Searle Dep. at 282-284 ("Q: Other than the presentment of work product for [Counts III – VIII], are

there other express certifications? A: Not express, no.").  Relator also admitted that his claims
are not based on preliminary technical manuals.  <u>See</u> Searle Dep. at 284 ("Q: Your claims, since
you haven't read those preliminary technical manuals, your claims are not based on those
manuals?  A: That's correct.").  Therefore, given the absence of evidence of falsity and Searle's
own testimony that his claim is not based on express certification, TTGI is entitled to judgment
as a matter of law as to any claims based on express certification.

### ii.        Implied Certification

In his Motion for Summary Judgment, Relator, for the first time, asserts that his case is
based on the theory of implied certification.[3]  Although recognized by the Fourth Circuit, the
theory of implied certification is "prone to abuse by parties seeking to turn the violation of minor
contractual provisions into an FCA action."  <u>Triple Canopy</u>, 775 F.3d at 637 (internal citations
omitted).  To protect against abuse, the Fourth Circuit held that an implied certification claim
requires proof that the contractor, **with the requisite scienter**, made a request for payment and
withheld information about its noncompliance **with material contract requirements**.  <u>Triple
Canopy, Inc.</u>, 775 F.3d at 636.  In other words, in an implied certification case, failing to meet a
contractual requirement is not sufficient to establish liability.  <u>Id.</u>  Relator must also allege a
fraudulent scheme involving withholding material information from the government.  <u>Id.</u>

The facts of <u>Triple Canopy</u> provide an example of a contractor withholding information
about noncompliance with material contract terms.  In <u>Triple Canopy</u>, the contractor agreed to
provide security services for the U.S. Army at an airbase in Iraq.  <u>Id.</u> at 632.  The contract
required that the members of the security detail satisfy a marksmanship requirement and
maintain scorecards in their personnel files.  The guards, however, could not pass the

---

[3] As discussed in TTGI's Opposition to Relator's Motion for Summary Judgment, Relator should
not be allowed to proceed on a legal theory that was not presented in his FAC.  Dkt. 96 at 19.

marksmanship requirement, a fact that was known to the contractor.  Id.  In order to cover up the

fact that "the guards could not . . . shoot straight," supervisors of the contractor directed that false

scorecards be placed in their personnel files.  Id. at 632, 638. The false scorecards were post-

dated and contained inflated scores on the guards' marksmanship tests.  Id.  Based on these facts,

the Fourth Circuit concluded that:

> "[T]he Government has sufficiently alleged a false claim . . . The complaint
> contains an abundance of allegations that Triple Canopy did not satisfy this
> requirement and, instead, undertook a fraudulent scheme that included falsifying
> records to obscure its failure. The Government's complaint also properly alleges
> that Triple Canopy's supervisors had actual knowledge of the Ugandan guards'
> failure to satisfy the marksmanship requirement and ordered the scorecards'
> falsification."

Id. at 637.

This case is nothing like Triple Canopy.  In fact, this case is an example of the types of

abuse that the Fourth Circuit warned about if implied certification claims are not strictly

construed.  The facts here do not contain any allegation of a fraudulent scheme.  Relator asserts

numerous alleged deficiencies that, in theory, might give rise to a contract dispute,[4] but he does

not allege any facts related to a fraudulent scheme, a cover up, or falsified records.  Generally,

Relator alleges that TTGI breached the contract in two ways: (1) TTGI commenced performance

without the TDP; and (2) certain terms of the FRC of the Operator Manual potentially varied

from certain military standards specified in Task Order 10.  Relator cannot point to any

admissible evidence to show that TTGI "withheld information about its noncompliance" from

TACOM.  Triple Canopy, 775 F.3d at 636.

_____

[4] TTGI absolutely denies that it breached the contract in any way.  First, military standards are
used to obtain standardization objectives.  Military standards are generally viewed as guidelines
and not rigid requirements.  Miller Decl. ¶ 23.  Second, Task Order 10 expressly contemplated
that "usability" as determined by the U.S. Army would be the ultimate standard.  TTGI delivered
what TACOM requested, thereby meeting the usability standard.  Finally, the Army accepted—
and indeed directed—TTGI's performance.  Thus, there is no evidence of any breach.

First, the undisputed evidence in the record establishes that the government knew that the contractors did not possess the TDP, yet instructed the contractors to proceed with performance. See Miller Decl. ¶ 12; Christner Decl. ¶ 21.  Relator even conceded that point.  See Dkt. 47 #6 at 2-3 (sole source justification in which TACOM states that it knew TTGI did not have the TDP); Searle Dep. at 177-178, 288-289 (agreeing that TACOM knew TTGI did not have the TDP). The government ultimately modified Task Order 10 to account for the TDP's absence.  Miller Decl. ¶ 13; Christner Decl. ¶ 19; see also Searle Dep. at 288-289.  Obviously, information known to the government cannot be said to have been withheld by the contractor.  And there can be no liability under the FCA when the alleged noncompliance was known to the government.  See United States ex rel. Ubl v. IIF Data Solutions, 650 F.3d 445, 452-53 (4th Cir. 2011); United States v. Prabhu, 442 F. Supp. 2d 1008, 1029 (D. Nev. 2006) ("[A] Defendant does not knowingly submit false claims when he follows Government instructions regarding the claims."); see also Dkt 47-6, at 3 ("The Government does not have the opportunity to purchase all of the necessary engineering and technical data from the OEM, Hydrema, to support the AMCS vehicle TM development.").

Secondly, the potential variance between the FRC of the Operator Manual and the military standards specified by Task Order 10 likewise do not constitute a false statement under an implied certification theory.  TTGI's evidence on this point establishes that any variances from specified military standards contained in the FRC were approved and often directed by TACOM.  Christner Decl. ¶¶ 32-35; Miller Decl. ¶¶ 26, 30.  Those variances were studied by various agencies, including TRADOC, and determined to be consistent with U.S. Army training doctrine.  Christner Decl. ¶ 15; Miller Decl. ¶ 15.  Following government instructions cannot constitute a false claim.

20

**A120**

Relator also complains about the inclusion of a reference to a gasket that is not procurable.  Dkt 92 at 23.  The gasket listed in the FRC of the Operator Manual was listed in error.  Miller Decl. ¶ 27, 28; Christner Decl. ¶¶ 35-36.  The error was based on the fact that the U.S. Army provided TTGI with a version of the LSA 036 Report of procurable parts that incorrectly included an entry for gasket that was not procurable.  Christner Decl. ¶¶ 35-36.  TTGI relied on the version of the LSA 036 Report that was provided to it by the U.S. Army.  Miller Decl. ¶ 27, 28; Christner Decl. ¶¶ 35-36.  Relator cannot base False Claims Act liability on a contractor's reference to an NSN that was provided to the contractor by TACOM.  See United States ex rel. Ubl, 650 F.3d at 452-53.

Lastly, Relator complains about the reference to a certain pair of general purpose gloves which were specified in the LSA 036 Report provided by the government.  Dkt 92 at 24.  TTGI made TACOM aware of the fact that the specified gloves were not available, and the data was updated.  Miller Decl. ¶ 29; Christner Decl. ¶ 37.  Again, TTGI's reference to gloves that were specified by the government cannot serve to impose liability under the FCA

The facts of this case do not an implied certification claim make.  There is no evidence of noncompliance, much less evidence that TTGI withheld that fact from the government.  The only evidence demonstrates that the government was aware of, and even directed, the very issues about which Relator complains.

This is precisely the type of case the Fourth Circuit had in mind when it stated, "the purposes of the FCA [are] not served by imposing liability on honest disagreements, routine adjustments and corrections, and sincere and comparatively minor oversights, particularly when the party invoking [the FCA] is an uninjured third party." Triple Canopy, 775 F.3d at 635.  At best, Relator, an uninjured third party, has not alleged anything beyond honest disagreements and

sincere and minor oversights.  Accordingly, TTGI's Motion of Summary Judgment should be granted.

### 2.      TTGI Acted In Good Faith

In order to show scienter, Relator must prove that the contractor made a false statement knowingly, with deliberate ignorance, or in reckless disregard for the truth.  United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 728 (4th Cir. 2010).  The FCA, however, is not designed to "punish honest mistakes or incorrect claims submitted through mere negligence." Id. at 728.  The FCA is a fraud prevention statute.  It does not allow a qui tam relator to "shoehorn what is, in essence, a breach of contract action into a claim that is cognizable under the False Claims Act."  United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 373 (4th Cir.2008); Owens, 612 F.3d at 728-729.

The Fourth Circuit has recognized that FCA liability must be limited to those instances that truly concern fraud, else government contractors acting in good faith would be rightly dubious about working with the government.  See Owens, 612 F.3d at 729.  Applying FCA liability to routine contract disputes "would burden, not help the contracting process, thereby driving up costs for the government and, by extension, the American public." Id.  Therefore, the Fourth Circuit has held that, "[t]o support an FCA claim, there needs to be something more than the usual back-and-forth communication between the government and the contractor over this or that []defect and this or that corrective measure. Such altogether routine dialogue is a far cry from fraud." Owens, 612 F.3d at 729.

Moreover, as discussed supra in Part IV.A.2., Relator is proceeding on the theory of implied certification, which the Fourth Circuit has recognized to be a fertile ground for abuse by plaintiffs who attempt to turn mere variances with the contract into fraudulent schemes under the

FCA.  Triple Canopy, 775 F.3d at 637.  As a result, the Fourth Circuit held that courts must

require "strict enforcement of the Act's materiality and scienter requirements" in order to protect

contractors from being subjected to FCA liability for every alleged contract breach.  Id. (noting

that the plaintiff established scienter and materiality because the defendant "orchestrated a

scheme to falsify records and engaged in a cover up.").

The facts of Owens provide a good example of the type of routine deviations from a

contract that do not amount to fraud.  In Owens, the contractor agreed to build the U.S. embassy

in Baghdad, and the Relator alleged numerous deficiencies in the construction of the embassy.

Owens, 612 F.3d at 727-728.  For example, the Relator alleged that the contractor's concrete

work was substandard and needed to be repaired.  The Fourth Circuit, however, recognized that

any problems with the concrete were to be expected on such a contract and did not involve any

indication of fraud.  Id. at 729 ("It would be remarkable if, on a project of this magnitude and

scale, there were not some issues that quality control personnel would want to bring to

supervisors' attention. That is after all what a quality control department exists to do.").  The

relator also argued that the contractor violated the contract by using the wrong size rebar in its

concrete.  The Fourth Circuit held that disputes over the size of rebar were at best contract

claims, not false claims, because the relator had no evidence that the contractor had misled the

government.  Id. at 730 ("What [relator's] allegations do not raise is an issue of triable fact on the

possibility that [the contractor] somehow dissembled in billing for its concrete work and

submitted actionable false claims.").  Id. at 730.

Lastly, Relator alleged that the contractor violated the contract by supplying substandard

security items, like metal detectors and security cameras, including products that were the wrong

brand or poor quality.  Id. at 731.  The contractor, however, offered uncontradicted evidence that

it had obtained permission from the government to provide the equipment that it did.  Id.

Because the contractor had informed the government of the alleged deviations from the contract,

the Fourth Circuit held that the evidence failed to show that the contractor had the necessary

scienter.  Id.  ("Moreover, given the absence of any showing of bad faith on First Kuwaiti's part,

there is no basis to conclude that those invoices were knowingly false.").

      Relator has failed to offer **any** evidence that TTGI engaged in fraud or otherwise had the

requisite scienter to falsely bill the government.  Indeed, the case is directly analogous to Owens.

As explained above, the government was aware that the TDP was not available to the

contractors, and instructed them to proceed without the TDP.  See Dkt 47 #1 at 37; Dkt 47 #6 at

2-4; Miller Decl. ¶¶ 12-13; Christner Decl. ¶¶ 19, 21; Searle Dep. at 177-178, 288-289.  The

government modified Task Order 10 to be consistent with that instruction, and did so before the

FRC of the Operator Manual was provided.  Dkt 41 #1 at 34; Miller Decl. ¶ 21.  TTGI followed

the government's directives, and its doing so cannot be said to have been evidence of scienter.

See Owens, 612 F.3d at 734-35; United States ex rel. Ubl, 650 F.3d at 452.

      Similarly, the potential variances between certain military standards and the FRC of the

Operator Manual were approved and/or directed by the government.  Miller Decl. ¶ 26; Christner

Decl. ¶¶ 32-34; see also Searle Dep. at 280-282 (Searle did not work on the Operator Manual and

did not have personal knowledge of the verification process with the U.S. Army.).  The FRC was

a product of the collaborative efforts of TTGI, TACOM and other government agencies.  Even if

one were to question those variances, there is no evidence that TTGI acted other than in good

faith and with government approval/direction.  The issues regarding the gloves and gaskets were,

at most, good faith mistakes, which have been corrected.

Relator's purported evidence on scienter makes it clear that his allegations are at best related to a breach of contract. His purported evidence essentially consists of the contract and the finished product: the FRC for the Operator Manual. He combed through the Operator Manual—which he unlawfully required—and asserts that any defects he claims to have found are the result of fraud. He does not point to any of the usual evidence of fraud, such as falsified documents or depositions of employees of the contractor or government officials that would indicate a cover up or a fraudulent scheme. He does not point to any evidence that the alleged defects were the result of something more than negligence. If every potential defect in a contract gave rise to FCA liability, as Relator suggests, the government contracting process would be severely hampered and honest contractors would be reluctant to work with the government. See Owens, 612 F.3d at 729. As the Fourth Circuit has made clear, that is not the law. Relators must prove more than negligence. Id. Here, Relator has not even proven negligence, much less scienter. Thus, TTGI is entitled to summary judgment.

### 3.      Relator Cannot Show Materiality

The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4); see also Triple Canopy, 775 F.3d at 639. The United States Supreme Court has defined "materiality" as "[having] a natural tendency to influence, or [being] capable of influencing, the decision of the decisionmaking body to which it was addressed." Kungys v. United States, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546, 99 L. Ed. 2d 839 (1988). The Supreme Court subsequently elaborated on that definition, citing to the Restatement (Second) of Torts, which provides that a matter is "material" if:  (a) a reasonable man would attach importance to [the matter's] existence or nonexistence in determining his choice of action in the transaction in

question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.  Neder v. United States, 527 U.S. 1, 22, 119 S. Ct. 1827, 1840, 144 L. Ed. 2d 35 (1999); Restatement (Second) of Torts § 538 (1977).

Certainly, the alleged false express certifications described in the FAC were not material to the government, because they were never provided.  Miller Decl. ¶ 34; Christner Decl. ¶¶ 23, 26.  Because those certifications were not provided, they cannot be said to have influenced any decision by the government, or to have otherwise have been material in any way.  They simply do not exist.

With respect to the new-found notion of an implied certification, all of the information which Relator contends to have been false was known to the government.  The government knew that TTGI did not have the TDP, yet directed TTGI to commence performance under Task Order 10.  Miller Decl. ¶ 12; Christner Decl. ¶¶ 19, 21; see also Searle Dep. at 177-178, 288-289 (agreeing that TACOM knew TTGI did not have the TDP).  The government knew that portions of the FRC of the Operator Manual potentially varied from certain military standards, and approved or directed those variances.  See Miller Decl. ¶ 26; Christner Decl. ¶¶ 31-34; see also Searle Dep. at 280-282 (Searle did not work on the Operator Manual and did not have personal knowledge of the verification process with the U.S. Army.).  The government - - not TTGI - - specified the gaskets, gloves and other parts to be referenced in the manuals.  Miller Decl. ¶ 9; Christner Decl. ¶¶ 35-37.  TTGI informed the government that the gasket and gloves were unprocurable, and the government made the necessary corrections to its data.  Christner Decl. ¶¶ 35-37.  In sum, this information was known to the government.

Relator presumes, because he does not know, and certainly has not proven, that Task Order 10 could not be performed without the TDP.  See Searle Dep. at 291.  But the uncontroverted evidence before the Court indicates that Task Order 10 was performed, with the government's knowledge and express direction.  See Searle Dep. at 177-178, 288-289; Dkt 47-6 at 3 ("The ability of the Government to obtain or provide proprietary data from the OEM is severely limited, making it critical to have the knowledge TTGI contributed to the MAC, MA, and hydraulic and wiring schematics for the TM development in working with the OEM").  Relator likewise presumes, because he does not know, and certainly cannot prove, that the potential variances between portions of the FRC of the Operator Manual and various military standards in Task Order 10 render false any certification (express or implied) given by TTGI.  Searle Dep. at 280-282.  But the uncontroverted evidence in the record demonstrates that the government approved and/or directed those variances.  Relator also presumes, because he does not know and cannot prove, that TTGI's references to unprocurable gloves and a gasket in the FRC of the Operator Manual exposes it to liability under the False Claims Act.  Id.  But those references were specified in the data provided to TTGI.  Any mistake connected with those references has since been corrected.

In order to show materiality, Relator would have to show that the government's decision to provide payment to TTGI would have been influenced by these alleged defects.  In other words, Relator would have to show that if the government knew about these defects, it would not have paid TTGI.  The uncontroverted record establishes that is not the case:  for every alleged deficiency complained of by Relator, TACOM either knew about it or, with respect to the NSN numbers, provided TTGI with inaccurate information.

### 4.        Relator Has Not Shown That the U.S. Army Suffered Damages

Relator also bears the burden of proving that the government was damaged by the false

claims he alleges.  See 31 U.S.C. § 3731(c); United States ex rel. Harrison v. Westinghouse

Savannah River Co., 352 F.3d 908, 923 (4th Cir. 2003).  Under Fourth Circuit law, damages are

equal to the "amount of money the government paid by reason of the false statement above what

it would have paid absent the false statement."  Harrison, 352 F.3d at 922-923; see also 31

U.S.C. § 3729(a) (plaintiff is entitled to damages that the government sustains because of the

defendant).  The plaintiff must make a showing that the government did not "get what it paid

for" or that another contractor would have performed the contractor for less without the false

statements.  Harrison, 352 F.3d at 922-923.

Here, Relator contends that every reference within the Operator Manual to any alleged

deviation from a military standard requires disgorgement of the entire contract.  Searle Dep. at

273-75.  Such a calculation of damages was expressly rejected by the Fourth Circuit.  Harrison,

352 F.3d at 922-923.  Further, Relator has not made any attempt to show what additional amount

the government paid because of the alleged false statements.  In fact, with respect to the TDP, the

uncontroverted evidence shows that TACOM—knowing full well that TTGI did not have the

TDP—requested a sole source justification to expeditiously award the modified contract to

TTGI.  TACOM did so because only TTGI had the required engineering expertise to quickly

validate the manuals against the vehicle.  In other words, TACOM would have had to spend

more money, not less, had it been forced to use a contractor other than TTGI.  Under the

standard set forth in Harrison, Relator cannot point to any facts that support the argument that

TTGI submitted a false statement that somehow cost the government more money.  Thus there is

no evidence of harm, and TTGI is entitled to summary judgment.

**B.      TTGI Has Not Engaged in A Conspiracy Under 31 U.S.C. § 3729(a)(1)(C)**

Count IX of the FAC alleges a conspiracy between Defendants, and is predicated upon 31 U.S. C. § 3729(a)(1)(C).  In order to plead a claim under this section, Searle must allege: (1) the existence of an unlawful agreement among Defendants to get a false claim reimbursed by the Government; and (2) at least one act performed in furtherance of that agreement.  United States ex rel. DeCesare v. Americare In Home Nursing, 757 F. Supp. 2d 573, 584 (E.D. Va. 2010). Moreover, Searle must allege that Defendants agreed to use a false statement to reach their unlawful purpose.  Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662, 665 (2008).

The only "agreement" between TTGI and any other Defendant was the novation agreement, which was recognized by the government.  Dkt 92 #2.  There is no evidence whatsoever as to any other agreement between TTGI and any other Defendant, unlawful or otherwise.  Having failed to prove the existence of any unlawful agreement, it is not surprising that the record contains no evidence that any Defendant performed a single act in furtherance of the (non-existent) unlawful agreement.

TTGI expects that Relator will argue that the novation agreement constitutes the unlawful agreement that subjects TTGI to liability under 31 U.S.C. § 3729(a)(1)(C).  While the existence of the novation agreement is an undisputed fact, it serves a single, obvious purpose:  to relieve DRS C3 & Aviation of the rights and obligations of Task Order 10, and impose them on TTGI. Dkt 92 #2.  There is nothing unlawful about a novation agreement.  And there is no evidence in the record to support a finding of the existence of an unlawful agreement.

Like Counts I through VIII addressed above, Count IX is predicated exclusively upon Relator's supposition and conclusory statements.  There is absolutely no evidence to support a

finding that TTGI violated 31 U.S.C. § 3729(a)(1)(C).  Accordingly, TTGI is entitled to judgment as a matter of law with respect to this claim.

### C.    Relator Did Not File Counts III through VIII Under Seal

This Court should grant summary judgment for the defendants on Counts III through VIII for the additional reason that Relator did not provide the government with an opportunity to investigate his new claims.  See 31 U.S.C. § 3730(b)(2).  The FCA requires a relator to file his or her complaint under seal, serve a copy upon the government, and provide the Government with at least sixty (60) days in which to investigate these claims and determine whether it will intervene in the action.  31 U.S.C. § 3730(b)(2).  Complaints—including amended complaints— that fail to comply with this requirement shall be dismissed with prejudice.  See United States ex rel. Davis v. Prince, 766 F. Supp. 2d 679, 682-84 (E.D. Va. 2011) ("The sealing requirement is mandatory; failure to file a complaint under seal requires dismissal of a qui tam complaint with prejudice.").

In this case, Relator did not file his FAC under seal, thereby failing to provide the government with an opportunity to investigate the allegations that comprise Count III through Count VIII in the FAC.  Dkt 47 ¶¶ 53-240, 257-332.  Relator's failure to file the additional six Counts in his FAC under seal is a violation of the procedures of the FCA, and it precludes him from pursuing those claims.

### V.    CONCLUSION

WHEREFORE, TTGI respectfully requests that this Court (i) grant judgment as a matter of law in TTGI's favor on all claims asserted against TTGI; and (ii) enter such other and further relief as this Court deems necessary and proper.

Respectfully submitted this 18th day of September, 2015.

> /s/ Rebecca L. Saitta
> Rebecca L. Saitta (VA Bar No. 65408)
> Stephen Obermeier (admitted *pro hac vice*)
> WILEY REIN LLP
> 1776 K Street, N.W.
> Washington, DC 20006
> Telephone: 202-719-7000
> Facsimile: 202-719-7049
> Email: RSaitta@wileyrein.com
>         SObermeier@wileyrein.com
>
> Walter Brad English (admitted *pro hac vice*)
> Emily Jones Chancey (admitted *pro hac vice*)
> MAYNARD COOPER & GALE PC
> 655 Gallatin Street
> Huntsville, Alabama 35801
> Telephone: 256-512-5705
> Facsimile: 256-512-5740
> Email: benglish@maynardcooper.com
>         echancey@maynardcooper.com
>
> *Counsel for The Tolliver Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2015, a copy of the foregoing has been served through the Court's electronic filing system upon the following:

Christopher E. Brown, Esq.  
THE BROWN FIRM PLLC  
526 King Street, Suite 207  
Alexandria, Virginia 22314

Dequilla Wayne White, Esq.  
905 Nona Street  
Leesville, LA 71446  
(By Email Only)

Richard W. Sponseller, Esq.  
Peter S. Hyun, Esq.  
Assistant United States Attorneys  
United States Attorney's Office  
Justin W. Williams United States Attorney's Building  
2100 Jamieson Avenue  
Alexandria, Virginia 22314

Richard Beizer, Esq.  
Amy Lee, Esq.  
Andy Liu, Esq.  
CROWELL & MORING LLP  
1001 Pennsylvania Avenue, N.W.  
Washington, D.C.  20004-2595

/s/ Rebecca L. Saitta  
*Of Counsel*